# 24-1325

To Be Argued By: Bernard V. Kleinman, Esq., Attorney for Plaintiffs-Appellants

# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

:============================:

## JUSTIN LANASA, TSR, LLC, DUNGEON HOBBY SHOP MUSEUM, LLC,
**Plaintiffs-Appellants,**

## — *versus* —

## ERIK STIENE, RACHEL STIENE,
**Defendants-Appellees.**

:============================:

**AN APPEAL FROM A JUDGMENT OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK**

:============================:

## PLAINTIFFS-APPELLANTS OPENING BRIEF

:============================:

BERNARD V. KLEINMAN, ESQ.
LAW OFFICE OF BERNARD V. KLEINMAN, PLLC
ATTORNEY FOR PLAINTIFFS-APPELLANTS
108 VILLAGE SQUARE
SUITE 313
SOMERS, NY 10589-2305
TEL.: (914) 644-6660
FAX: (914) 694-1647
EMAIL: *ATTRNYLWYR@YAHOO.COM*

## TABLE OF CONTENTS

I. TABLE OF AUTHORITIES ............................................................ 2

II. QUESTIONS PRESENTED ......................................................... 8

III. STATEMENT PURSUANT TO F.R.A.P. RULE 28(a) .................. 9

IV. FACTS

    1. Introduction ................................................................. 10
    2. Detailed Facts .............................................................. 17
    3. The Decision of the District Court .............................. 24

V. SUMMARY OF THE ARGUMENTS ........................................ 28

VI. ARGUMENTS

    The Law Applicable to a Rule 12(b)(6) Motion to Dismiss ...... 30
    The Law Applicable to a Rule 12(b)(5) Motion to Dismiss ...... 31
    POINT ONE
        Defendant-Appellee Rachel Stiene is a
        Proper Party to this Action ................................... 33
    POINT TWO
        Plaintiffs-Appellants Set Forth Valid Grounds for the
        Tortious Claims of Defamation .............................. 36
    POINT THREE
        Plaintiffs-Appellants Set Forth Valid Grounds for the
        Tort of Intentional Infliction of Emotional Distress ...... 48
    POINT FOUR
        Plaintiffs-Appellants Set Forth Valid Grounds for
        *Prima Facie* Tort Cause of Action ....................... 54
    POINT FIVE
        Leave to Amend the Complaint Should Have Been
        Granted by the District Court ................................ 59

VII. CONCLUSION ...................................................................... 63

VIII. STATEMENT PURSUANT TO F.R.A.P. 32 ......................... 64

IX. CERTIFICATE OF SERVICE ................................................. 65

TABLE OF AUTHORITIES

CASES

*164 Mulberry St. Corp. v. Columbia Univ.*, 4 A.D.3d 49 (1st Dep't),
   *appeal dism'd sub nom., Chez Josephine v. Columbia Univ.*,
   2004 N.Y. LEXIS 955 (2004) ................................................... 53

*533 East 12th Street, LLC v. DL 531 East 12th Owner LLC*,
   2020 N.Y. Misc. LEXIS 4926 (S. Ct. N.Y. Co. 2020) ................. 56

*Adidas Sportschuhfabriken Adi Dassler Stiftung & Co.,
   K.G. v. Cheung*, 1990 U.S. Dist. LEXIS 3953 (S.D.N.Y 1990) ...... 36

*Ahmed v. Nnoli*, 2024 NYLJ LEXIS 548 (S. Ct. N.Y. Co. 2024) ......... 47

*Aoki v. Benihana Inc.*, 839 F. Supp.2d 759 (D. Del. 2012) ............... 12

*Aramid Entertainment Fund Ltd. v. Wimbeldon Financing Fund, Ltd.*,
   105 A.D.3d 682 (1st Dep't), *leave den.* 22 N.Y.3d 858 (2013) ...... 56

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................... 30

*AvePoint, Inc. v. Power Tools, Inc.*, 981 F. Supp.2d 496 (W.D. Va. 2013) ...... 15

*Bass v. Kansas*, 198 A.D.2d 693 (3d Dep't 1993) ......................... 58

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) ................. 30, 43

*Bellafaire v. Town of Wheatfield*, 2019 U.S. Dist. LEXIS
   83006 (W.D.N.Y. 2019) ....................................................... 34

*Boahen v. Trifiletti,* 2019 U.S. Dist. LEXIS 25865 (D. Conn. 2019) ...... 32

*Bolt Elec. Inc. v. City of New York*, 53 F.3d 465 (2d Cir. 1995) ....... 31

*Brian v. Richardson*, 87 N.Y.2d 46 (1995) ....................... 37, 38, 40

*Buckley v. Littell*, 539 F.2d 882 (2d Cir. 1976),
   *cert. denied* 429 U.S. 1062 (1977) ..................................... 40

*Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314 (1983) ...... 56

*Cargo Partner AG v. Albatrans, Inc.,* 352 F.3d 41 (2d Cir. 2003) ...... 30

*Ceara v. Deacon*, 916 F.3d 208 (2d Cir. 2019) ............................ 62

*Chau v. Lewis*, 771 F.3d 118 (2d Cir. 2014) ............................... 38

*Cheng v. Tams Consultants*, 1991 U.S. Dist. LEXIS 6095 (S.D.N.Y 1991) ...... 31

*Christopher v. American News Co.*, 172 F.2d 275 (7th Cir. 1948) ......... 40

*Corsair Special Situation Fund, L.P. v. Engineer Framing Sys.*,
 2013 U.S. Dist. LEXIS 138204 (D. Conn. 2013),
 *aff'd* 595 Fed. App'x 40 (2d Cir. 2014) .................................. 61

*Cost Controls v. Am. Preferred Prescription*, 1997 Bankr. LEXIS 387)
 (Bankr. Ct. E.D.N.Y. 1997) .................................. 42

*Cyrus v. Papas Dodge, Inc*., 2012 U.S. Dist. LEXIS 42618 (D. Conn. 2012) .......... 53

*Davis v. Boeheim*, 24 N.Y.3d 262 (2014) .................................. 39, 40

*Dejesus v. Moshiashvili*, 2017 N.Y. Misc. LEXIS 1351 (S. Ct. N.Y. Co. 2017) ...... 52

*Delaware Valley Aesthetics, PLLC v. Doe 1*, 2022 WL 17094740 (E.D. Pa. 2022) .. 17

*Deluca v. AccessIT Group, Inc.*, 695 F. Supp.2d 54 (S.D.N.Y. 2010) ............. 32

*Durant v. Traditional Investments, Ltd.*, 1990 U.S. Dist. LEXIS
 3074 (S.D.N.Y. 1990) .................................. 32

*Eros Int'l PLC v. Mangrove Partners*, 2019 N.Y. Slip Op. 30604(U)
 (S. Ct. N.Y. Co. Mar. 8, 2019),
 *aff'd* 191 A.D.3d 465 (1st Dep't 2021) .................................. 13

*Estate of Quackenbush, In re*, 152 Misc.2d 888 (Surr. Ct. Jefferson Co. 1991) ...... 41

*Fashion TV LLC v. Aktiengesellschaft*, 2018 U.S. Dist. LEXIS
 244304 (S.D.N.Y 2018) .................................. 36

*Fjord v. AMR Corp.*, 506 B.R. 368 (Bankr. Ct. S.D.N.Y. 2014) ............. 43

*Flamm v. Am. Ass'n of University Women*, 201 F.3d 144 (2d Cir. 2000) .......... 37

*Franklin v. Daily Holdings, Inc*., 135 A.D.3d 87 (1st Dep't 2015) ............. 46

*Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205 (2d Cir. 2004) ............. 31

*Gertz v. Robert Welch*, 418 U.S. 323 (1974) .................................. 40

*Golub v. Esquire Publishing, Inc.*, 124 A.D.2d 528 (1st Dep't 1986),
 *leave den.* 69 N.Y.2d 606 (1987) .................................. 56, 57

*Greenlaw v. United States*, 554 U.S. 237 (2008) .................................. 25

*Heaston v. City of New York*, 2022 U.S. Dist. LEXIS 104247 (E.D.N.Y. 2022) ...... 60

*Hemi Group, LLC v. City of New York*, 559 U.S. 1 (2010) .................................. 51

*Howard v. Klynveld Peat Marwick Goerdler*, 977 F. Supp. 654
 (S.D.N.Y. 1997), *aff'd* 173 F.3d 844 (2d Cir. 1999) .................................. 32

*Howell v. N.Y. Post Co.*, 81 N.Y.2d 115 (1993) .................................. 49

**(3)**

*Immuno AG v. Moor-Jankowksi,* 77 N.Y.2d 235 (1991) ............... 39

*John Doe 1 v. Cahill*, 884 A.2d 451 (Del. S. Ct. 2005) ............... 15

*Johnson v. Warner Bros. Entertainment, Inc.*,
    2017 U.S. Dist. LEXIS 20290 (D. Del. 2017) ............... 12

*Kassab v. Kasab*, 2017 N.Y. Misc. LEXIS 2905 (S. Ct. Qns. Co. 2017),
    *mdf'd on other grnds.* 195 A.D.3d 832 (2d Dep't 2021) ............... 57

*Keller v. Rippowam Cisqua School*, 2021 N.Y. Misc. LEXIS
    17740 (S. Ct. West. Co. 2021), *aff'd* 208 A.D.3d 654 (2d Dep't 2022) ............... 58

*Korzeniowski v. Encore Receivable Management*,
    2010 U.S. Dist. LEXIS 41206 (D. Conn. 2010) ............... 43

*Krupski v. Costa Crocieri S.p.A.*, 560 U.S. 538 (2010) ............... 62

*Lanasa, et al. v. Stiene, et al.*, 2024 U.S. Dist. LEXIS 70340 (E.D.N.Y. 2024) ............... *passim*

*Lincoln First Bank of Rochester v. Siegel*, 60 A.D.2d 270 (4th Dep't 1977) ............... 58

*Little & Robinson, LLP v. Garrett*, 720 F. Supp.2d 417 (S.D.N.Y. 2010) ............... 43

*Macaluso v. N.Y.S. Dep't of Environmental Conservation*,
    115 F.R.D. 16 (E.D.N.Y. 1986) ............... 32

*Meridian Capital Partners, Inc. v. Fifth Ave. 58/59 Acquisition Co. L.P.*,
    2007 N.Y. Misc. LEXIS 9487 (S. Ct. N.Y. Co. 2007),
    *aff'd* 60 A.D.3d 434 (1st Dep't 2009) ............... 56

*Neuman v. Global Security Solutions, Inc.*, 2023 U.S. App.
    LEXIS 25263 (2d Cir. 2023) ............... 47

*O'Connor v. 11 West 30th St. Restaurant Corp.*,
    1995 U.S. Dist. LEXIS 8085 (S.D.N.Y. 1995) ............... 34

*Olivet University v. Newsweek Digital, LLC*,
    2024 U.S. Dist. LEXIS 81554 (S.D.N.Y. 2024) ............... 46

*Osrecovery, Inc. v. One Group Int'l, Inc.*, 234 F.R.D. 59 (S.D.N.Y. 2005) ............... 32

*Pennie & Edmonds LLC, In re*, 323 F.3d 86 (2d Cir. 2003) ............... 60

*People v. Gonzalez*, 80 N.Y.2d 146 (1992) ............... 54

*People v. Perry*, 2021 NYLJ LEXIS 1183 (West. Co. City Ct. 2023) ............... 41

*People v. Telfair*, 41 N.Y.3d 107 (2023) ............... 41

*Perfect Fit Indus., Inc. v. Acme Quilting Co.*, 494 F. Supp. 505 (S.D.N.Y. 1980) ............... 17

*Quiles v. Suffolk County Community College,*
    2005 U.S. Dist. LEXIS 51521 (E.D.N.Y. 2005) .................... 31

*Rapaport v. Barstool Sports, Inc.*, 2024 U.S. App. LEXIS 556 (2d Cir. 2024) ........ 37

*Ratto v. Oliva*, 195 A.D.3d 870 (2d Dep't 2021) .................... 49

*Richard L. v. Armon*, 144 A.D.2d 1 (2d Dep't 1989) .................... 53

*Reynolds v. Pegler*, 223 F.2d 429 (2d Cir. 1955), *cert. denied* 350 U.S. 846 (1956) . 16

*Riggio v. County of Nassau*, 218 A.D.3d 502 (2d Dep't 2023) .................... 39

*Rissetto v. County of Clinton*, 2016 U.S. Dist. LEXIS 115832 (N.D.N.Y. 2016) .... 52

*Roberts v. Michaels*, 219 F.3d 775 (8th Cir. 2000) .................... 62

*Roth v. Jennings,* 489 F.3d 499 (2d Cir. 2007) .................... 30

*Sandals Resorts Int'l Ltd. v. Google, Inc.*, 86 A.D.3d 32 (1st Dep't 2011) ............ 15

*Sanders v. Walsh*, 219 Cal. App.4th 855 (4th Dist. Ct. App. 2013) ............ 15

*Sanderson v. Leg Apparel LLC*, 2024 U.S. Dist. LEXIS 22645 (S.D.N.Y. 2024) ... 60

*Satanic Temple, Inc. v. Newsweek Magazine, LLC,*
    661 F. Supp.3d 159 (S.D.N.Y. 2023) .................... 38

*Schafer v. Direct Energy Svces., LLC*, 845 Fed. App'x 81 (2d Cir. 2021) ............ 43

*Shader v. Overby*, 2022 N.Y. Misc. LEXIS 275 (S. Ct. Albany Co. 2022) ............ 38

*SI03, Inc. v. Body-building.com, LLC,*
    2008 U.S. Dist. LEXIS 129000 (D. Idaho 2008) .................... 15

*Stagg P.C. v. U.S. Dep't of State*, 354 F. Supp.3d 448 (S.D.N.Y. 2019),
    *vacated on other grnds.* 983 F.3d 589 (2d Cir. 2020) .................... 13

*Stam v. Farrell*, 223 A.D.2d 260 (3d Dep't 1996) .................... 52

*Staton v. Berbary*, 2004 U.S. Dist. LEXIS 14898 (E.D.N.Y. 2004) .................... 54

*Stega v. New York Downtown Hospital*, 31 N.Y.3d 661 (2018) .................... 39

*Steinhilber v. Alphonse*, 68 N.Y.2d 283 (1986) .................... 39

*Stewart v. Jackson & Nash*, 976 F.2d 86 (2d Cir. 1992) .................... 31

*Stroup v. Nazzaro*, 91 A.D.3d 1367 (4th Dep't 2010) .................... 45

*Tannerite Sports, LLC v. NBCUniversal News Group*,
    864 F.3d 236 (2d Cir. 2017) .................... 45

*Tilem & Assocs., P.C. v. Pastore*, 2018 N.Y. Misc. LEXIS
14432 (S. Ct. West. Co. 2018) ............................................. 47

*Town of Messena v. Healthcare Underwriters Mutual Ins. Co.*,
98 N.Y.2d 435 (2002) ......................................................... 45

*UMG Recordings, Inc. v. Frawley*,
2011 U.S. Dist. LEXIS 164151 (N.D.N.Y. 2011) .............. 33

*United States SEC v. Ahmed*, 72 F.4th 379 (2d Cir. 2023),
*cert. denied* — U.S. — (2024) ........................................ 11, 25

*Vasconcellos v. City of New York*, 2014 U.S. Dist. LEXIS 143429
(S.D.N.Y. 2014) ................................................................. 62

*Zuckerbrot v. Lande*, 75 Misc.3d 269 (S. Ct. N.Y. Co. 2022) ......... 13, 47

STATUTES & RULES

F.R.App.P. Rule 4 ............................................................... 31-32

F.R.Civ. P. Rule 11 ............................................................. 60

F.R.Civ. P. Rule 12(b) ........................................................ *passim*

F.R.Civ. P. Rule 15(c) ........................................................ 34, 62

28 U.S.C. § 1332 ................................................................ 25

N.Y. Civil Rights L. § 50 ..................................................... 23

N.Y. Civil Rights L. § 51 ..................................................... 23

N.Y. Civil Rights L. § 70-a .................................................. 11, 26

N.Y. Civil Rights L. § 76-a .................................................. 11

CPLR Rule 3043(a)(9) ......................................................... 58

U.C.C. § 1-201(b)(20) ......................................................... 41

SECONDARY SOURCES

Abril, P., *A (My)Space of One's Own: On Privacy and
Online Social Networks*, 6 NORTHWESTERN J.
TECHNOLOGY & INTELLECTUAL PROPERTY 73 (Fall 2007) .............. 13

Davis, P. *The persistence of error: a study of retracted articles on
the Internet and in personal libraries*, 2012 J. OF THE MEDICAL
LIBRARY ASS'N 184-189 (Jul. 2012) .................................. 12

Herek, G., Berrill, K., *Gay-Bashing: A Social Identity Analysis of Violence Against Lesbians and Gay Men (From Hate Crimes: Confronting Violence Against Lesbians and Gay Men,* U.S. Dep't of Justice, Office of Justice Programs (1992) ..................... 42

Kane, G., *Digital Transparency and Permanence,* MIT SLOAN MANAGEMENT REV. (Oct. 6, 2015) ..................... 13

Moore, D., *Once on the Internet, always on the Internet,* THE NORMAN TRANSCRIPT (Jul. 19, 2024) ..................... 13

N.Y. PATTERN JURY INSTRUCTIONS Vol. 2A (2022 ed.) ..................... 53

O'Brien, J., *Note, Putting a Face to a [Screen] Name: The First Amendment Implications of Compelling ISPs to Reveal the Identities of Anonymous Internet Speakers in Online Defamation Cases,* 70 FORDHAM L. REV. 2745 (2002) ..................... 15

Pellitier, N., *The Emoji that Cost $20,000: Triggering Liability for Defamation on Social Media,* 52 WASHINGTON UNIV. J. OF LAW & POLICY 227 (2016) ..................... 16

## QUESTIONS PRESENTED

1.    See Point One *infra* at pp. 33 – 36
        Was the District Court correct in finding that Appellee was Rachel Stiene was not properly served and the Court had no jurisdiction over her?

2.  See Point Two *infra* at pp. 36 – 48
        Did the Appellant lay out proper claims for Defamation and Slander under applicable law?

3.  See Point Three *infra* at pp. 48 – 54
        Were the elements of the tort of intentional infliction of emotional distress laid out in the Complaint?

4.  See Point Four *infra* at pp. 54 – 58
        Were the elements of prima facie laid out in the Complaint?

5.  See Point Five *infra* at pp. 59 – 63
        Should the court have permitted amendment of the Complaint?

<u>STATEMENT PURSUANT TO F.R.A.P. 28(a)</u>

This is an appeal of a judgment entered by the Hon. Kiyo Matsumoto, U.S. District Judge, E.D.N.Y., entered the 17th day of April 2024. *Lanasa, et al. v. Stiene, et al.*, 22-cv-5686, 2024 U.S. Dist. LEXIS 70340 (E.D.N.Y. 2024). This appeal raises the issue as to whether the lower court ruling, in dismissing the Plaintiffs' amended complaint, was correct in the application of applicable state law in a cause of action seeking tortious relief for the alleged defamatory statements of the named Defendants, and, furthermore, whether the lower Court should have exercised jurisdiction over the named Defendant, Rachel Stiene.

A copy of the decision appears at Appendix pp. A-262 through A-274.

The decision of the lower court was entered following the filing of a Rule 12(b) Motion to Dismiss by the named Defendants on January 23, 2024. 22-cv-5686 Dkt. Entry No. 64.[1] A copy of the Defendants' Motion is annexed hereto at Appendix pp. A-138 through A-177. A copy of the District Court Docket sheet is annexed hereto at Appendix pp. A-2 through A-19. Following an Oppositional Response as filed by the Plaintiffs (Dkt. Entry No. 65; Appendix pp. A-178 through A-239), and a Reply

---

[1] It should be noted that discovery, on the part of the Appellants was never fully completed. While there was document disclosure pursuant to Rule 34, and exchange of Interrogatories, pursuant to Rule 33, and the Appellant (Mr. Lanasa) was deposed, neither of the named Appellees were deposed, notwithstanding Appellants' attempt to do so. See District Court Docket Entries, ECF Nos. 59, 60, 61. The Court never ruled on this request from the Appellant, clearly leaving him at a distinct disadvantage to the Appellees.

in Support of the Motion (Dkt. Entry No. 66; Appendix pp. A-240 through A-261) the lower court entered its Decision and Order.  Dkt. Entry No. 75, Appendix pp. A-262 through A-274.

Notice of Appeal was filed on May 11, 2024.  Dkt. Entry No. 77.  Appendix at pp. A-276 through A-277.

Appellants Justin Lanasa, TSR, LLC, and Dungeon Hobby Shop Museum, LLC, seek a vacatur of the lower Court's decision and ruling, and a remand to that Court.

<u>FACTS</u>

<u>Introduction</u>

It is important to understand precisely what this case is about.  While the Plaintiffs-Appellants have formulated their claim in the context of a Complaint alleging tortious conduct on the part of the named Defendants, and that such conduct has caused the Plaintiffs both economic and personal harm, what this case really boils down to is the obsessive and compulsive behavior of the Defendants-Appellees — both Erik Stiene and Rachel Stiene — targeting not only the named Plaintiff Justin Lanasa, and his business entities Dungeon Hobby Shop Museum LLC, and TSR, LLC, but, without shame and with pure unadulterated malice, the Plaintiff Lanasa's wife and minor child.  The psychologically obsessive and repetitive behavior of the Appellees in posting scores of videos targeting the named Appellants, and then seeking to do harm to Mr. Lanasa's wife and minor child

(10)

represent malice that goes well beyond the norm. This is essential in understanding the nature of this case. The repeated and continuous actions of the Appellees, well documented in the pleadings below, make clear the actual malice of the Appellees, and that this actual and demonstrated malice rendered the tortious conduct properly actionable under applicable New York law.

While the Appellees, in their pleadings, relied heavily upon the New York anti-SLAPP statute (N.Y. Civil Rights L. §§ 70-a, 76-a), in the end, the lower Court found the statute inapplicable (see *Lanasa, et al. v. Stiene, et al.*, 22-cv-5686, 2024 U.S. Dist. LEXIS 70340 at *18 thru *20 (E.D.N.Y. 2024), Appendix p. A-269). As the Appellees have not filed a cross-appeal under Rule 4(a)(3), F.R.App.P., any review of this holding by Judge Matsumoto is precluded, and this remains the law of the case. *United States SEC v. Ahmed*, 72 F.4th 379, 399 (2d Cir. 2023), *cert. denied* — U.S. — (2024).

As with many tortfeasors who rely upon publishing their defamatory and libelous statements on-line, there appears to be a belief that the rules do not apply to on-line action. It is as if the Appellees believe, as many such tortfeasors do, that with the availability of multiple means of making one's word heard, whether through Youtube®, Telegram®, Instagram®, Facebook®, X®, *etc.*, special rules apply here and the use of these methods to commit a tort immunizes them from liability. It does not. Indeed, the dangers and harm are even greater than the publishing of a

**(11)**

defamatory statement in a newspaper or magazine. Use of Youtube® (as the Appellees have done here) allows for the "widespread dissemination of allegedly defamatory matter" (*Aoki v. Benihana Inc.*, 839 F. Supp.2d 759, 765 (D. Del. 2012)) within a matter of seconds, exacerbating and inflating the potential for damages to the harmed plaintiff. See also *Johnson v. Warner Bros. Entertainment, Inc.*, 2017 U.S. Dist. LEXIS 20290 at *8-*9 (D. Del. 2017).

It is within this context that the actions of the Appellees need to be analyzed and ruled upon. The Court is urged to recognize that defamation law developed in an earlier era where (a) dissemination of a libelous statement was very limited, and often took place in a hard copy written form, and was limited to perhaps, several thousand persons, at best, and (b) there always existed the availability of a retraction, which would make the libelous statement all but impossible to locate.[2] In the 21st Century that is not at all the case. An on-line published libelous statement is not

---

[2] The limited value of a retraction of on-line published material is demonstrated by a study done by the National Library of Medicine of the availability of medical articles that had been withdrawn from publication. The study had the following findings,

> Non-publisher websites provided 321 publicly accessible copies for 289 retracted articles: 304 (95%) copies were the publisher's versions, and 13 (4%) were final manuscripts. PubMed Central had 138 (43%) copies; educational websites 94 (29%); commercial websites 24 (7%); advocacy websites 16 (5%); and institutional repositories 10 (3%). Just 15 (5%) full-article views included a retraction statement. Personal Mendeley libraries contained records for 1,340 (75%) retracted articles, shared by 3.4 users, on average.

Davis, P. *The persistence of error: a study of retracted articles on the Internet and in personal libraries*, 2012 J. OF THE MEDICAL LIBRARY ASS'N 184-189 (Jul. 2012).

**(12)**

only instantaneously disseminated to millions (or even billions),[3] but once "published" (even if scrubbed from a particular website) it is out in the public domain forever — and this is no hyperbole.  Referred to as "digital permanence", it reflects the fact that "the idea that once something is uploaded, posted, published or otherwise 'put on' the Internet, it will be there forever."  Moore, D., *Once on the Internet, always on the Internet*, THE NORMAN TRANSCRIPT (Jul. 19, 2024).[4]  Indeed, as one scholar put it,

> The information's digital permanence, searchability, replicability, transformability, and multitude of often unintended audiences make its effects more damaging than ever.

Abril, P., *A (My)Space of One's Own: On Privacy and Online Social Networks*, 6 NORTHWESTERN J. TECHNOLOGY & INTELLECTUAL PROPERTY 73, 75 (Fall 2007).[5]

---

[3] "Online commentary is just as capable as print or broadcast media of inflicting the kinds of harm the defamation laws are designed to protect against. Indeed, online communications can spread more quickly, and to all corners of the world, than can print or broadcast media statements."  *Eros Int'l PLC v. Mangrove Partners*, 2019 N.Y. Slip Op. 30604(U) at p. 17 (S. Ct. N.Y. Co. Mar. 8, 2019), *aff'd* 191 A.D.3d 465 (1st Dep't 2021).

See also *Zuckerbrot v. Lande*, 75 Misc.3d 269, 291-92 (S. Ct. N.Y. Co. 2022).

[4] Reproduced at *https://www.normantranscript.com/news/once-on-the-internet-always-on-the-internet/article_4bb953b0-8804-11eb-9bad-c7b05bdeb4cc.htm*.

See also Kane, G., *Digital Transparency and Permanence*, MIT SLOAN MANAGEMENT REV. (Oct. 6, 2015), reproduced at *https://sloanreview.mit.edu/article/digital-transparency-and-permanence/*.

[5] See also *Stagg P.C. v. U.S. Dep't of State*, 354 F. Supp.3d 448 (S.D.N.Y. 2019), *vacated on other grnds.* 983 F.3d 589 (2d Cir. 2020), where the court stated,

> [T]he Internet differs fundamentally from a public library — <u>virtually anyone with internet access can post information to the internet or republish information made available by someone else</u> and there are no publication standards or systems of peer or editorial review to help ensure that sensitive national security information is not released.

Of course, in the case at Bar, as the Amended Complaint and pleadings made clear, this was compounded by the repeated and multiple times that the libels were posted by the Appellees. And, of course, then re-published by others. For, re-publishing on the Internet is as easy as a few clicks, and then it is done; and "done forever".

Judge Matsumoto, as discussed *infra*, failed to recognize this pervasive nature of the multiple defamatory statements of the Appellees. Her Honor, instead, found that the challenged statements and actions of the Appellees were, in fact, not defamatory, and chose to ignore the malicious nature of the Appellees' actions. See *Lansa v. Stiene, supra*, 2024 U.S. Dist. LEXIS 70340, at *26, Appendix, p. A-271. The problem here is, at least partially, if not wholly, that the impact of repeated statements, even if tangentially defamatory, or technically not so, should and ought to be analyzed in the context of both the manner in which they were published, *i.e.*, on the Internet, and in the fact that they were repeated in an all but obsessive manner by the Appellees. This not only heightened the impact of the Appellees' actions, but also, since they were directed against <u>both</u> Mr. Lansa, and the business entity Appellants, they need to be analyzed in the context of an attack upon those businesses with an intent to harm them financially. This "heightened" analysis is

---

*Id*. at 467. Emphasis added.

(14)

necessary, as comments made on social media, or other Internet platforms, about a business, even if filled with generalities, colloquialisms, that can be only potentially harmful, will be deemed actionable (or minimally will survive a Rule 12(b) motion to dismiss). *See, e.g., AvePoint, Inc. v. Power Tools, Inc.*, 981 F. Supp.2d 496, 503 (W.D. Va. 2013) (court denied Rule 12(b) motion to dismiss); *SIO3, Inc. v. Body-building.com, LLC*, 2008 U.S. Dist. LEXIS 129000 at *1 (D. Idaho 2008). Indeed, on-line defamatory statements about a business owner, can be held actionable, as they are a direct tie-in to the owner's business itself. See generally, *Sanders v. Walsh*, 219 Cal. App.4th 855, 859-60 (4th Dist. Ct. App. 2013).

At the same time, the placement of the defamatory statements, will heighten their impact, and merit a deeper analysis as to the impact on the business — a "contextual" analysis. See generally, *Sandals Resorts Int'l Ltd. v. Google, Inc.*, 86 A.D.3d 32 (1st Dep't 2011) ("Because the context of a statement impacts its potentially defamatory import, it is necessary to view allegedly defamatory statements published on the Internet within the broader framework on which they appear, taking into account both the tenor of the chat room or message board in which they are posted, and the language of the statements." *Id*. at 44, quoting O'Brien, J., *Note, Putting a Face to a [Screen] Name: The First Amendment Implications of Compelling ISPs to Reveal the Identities of Anonymous Internet Speakers in Online Defamation Cases*, 70 FORDHAM L. REV. 2745, 2774-75 (2002)). See also *John Doe 1 v. Cahill*, 884 A.2d

451, 465 (Del. S. Ct. 2005).[6]  In the case at Bar, the offending statements were primarily posted on Appellees' dedicated Youtube® page, a page dedicated to Dungeons and Dragons aficionados.  It would be a place likely customers of the Appellants would visit, and, so the impact was that much more harmful.

The number of Youtube® (and other Internet sites) postings of the Appellees that Appellants cited in their lower court pleadings were all but too numerous to count.  Nevertheless, a small example can be found in the record.  *See, e.g.*, First Amended Complaint at ¶ 44, Appendix p. A-46; Second Amended Complaint at ¶ 20, Appendix pp. A-73 — A-74; Exhibit A to Appellant's Opposition to Motion to Dismiss, Appendix pp. A-217 — A-218.[7]  Nevertheless, the lower court found this evidence (never refuted or denied by the Appellees) of no mention whatsoever, ignoring the clear evidence of malicious intent to harm the Appellant businesses.  See *Reynolds v. Pegler*, 223 F.2d 429 (2d Cir. 1955), *cert. denied* 350 U.S. 846 (1956) ("Malice may be inferred from the very violence and vituperation apparent

---

[6] See also discussion in Pellitier, N., *The Emoji that Cost $20,000: Triggering Liability for Defamation on Social Media*, 52 WASHINGTON UNIV. J. OF LAW & POLICY 227, 236-37 (2016).

[7] Indeed, the Appellants also included, which the lower Court failed to address, the fact that even <u>after</u> the filing of the Complaint in this case, the Appellees continued, unabated, in their publication of malicious defamatory statements, on the Internet.  See Appendix B to Appellant's Opposition to Motion to Dismiss, Appendix p. A-219.

See also discussion, *infra*, *re* the lower court's ruling on the Appellants' cause of action for *prima facie* tort.

upon the face of the libel itself, . . ." *Id*. at 434.); *Delaware Valley Aesthetics, PLLC v. Doe 1*, 2022 WL 17094740 (E.D. Pa. 2022) ("Defendant's repeated statements showing ill-will and hostility towards Dr. Rumer and her surgical practice are sufficient evidence of actual malice." *Id*. at *9.). See also *Perfect Fit Indus., Inc. v. Acme Quilting Co.*, 494 F. Supp. 505, 507 (S.D.N.Y. 1980).

Detailed Facts

Both of the Appellees either organized and/or posted to a Youtube® website (*see, e.g.*, "https://www.youtube.com/watch?v=AbpJ-djtNk0", Second Amended Complaint at ¶ 22, Appendix p. A-110), or to a dedicated website designated as "Tenkar's Tavern". See *https://www.tenkarstavern.com/*, Second Amended Complaint at ¶ 20, Appendix pp. A-108 — A-109. These sites, including the dedicated website, are commercial in nature, viz.,

> *The Tavern is supported by readers like you. The easiest way to support The Tavern is to shop via our affiliate links.*

See *tenkarstavern.com*. Emphasis added.

According to its Google® listing, Tenkar's Tavern is "A blog focused on OSR gaming, the Swords & Wizardry RPG and all things Dungeons & Dragons. *Tavern Chat is the accompanying Podcast.*" It also lists locations on Facebook® and

numerous gaming sites. All of these sites, using the name "Tenkar's Tavern", are registered and owned by the Appellees.[8]

These Internet presences of the Appellees maintain their presence by selling subscriptions and products through Amazon®, and other services (see *https://www.amazon.com/stores/page/9D7E0086-7547-4726-B258-E086D36914C3/r/ref=as_li_ss_tl?ie=UTF8&linkCode=sl2&tag=tenkstav-20&linkId=e9bf1f6a2d0efff40078ff9d99f64282& language=en_US* (among other Internet sites). See Second Amended Complaint at ¶ 18, Appendix p. A-108.

Through these (and other online presences) the Appellees, knowingly and willfully, with the intent to harm and cause financial damage to the Appellants, having made fraudulent and defamatory statements specifically accusing the Appellants of various scurrilous and damaging behavior, all actionable under the New York tort law.

Prior to filing the original Complaint, a Cease and Desist Letter was sent to the Appellees on July 29, 2022 (Appendix A to First Amended Complaint, Appendix pp. A-54 thru A-57). However, after no action was taken by the Appellees (except

---

[8] On the website www.rpgg.com (a website dedicated to role playing games, such as Dungeons and Dragons), Appellee Erik Stiene is listed as an owner, along with "Alternate Names" of "Erik Tenkar", and "Tenkar". See *https://rpggeek.com/rpgdesigner/56142/erik-stiene*.

to make light of the letter online and further defame the Appellants),[9] the original Complaint was filed and served in September 2022. See District Court Docket Entries, ECF No. 1. Appendix at p. A-3.[10]

The statements made on-line by the Appellees (to which the Appellees never denied having made) were as follows:

> January 08, 2022:
> In accusing Plaintiff LANASA of dishonesty, E. STIENE (and R. STIENE @ 07:58) stated that Plaintiff LANASA was
> "<u>inadvertently</u> honest, I don't think that was your intention" 04:57  Emphasis added.
> Accusing Plaintiff LANASA of not paying his employees and hires:
> "the new artist got paid for it, but <u>Greg Bell did not</u>" 07:05  Emphasis added.
> *https://www.youtube.com/watch?v=wDl3Wo6WTuU*
>
> January 09, 2022:
> E. STIENE knowingly mis-represented the Plaintiff DUNGEON HOBBY, having the purpose of accepting gamers donations:
> "wasn't a not for profit, was for profit" 03:16
> https://www.youtube.com/watch?v=AbpJ-djtNk0
>
> February 08, 2022:

---

[9] In fact, the response of the Appellee was to post the letter online, and ridicule it; with no actions taken to comply with the letter. This posted response alleged that the Cease and Desist Letter was an attempt to "Intimidate Witnesses" (a further defamatory claim), in ongoing litigation unrelated to this action:
> "Was My C&D Letter From LaNasa TSR an Attempt to ID & Intimidate Witnesses in the WotC Legal Action?"
> See *https://www.youtube.com/watch?v=A6B-LmnEedwXX*, Aug. 30, 2022.
> See Second Amended Complaint at ¶ 24, Appendix pp. A-82 — A-83.

[10] It should be noted that the Defendants have never filed an Answer to either the original Complaint, or the Amended Complaints, and hence, have never denied having published the subject statements, nor that they were made with malice, nor that certain statements were made with intent to harm and/or threaten the Plaintiff and his family.

**(19)**

E. STIENE, in an attempt to alienate prospective customers, and financially damage the Plaintiffs, made repeated postings on the internet that stated that the Plaintiff LANASA:

"does not like homos and their type; will not work with folks that support them" 12:29

*https://www.youtube.com/watch?v=ZJDAtBlR6vc*

February 08, 2022:
E. STIENE, in an attempt to alienate prospective customers, and cause financial harm to Plaintiffs TSR and DUNGEON HOBBY, including trade libel, made repeated postings on the internet that stated the following false statements as to Plaintiff LANASA:

"he thinks he's some kind of warrior for the old ways; you know racism, gay bashing, women in the kitchen" 12:29

*https://www.youtube.com/watch?v=ZJDAtBlR6vc*

February 18, 2022:
E. STIENE, as a *prima facie* tort, threatening the Plaintiff with physical violence:

"jackass comes to my house; I hope they like lead because I have plenty to offer if that is the case" 01:51

*https://www.youtube.com/watch?v=hxsDOlDPkDc*

March 17, 2022:
E. STEINE asserting Plaintiff LANASA of engaging in violent sexual conduct demonstrating actionable malice on Defendant E. STIENE's part:

"Mario77 [a name that the Defendant ascribed to Plaintiff LANASA], aka ignorant cunt, aka Justin I fuck ignorant cocks; we know this is Justin" 0:28

Accusing Plaintiff LANASA of doxing, searching for and publish private or identifying information about a particular individual on the internet, with malicious intent to harm the Plaintiff, as *prima facie* tort:

"You doxed me, you little shit." 03:09

The "title" of this Internet Youtube® posting being:

"Justin is Trying to dox My Wife Rachel - Go F' Yourself LaNasa!"

E. STIENE alleging Plaintiff LANASA of being a convicted criminal, with no support:

**(20)**

"your criminal history; that's certainly public knowledge" 06:10

See *Bisimwa v. St. John Fisher College*, 194 A.D.3d 1467 (4th Dep't 2021)

E. STIENE making violent sexual misconduct statements as to the Plaintiff LANASA, as *prima facie* tort:

"my wife just told you that she would grow a cock so you could eat that cock" 09:31

*https://www.youtube.com/watch?v=pSbVzLby37w*

May 10, 2022:

E. STIENE intentionally describing Plaintiff TSR's customers in a defamatory and scurrilous manner as to cause financial harm to the named Plaintiff:

"TSR . . . they are scraping the bottom of the privy, okay, you can't get more shit than this shit. So that's your customer base and you're appealing to it." 04:10 – 04:22

*https://www.youtube.com/watch?v=YtFIIqhJQRA*

May 28, 2022:

E. STIENE making knowingly false statements about the Plaintiff LANASA's military service:

"he himself was kicked out of the military for lack of leadership potential" 15:09

*https://www.youtube.com/watch?v=qkpDy7DJhKw*

June 15, 2022:

E. STIENE knowingly falsely describing Plaintiff LANASA's business practices with an intent to cause financial harm to Plaintiffs, both as to customers and potential investors:

"you fucked over your prior business partners to get the TSR trademark" 05:23

E. STIENE knowing the statement to be a false trade libel, alleged association of the Plaintiff with "a Nazi":

"you included a Nazi in the company" 09:19

*https://www.youtube.com/watch?v=djYL3joFZqQ*

Dec. 17, 2022:

https://www.youtube.com/watch?v=-J8Du-fjbpo @ 0:57.00, Defendant E. STIENE referring to Plaintiff as an on-line entity which he is not

Nov. 27, 2022:
https://www.youtube.com/watch?v=7SsZPY7qqMk
R. STIENE and E. STIENE making clear that Plaintiff has 30 used
anonymous emails. 0:30:10 thru 0:47.10
R. STIENE and E. STIENE accusing the Plaintiff of 29 Substance abuse;
Describing the Plaintiff, in clear terms as sending anonymous emails on the
weekend, because that is the "time to get into a bottle of Jack" 0:59:15 –
1:02:00

See Second Amended Complaint at ¶ 22, Appendix pp. A-74 thru A-77.

Even beyond this behavior, the Appellees (again never having denied having made these statements on-line), in a clear and undeniable attempt to intimidate, harass, and threaten the Appellant Lanasa, which he alleged caused actionable emotional distress, Appellee E. Stiene engaged in *prima facie* tort, when he posted a video in which he stated: "I already know your address; I already know your fucking phone number; I know your wife's phone number." March 17, 2022: *https://www.youtube.com/watch?v=pSbVzLby37w* @ 05:26. Second Amended Complaint at ¶ 23, Appendix pp. A-77 thru A-78.

Beyond this behavior, the Appellee posted, online, in a further attempt to intimidate, harass, and threaten the Appellant Lanasa images of Lanasa's wife and minor child, not only without their permission, but also with no noticeable attempt to mask, blur, or otherwise distort the images of the child. This was alleged to be a

violation of not only the Terms of Service of Google® and Facebook®,[11] but also a violation of N.Y. Civil Rights L. §§ 50, 51.  See Second Amended Complaint at ¶¶ 25-27, Appendix pp. A-78 thru A-80.[12]

But, the Appellees went further, exacerbating both the *prima facie* and intentional infliction of emotional distress claims.   Stiene did this by making repeated, unsubstantiated, and uncorroborated statements alleging some former position in law enforcement specifically alleging the following:

> "It was my job when I was an investigator in internal affairs"
> *See, e.g.*, September 6, 2021:
> *https://www.youtube.com/watch?v=JKWf-tBI1Hg* @ 11:56.

See First Amended Complaint at ¶ 35, Appendix p. A-34.

As a result of these actions, Appellants set forth four separate Causes of Action:

Defamation and Libel, as First Cause of Action, ¶¶ 37 thru 56; Appendix pp. A-83 thru A-88.  See also First Amended Complaint at ¶¶ 37 thru 56; Appendix pp. A-34 thru A-39.

---

[11] Specifically Appellant, in its Complaint cited to, and quoted from the Google® Terms of Service, *viz.*,

> Anyone posting content with minors must do the following:
> - Respect privacy. Secure consent from the minor's parent or legal guardian before featuring them in your video. Make sure their participation in your video is voluntary.

See *https://support.google.com/youtube/answer/9229229?hl=en.  Emphasis added.*

[12] While Stiene posted the image of the Appellant's minor female child, when re-produced in the Second Amended Complaint, the image was completely blurred so as to make it unrecognizable.

Slander Per se, as Second Cause of Action, ¶¶ 57 thru 67; Appendix pp. A-88 thru A-91.  See also First Amended Complaint at ¶¶ 58 thru 67; Appendix pp. A-39 thru A-62.

Intentional Infliction of Emotional Distress, as Third Cause of Action, ¶¶ 68 thru 82; Appendix pp. A-42 thru A-46.

Prima Facie Tort, as Fourth Cause of Action, ¶¶ 83 thru 94; Appendix pp. A-96 thru A-100.  See also First Amended Complaint at ¶¶ 83 thru 94; Appendix pp. A-47 thru A-50.

The Decision of the District Court

On April 17, 2024 Judge Matsumoto delivered her opinion on the Motion to Dismiss.  Her Honor dealt with a number of issues raised in the Motion, and bottom-line, she granted the Motion to Dismiss under Rule 12(b)(6).  See *Lanasa, et al. v. Stiene, et al.*, 22-cv-5686, 2024 U.S. Dist. LEXIS 70340 (E.D.N.Y. 2024).  A copy of the decision appears at Appendix pp. A-262 through A-274.

After briefly summarizing the issues raised by the Appellant, and repeating some (but not all) of the alleged defamatory statements published by the Appellees and a brief procedural history (see *id*. at *2 to *7, Appendix pp. A-262 thru A-264), the Court addressed the legal issues raised by the parties.

The lower Court first set forth (in a summary fashion) the applicable legal standards to be used in ruling on a motion brought under, respectively, Rule 12(b)(1)

(24)

(lack of subject matter jurisdiction), Rule 12(b)(5) (lack of *in personam* jurisdiction), and Rule 12(b)(6) (failure to state a cause of action).  See *id*. at *7 to *9, Appendix pp. A-264 thru A-265.

With regard to the issue of subject matter jurisdiction, the Appellees, in their Motion to Dismiss, argued that the Appellants had failed to satisfy the diversity of jurisdiction statute (28 U.S.C. § 1332), in the failure to adequately demonstrate the minimum jurisdictional amount necessary to prove under Section 1332.  See Appellees Motion to Dismiss at pp. 6-8, Appendix pp. A-153 thru A-155.

The lower Court rejected this argument, and ruled that not only had the Appellants establish diversity of citizenship (the Appellants were deemed citizens of North Carolina and the Appellees citizens of New York), but had also adequately demonstrated that the Appellant had satisfied the requisite amount-in-controversy through a recitation of lost business and other financial obligations.  See *Lanasa v. Stiene, supra*, at *9 to *13, Appendix pp. A-265 thru A-267.

As the Appellees did not file a Cross-Appeal challenging this part of Judge Matsumoto's ruling, the matter is not before this Court for review.  *United States SEC v. Ahmed, supra*, 72 F.4th at 399.  See also *Greenlaw v. United States*, 554 U.S. 237 (2008) ("an appellate court may not alter a judgment to benefit a nonappealing party."  *Id*. at 244.).

The lower Court then turned to the issue of its jurisdiction over named-defendant, Appellee Rachel Stiene.  The Court not only ruled that Rachel Stiene had not been properly served under the Federal Rules, but also decided that it would not permit a further Amendment of the complaint to allow her to be served.  *Lanasa v. Stiene, supra*, at *13 to *17, Appendix pp. A-267 thru A-268.

Further, while the Appellees, in their Motion to Dismiss sought an award of costs and attorney fees on the basis that the defamation action was one covered by the New York anti-SLAPP statute (N.Y. Civil Rights L. § 70-a) (see Motion to Dismiss at Appendix pp. A-156 thru A-160), the lower Court denied this request.  Judge Matsumoto found that denial of this demand was based upon (a) the failure of the Stienes to assert their own counterclaims against the Plaintiffs (a requirement under the statute, see § 70-a(1)), (b) that the dismissal provision in the statute conflicts with Rules 12 and 56, F.R.Civ.P., and (c) the anti-SLAPP award of fees and costs is limited to a dismissal under the anti-SLAPP statute, not under Rule 12 of the F.R.Civ.P.  See *Lanasa v. Stiene, supra*, 2024 U.S. Dist. LEXIS 70340 at *17-*20, Appendix pp. A-268 thru A-269.

As with the diversity statute issue, as the Appellees have not filed a cross-appeal, this issue is not before the Court.

The lower Court then addressed the defamation claims of the Plaintiffs.  Judge Matsumoto first asserted that the Plaintiffs failed to satisfy the requirement that

(26)

"because he failed to allege that the statements at issue were defamatory." *Id*. at *21, Appendix p. A-269. The Court went on to state that "many of the statements described in LaNasa's Second Amended Complaint are nonactionable opinions." *Id*. at *21 Appendix p. A-270. Judge Matsumoto selected several of the asserted defamatory statements, and opined that, rather than being defamatory in nature, they were merely "opinions" "all too subjective to be proven true or false." *Id*. at *22, Appendix p. A-270. Or, that they were "too subjective to be actionable." *Ibid*.

The Court then went on to characterize a number of statements as "insults", and, while "unquestionably vulgar, they lack objective truth value and thus cannot be defamation." *Id*. at *23, Appendix p. A-270. Finally (in what clearly ignored the Complaint), the Court found that the pleadings failed to assert that statements that were actionable, were not asserted to be false. *Id*. at *25-*26, Appendix p. A-271.

Judge Matsumoto then moved on the Appellants cause of action for intentional infliction of emotional distress. See Amended Complaint at ¶¶ 68 thru 82, Appendix pp. A-42 thru A-46; see also *id*. at ¶¶ 23 thru 27, 56, Appendix pp. A-28 – A-31. Reyling upon the unsupported claim that "the tort is so vaguely defined", the lower Court came to the unsupported factual conclusion that the "allegations against the Stienes do not describe extreme and outrageous conduct." Included herein, was the lower Court's dismissal of the Appellant's claims related to the Appellees'

unauthorized use of the images of the Appellant's minor child. *Id*. at *27-*28, Appendix p. A-271.

The lower Court then moved on to the *prima facie* tort claim of the Appellants. Repeating the argument that it is "highly disfavored", the Court found it unsupported by the submitted allegations, and, further, that these allegations herein really amounted to a claim of emotional distress, not supported by the asserted facts. *Id*. at *28-*29, Appendix pp. A-271 thru A-272.

The Court then addressed the issue of permitting the Plaintiff to amend the complaint. Characterizing the action as one involving "tortured litigation" (with no explanation as to what that means, or how it would apply in the case at Bar), Judge Matsumoto chose to exercise her judicial discretion and deny permission to amend under Rule 15, and denied permission with both (a) needlessly gratuitous comments, and (b) characterizing the Court's prior directions to counsel in a manner not previously done. *Id*. at *30-*32, Appendix p. A-273.

<u>SUMMARY OF THE ARGUMENTS</u>

The position of the Plaintiffs-Appellants on appeal before this Court, is as follows:

a. Naming Rachel Stiene was properly done, and there was sufficient and adequate evidence to maintain her as a Defendant, notwithstanding the fact she was not supposedly properly served;

**(28)**

b. Appellants' complaint laid out in sufficient detail the defamatory statements of the Appellees, and the lower Court erred in its analysis of these published statements;

c. The lower Court improperly substituted its judgment for what constitutes outrageous conduct and should have affirmed the bases and facts set forth for the claim of intentional infliction of emotional distress;

d. *Prima facie* tort was properly laid out in the Verified Complaint, and the application of state tort law on this issue would have yielded an acknowledgement of the adequacy of this tort; and

e. Permission to amend the Complaint should have been granted; the Appellant fully complied with the Court's directions and did not "exceed[] the Court's grant of leave to amend by adding claims".

All of these arguments have support in case law in this Circuit and in the Courts of the State of New York, and are clearly applicable to the case at Bar.

They provide a basis for the *vacatur* and remand to the District Court with proper directions is merited here.

## ARGUMENTS

*Introduction – The Law Applicable to a Rule 12(b)(6) Motion to Dismiss*

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must liberally construe all claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cargo Partner AG v. Albatrans, Inc.,* 352 F.3d 41, 44 (2d Cir. 2003); *Roth v. Jennings,* 489 F.3d 499, 510 (2d Cir. 2007).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009), (*quoting Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, *citing Twombly, supra,* 550 U.S. at 556. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly, supra,* 550 U.S. at 555 (internal quotations, citations and alterations omitted). As long as the Plaintiffs' allegations are plausible the court may not dismiss the complaint. *Id.* at 570; *Iqbal, supra,* 556 U.S. at 680.

**(30)**

Therefore, for the purpose of this Court's review of the decision below, this Court must accept as true all of the facts alleged in the Amended Complaint (s*ee, e.g.*, *Bolt Elec. Inc. v. City of New York*, 53 F.3d 465, 469 (2d Cir. 1995)), and draw all reasonable inferences in favor of the Plaintiffs-Appellants. *See, e.g., Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 216 (2d Cir. 2004). "[U]nless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief", the Defendants' motions to dismiss must be rejected. *Stewart v. Jackson & Nash*, 976 F.2d 86, 87 (2d Cir. 1992) (internal quotations omitted; emphasis added).

Further, if a factual basis is laid out in the Complaint, the Court may not substitute its opinion for an issue that should properly be made before a jury. See *Quiles v. Suffolk County Community College*, 2005 U.S. Dist. LEXIS 51521 at *25-*26 (E.D.N.Y. 2005); *Cheng v. Tams Consultants*, 1991 U.S. Dist. LEXIS 6095 at *9 (S.D.N.Y 1991).

*Introduction – The Law Applicable to a Rule 12(b)(5) Motion to Dismiss*

Judge Matsumoto dismissed the claim as against Rachel Stiene on the basis of a failure to properly serve her. See *Lanasa v. Stiene, supra*, 2024 U.S. Dist. LEXIS 70340 at *13-*17, Appendix pp. A-267 thru A-268.

When deciding a motion to dismiss pursuant to Rule 12(b)(5), the Court must look to Rule 4, F.R.Civ.P., the Rule that governs the content, issuance, and service

of a summons. "If the summons is properly completed, the clerk must sign, seal, and issue it to the plaintiff for service on the defendant." Rule 4(b). See also Rule 4(a)(1)(F), (a)(1)(G). "A summons must be served with a copy of the complaint. The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) . . ." Rule 4(c)(1).

When a challenge has been made to service under Rule 4, "the burden of proof is on the plaintiff to show the adequacy of service." *Howard v. Klynveld Peat Marwick Goerdler*, 977 F. Supp. 654, 658 (S.D.N.Y. 1997), *aff'd* 173 F.3d 844 (2d Cir. 1999). In general, technical errors in the manner of service are not fatal to the effectiveness of the service of process. *Durant v. Traditional Investments, Ltd.*, 1990 U.S. Dist. LEXIS 3074 at *4 (S.D.N.Y. 1990). The reason for such an approach, is that "courts do not wish to deny plaintiffs their day in court for failure to observe mere technicalities". *Macaluso v. N.Y.S. Dep't of Environmental Conservation*, 115 F.R.D. 16, 17 (E.D.N.Y. 1986). However, where the error in service is one that actually results in prejudice to the defendant service will be considered invalid. See *Osrecovery, Inc. v. One Group Int'l, Inc.*, 234 F.R.D. 59, 60 (S.D.N.Y. 2005). It is this element of prejudice that is the key to the determination if service was effective to vest jurisdiction over the subject party, or it is was not so effective. See *Boahen v. Trifiletti*, 2019 U.S. Dist. LEXIS 25865 at *15 (D. Conn. 2019); *Deluca v. AccessIT Group, Inc.*, 695 F. Supp.2d 54, 65 (S.D.N.Y. 2010). And, this prejudice

(32)

is minimally temporized, if not negated, as long as the subject party has received notice of the claims, and has responded to them. See *UMG Recordings, Inc. v. Frawley*, 2011 U.S. Dist. LEXIS 164151 (N.D.N.Y. 2011) (Court recognizes that prejudice cannot be sustained where the subject party has had actual notice of the action; *id.* at *18, and cases cited therein).

## POINT ONE

### DEFENDANT-APPELLEE RACHEL STIENE IS A
### PROPER PARTY TO THIS ACTION

Judge Matsumoto, in her decision, found that the named Appellee, Rachel Stiene, had not been properly served under Rule 4, and hence, based upon Rule 12(b)(5) found that the Court could not exercise jurisdiction over her. See *Lanasa v. Stiene, supra*, at *13 to *17, Appendix pp. A-267 thru A-268. In her opinion, however, Judge Matsumoto, acknowledged that "the Stienes clearly had actual notice that LaNasa sought to press claims against Rachel, . . ." *Id.* at *15, Appendix p. A-267. The Court then found "prejudice" in that "Rachel would suffer at least some prejudice if forced to spend time, money, and resources on another round of dismissal litigation." *Ibid*.

These conclusions of the lower Court, first of all, negate any claim of prejudice suffered by Rachel Stiene, and, ignore the fact that the Court fully addressed, in its

(33)

opinion, any claims that Rachel may have raised in "another round of dismissal litigation."[13]

For the purposes of this Point, it is essential that the Court recognize, as did the lower Court, that Defendant-Appellee Rachel Stiene, from the time of the service of the summons on "Lois Stiene" (see ECF Nos. 23 and 24, Appendix at p. A-7), had actual notice of the pendency of this action — the stated purpose of the issuance of a summons. *Bellafaire v. Town of Wheatfield*, 2019 U.S. Dist. LEXIS 83006 at *6-*7 (W.D.N.Y. 2019) (and cases cited therein); *O'Connor v. 11 West 30th St. Restaurant Corp.*, 1995 U.S. Dist. LEXIS 8085 at *28 (S.D.N.Y. 1995). The Summons, naming "Lois Stiene", was served on counsel for Erik Stiene, and was accompanied by the First Amended Complaint. There can be no doubt, whatsoever, that Rachel Stiene not only knew that she was the properly named party, but that the references in the Complaint clearly, without any doubt whatsoever, referred to her.

This is re-affirmed by the fact that the Motion to Dismiss, upon which the lower Court made its ruling, and which is before this Court for review, included <u>all of the claims as they relate to Rachel Stiene</u>. For all practical purposes, Rachel Stiene has appeared in this case. The formality of a process server handing her the Summons

---

[13] The lower Court continued with its observation that the Amended Complaint "*added* allegations regarding Rachel and named her as a new defendant." *Id*. at *16, Appendix p. A-268. Emphasis in original. All leading to the conclusion, under Rule 15, that further amendment of the complaint would not be permitted. *Ibid*. This issue is discussed *infra*. See Point Five *infra*.

and Complaint has been completed and acknowledged by the Appellees' counsel. Beyond that is the Letter submitted by Appellees' counsel, opposing the proposed amending of the Complaint, which stated specifically that "This office represents Defendants". See ECF No. 57, ¶ 1, Appendix at p. A-63. Emphasis added. Further, on January 9, 2023, Attorney Lower filed a Notice of Appearance on behalf of Erik Stiene. See ECF No. 18, Appendix p. A-7. While no Notice of Appearance was filed after the service of the "Lois Stiene" Summons, thereafter, counsel for the Appellees effectively for all practical/legal purposes, appeared on behalf of the incorrectly named Rachel Stiene. This representation of Rachel Stiene was repeated throughout the case by counsel for the Defendants. *See, e.g.*, ECF No. 63,

> MOTION for Leave to File Excess Pages 16 pages for reply brief to Plaintiff's opposition to Motion to Dismiss Second Amended Complaint by Erik Stiene, Rachel Stiene.

Appendix p. A-16. Emphasis added.

See also ECF No. 64, "MOTION to Dismiss for Failure to State a Claim seeking dismissal of the Second Amended Complaint by Erik Stiene, Rachel Stiene." Appendix at pp. A-16, A-139. Emphasis added.; Caption Sheet to District Court Docket Entries, which lists Attorneys Lower and Schneider as representing "Rachel Stiene".[14] Appendix p. A-3; ECF Nos. 66, 67, 68, 69, and 70 (Appendix at pp. A-17

---

[14] Indeed, the Docket Sheet does not even list Lois Stiene as a party to the action.

thru A-18), all of which are filings made by Appellees' counsel on behalf of "Erik Stiene and Rachel Stiene", not "Erik Stiene and Lois Stiene".

To hold otherwise, and find that Rachel Stiene is not a proper party to this action, places form head and shoulders above substance. See generally *Fashion TV LLC v. Aktiengesellschaft*, 2018 U.S. Dist. LEXIS 244304 at \*6 (S.D.N.Y 2018); *Adidas Sportschuhfabriken Adi Dassler Stiftung & Co., K.G. v. Cheung*, 1990 U.S. Dist. LEXIS 3953 at \*15 (S.D.N.Y 1990).

## POINT TWO

### PLAINTIFFS-APPELLANTS SET FORTH VALID GROUNDS FOR THE TORTIOUS CLAIMS OF DEFAMATION

The Appellants' First and Second Causes of Action are for Defamation and Libel and for Slander. See Second Amended Complaint at ¶¶ 37 thru 56, 57 thru 67, respectively, Appendix pp. A-83 thru A-91. In her opinion Judge Matsumoto found that the causes of action were not adequately sustained by the pleadings, and dismissed these causes of action. See *Lanasa v. Stiene, supra*, at \*20 to \*26, Appendix pp. A-269 thru A-271.

After setting forth the fundamentals of a claim for defamation under New York law (*id*. at \*20), the lower Court found that either the alleged defamatory statements were opinions (see *id*. at \*21-\*23), non-actionable insults (*id*. at \*23), were not statements provable as being true or untrue (*id*. at \*23-\*4), or "LaNasa still has not

stated a claim with respect to those statements because he failed to plead that any of them is false." *Id*. at *24-*25.

All of these assertions are incorrect.

First of all, it is essential, in any claim alleging defamation, that the alleged defamatory statements be viewed within the context of how they were published and to whom, or to what they were directed. "[T]he Court of Appeals of New York has consistently focused its analysis on the overall context in which the complained-of assertions were made." *Flamm v. Am. Ass'n of University Women*, 201 F.3d 144, 153 (2d Cir. 2000). This "context" factor includes not only "the immediate context in which the disputed words appear," but also "the larger context in which the statements were published, including the nature of the particular forum." *Brian v. Richardson*, 87 N.Y.2d 46, 51 (1995). In accord see *Rapaport v. Barstool Sports, Inc.*, 2024 U.S. App. LEXIS 556 at *5-*6 (2d Cir. 2024).

As noted above, Judge Matsumoto first found certain statements to be "opinions" and therefore not actionable. Here, Her Honor, within her analysis of the statements being "opinion", found that such statements as "LaNasa was 'inadvertently honest,' that LaNasa was a 'warrior for the old ways,' that LaNasa's company was 'scraping the bottom of the privy,' that LaNasa 'fucked over' his business partners, that LaNasa 'included a Nazi in [his] company,' and that LaNasa's wife was the 'new

(37)

face' of his company, . . ." were "too subjective to be proven true or false." *Id*. at *22, Appendix at p. A-270.

First of all, all of these statements, as noted above, were made in the context of the Plaintiff-Appellant businesses. They were directed at Lanasa as the owner of Plaintiff-Appellant businesses TSR, LLC and Dungeon Hobby Shop Museum. And, were, it is alleged, in the complaint, designed to harm those businesses. *See, e.g.*, First Amended Complaint at ¶¶ 17, 19, 21, 22, Appendix at pp. A-23, A-24, A-25, A-26, A-27; Second Amended Complaint at ¶¶ 17, 19, 21, 22, Appendix at pp. A-73, A-74, A-75, A-76, A-77. And, these published statements of the Appellees must be viewed within that context. See *Shader v. Overby*, 2022 N.Y. Misc. LEXIS 275 at *17 (S. Ct. Albany Co. 2022), citing to and quoting from *Brian*, *supra*.

More to the point, is that these statements, made by the Appellees, were either not opinion, or were mixed opinion and fact — in both cases survivable in a Rule 12 motion to dismiss. If a particular statement is found to contain an opinion, the reviewing court must determine "whether the statement is 'pure opinion' (and thus non-actionable) or 'mixed opinion' (and therefore actionable)." *Chau v. Lewis*, 771 F.3d 118, 129 (2d Cir. 2014). See also *Satanic Temple, Inc. v. Newsweek Magazine, LLC*, 661 F. Supp.3d 159, 173 (S.D.N.Y. 2023). The difference, as laid out by the New York Court of Appeals, is as follows,

> A "pure opinion" is a statement of opinion which is accompanied by a recitation of the facts upon which it is based. An opinion not accompanied by such a factual recitation may, nevertheless, be "pure opinion" if it does not imply that it is based upon undisclosed facts . . . When, however, the statement of opinion implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it, it is a "mixed opinion" and is actionable.

*Steinhilber v. Alphonse*, 68 N.Y.2d 283, 289 (1986).

In accord see *Stega v. New York Downtown Hospital*, 31 N.Y.3d 661, 674-75 (2018); *Riggio v. County of Nassau*, 218 A.D.3d 502, 503 (2d Dep't 2023).

However, on a practical real-world basis, "[d]istinguishing between assertions of fact and nonactionable expressions of opinion has often proved a difficult task." *Sandals, supra,* 86 A.D.3d at 39. Courts rely on three factors in making the distinction: "(l) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal . . . readers or listeners that what is being read or heard is likely to be opinion, not fact." *Davis v. Boeheim,* 24 N.Y.3d 262, 270 (2014). The "key inquiry is whether challenged expression, however labeled by defendant, would reasonably appear to state or imply assertions of objective fact." *Immuno AG v. Moor-Jankowksi,* 77 N.Y.2d 235, 243 (1991).

The contextual factor, which is often dispositive, "lends both depth and difficulty to the analysis, and requires that the court consider the content of the communication as a whole, its tone and apparent purpose." *Davis, supra,* 24 N.Y.3d at 270, quoting *Brian*, *supra*, 87 N.Y.2d at 51. Consistent with this holistic approach, "[r]ather than sifting through a communication for the purpose of isolating and identifying assertions of fact, the court should look to the over-all context in which the assertions were made and determine on that basis whether the reasonable reader would have believed that the challenged statements were conveying facts about the [plaintiff]." *Brian, supra,* 87 N.Y.2d at 51. Emphasis added.

For example, describing a business person, as "inadvertently honest", is the same as saying they are dishonest. In the context of directing the statement in a commercial sense, as here, it is clear that no one would want to deal with a dishonest businessperson.[15] And, dishonesty, in this context can be proven or disproven. Did one of the Appellants' business purposes overcharge a credit card? Did they promise

---

[15] The same analysis would be applicable to the published statement of Stiene that "LaNasa 'fucked over' his business partners, that LaNasa 'included a Nazi in [his] company,' . . ." See *id*. at *22. Clearly the latter statement is something provable or not. Testimony by Lansasa's "business partners" would either establish that he was an honest forthright businessman or otherwise. And, a claim that a Mr. Lansasa (presumably knowingly) employed a Nazi is susceptible of being interpreted as actionable defamation. *See, e.g., Christopher v. American News Co*., 172 F.2d 275, 279 (7th Cir. 1948) (libelous *per se* to charge that plaintiff was "a Nazi or otherwise an adherent and sponsor of the unpatriotic and subversive theories of white supremacy and racial superiority"). See also *Gertz v. Robert Welch*, 418 U.S. 323 (1974) (accusations that one is "a 'Leninist' and a 'Communist-fronter' . . . are generally considered defamatory", *id*. at 331, n. 4); *Buckley v. Littell*, 539 F.2d 882, 893 n. 11 (2d Cir. 1976), *cert. denied* 429 U.S. 1062 (1977) (*dictum*).

to deliver something and did not? Did they cheat their employees by underpaying them? *Etc*. Or, were they honest in their dealings with the public? All of this is provable one way or the other. The word "honest" is frequently used as an adjective to assist in evaluating a party's conduct. *See, e.g., People v. Telfair*, 41 N.Y.3d 107 (2023) ("an honest mistake, accident, or inadvertence (see Black's Law Dictionary [11th ed 2019] [defining 'honest mistake' as '(a) mistake made unintentionally' and an 'accident' as '(a)n unintended and unforeseen injurious occurrence'". *Id*. at 395. Dissenting op., Cannataro, J.); *People v. Perry*, 2021 NYLJ LEXIS 1183 (West. Co. City Ct. 2023) ("Article 245 does not define what constitutes a 'proper' Certificate of Compliance. In examining whether the People made honest efforts to comply with CPL § 24520[1], 'good faith, due diligence, and reasonableness under the circumstances are the touchstones by which a certificate of compliance must be evaluated.'" *Id*. at *4-*5.); *In re Estate of Quackenbush*, 152 Misc.2d 888 (Surr. Ct. Jefferson Co. 1991) ("fair consideration has been defined as that 'which is honest or free from suspicion, or one actually valuable, but not necessarily adequate or a full equivalent'". *Id*. at 895.). See also U.C.C. § 1-201(b)(20), "'Good faith' means honesty in fact in the transaction or conduct concerned.". All of these are clearly provable or not in a court of law.

(41)

Further, a statement such as "a warrior for the old ways you know racism, gay bashing, women in the kitchen",[16] clearly implies that the Appellant is someone who abides by the mores and beliefs associated with standards, easily established, from a bygone era. It is clear that this can either be proven or not, by actions or statements of the Appellant evidencing such beliefs. And, in a trial, it would be incumbent upon the Appellees to put forth such proof to a factfinder. And, once again, directed at a commercial enterprise, it is clearly designed to damage that enterprise financially by discouraging customers from doing business with the enterprise, and by discouraging any potential employees or business partners to work with the Appellant. This is all either provable or not. And, the terms used here are not only easily defined, but are understood by the general public. *See, e.g.*, Herek, G., Berrill, K., *Gay-Bashing: A Social Identity Analysis of Violence Against Lesbians and Gay Men (From Hate Crimes: Confronting Violence Against Lesbians and Gay Men*, U.S. Dep't of Justice, Office of Justice Programs (1992). See also *Cost Controls v. Am. Preferred Prescription*, 1997 Bankr. LEXIS 387) (Bankr. Ct. E.D.N.Y. 1997) (in which the Court described an exhibit as follows, "essentially a gay bashing letter to defame and gain advantage over a competitor", *id*. at *30).

---

[16] In her decision, Judge Matsumoto, in the portion dealing with defamation, did not reprint the entire offending quotation (which she had done earlier), and only the words "warrior for the old ways". Compare *Lanasa v. Stiene, et al., supra*, at *3 and *22.

(42)

In this analysis, Judge Matsumoto commented that "more context theoretically could render some of these statements defamatory, . . ." *Id*. at *23. This is perplexing, as it recognizes that the subject statements may well have been defamatory in nature.[17] This leads to the issue that the Court should have observed its earlier ruling that a motion for summary judgment, after the close of discovery would have been the more advisable way to proceed. See Dist. Ct. Dckt. Entry dated November 3, 2023, in which the Court stated,

> Defendants might consider withdrawing their motion to dismiss and including the arguments from that motion in a motion for summary judgment.

Defendants' counsel declined to do so. This was followed, little more than a month later, by a request from Defense counsel (which Plaintiffs' counsel did not object to) to extend the time to complete discovery so that Plaintiff Lanasa could be

---

[17] Judge Matsumoto's comment that "theoretically" some of the statements in the Complaint would satisfy the defamation standard is perplexing. *Id*. at *23. "Dismissal of a complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted is not warranted if a plaintiff pleads 'enough facts to state a claim to relief that is plausible on its face.'" *Schafer v. Direct Energy Svces., LLC*, 845 Fed. App'x 81, 82 (2d Cir. 2021), quoting *Bell Atlantic Corp. v. Twombly, supra*. If there was a theory under which the Appellants' Complaint could be sustained, then it is difficult to understand how the lower Court still granted the Appellees' the relief they were seeking. Indeed, many courts, in ruling on a Rule 12(b)(6) motion, rely upon a finding that under <u>no theory</u> can the allegations in the complaint be sustained. *See, e.g., Little & Robinson, LLP v. Garrett*, 720 F. Supp.2d 417, 422 (S.D.N.Y. 2010); *Korzeniowski v. Encore Receivable Management*, 2010 U.S. Dist. LEXIS 41206 at *7 (D. Conn. 2010).

Compare *Fjord v. AMR Corp.*, 506 B.R. 368 (Bankr. Ct. S.D.N.Y. 2014), where in dismissing certain claims the Court stated, "the Plaintiffs here have failed to make any specific allegations regarding <u>any theory of recovery</u> for Section 4 damages." *Id*. at 386. Emphasis added.

If there was some theory under which the Appellants' claims could be sustained (which Judge Matsumoto believed existed based on the cited statement in her ruling) then her dismissal was in error.

deposed. See ECF No. 58 (Dec. 18, 2023). This was a joint request, as Plaintiffs' counsel anticipated a similar courtesy from Defendants' counsel. After the lower Court granted this request, on December 19, 2023, Mr. Lanasa was deposed on December 21, 2023. The next day counsel for the Plaintiffs submitted a letter to the Court, similarly requesting an extension in order to depose Mr. Stiene — a deposition that would have, as Judge Matsumoto stated, provided "more context". ECF No. 21. Sadly, and to no great surprise, Defense counsel failed to reciprocate the courtesy extended by Plaintiffs' counsel, and submitted a letter to the Court opposing the request to depose Mr. Stiene. ECF No. 60. To this opposition, a Reply was also filed. ECF No. 61. Judge Matsumoto never ruled on this motion of Plaintiffs' counsel, and immediately moved on to the process of granting Defense counsel permission to file its Rule 12 Motion to Dismiss. See Dist. Ct. Dkt. Entry dated January 9, 2024. See Appendix at p. A-15.

The above sequence of events is essential to demonstrate that the lower Court's "suggestion" of "more context" would have been provided had it granted the above request of Plaintiffs' counsel.[18]

Judge Matsumoto also ruled that certain statements alleged to be made with malice, were not defamatory as "'A statement is 'defamatory' only if it 'exposes a

---

[18] Clearly any remand by this Court must include a direction that Discovery is to be re-opened so as to permit Appellants' counsel to complete the Discovery it was denied previously.

person to public contempt, ridicule, aversion[,] or disgrace.'" *Id*. at *23-*24, quoting from *Town of Messena v. Healthcare Underwriters Mutual Ins. Co.*, 98 N.Y.2d 435 (2002). Here again, the lower Court failed to analyze the offending statements in the context in which they were published — an online attack against the Appellants' commercial interests. The lower court's conclusion that the subject "statements did not expose LaNasa to public contempt, ridicule, aversion, or disgrace.", is totally conclusory, with no appreciation for the context in which they were made. See *Stroup v. Nazzaro*, 91 A.D.3d 1367, 1368 (4th Dep't 2010) (court holds that certain statements, insulting in nature, are not actionable based upon the context in which they were made).

The lower court also asserts as a basis for dismissal that "LaNasa still has not stated a claim with respect to those statements because he failed to plead that any of them is false." *Id*. at *24-*25. In the Complaints it is specifically alleged that the cited public statements are false. Paragraph 22 of the both the First and Second Amended Complaints states as follows:

> Among, but not limited to, the knowingly, malicious, and intentional and <u>false and defamatory statements</u>, and other tortious conduct, published online by the Defendants were the following:

See First Amended Complaint at ¶ 22, Appendix p. A-25; Second Amended Complaint at ¶ 22, Appendix p. A-74.

These claims of falsity are repeated throughout the Complaints as they relate to the above published statements. *See, e.g.*, First Amended Complaint at ¶¶ 17, 19, 29, 30, 31, 40, 41, 42, 43, 47, 48; Second Amended Complaint at ¶¶ 17, 19, 29, 30, 31, 40, 41, 42, 43, 47, 48. And, further, in the Causes of Action for both Defamation and Slander, not only are the claims of falsity repeated, but there is specific reference to the enumerate published statements in ¶ 22 of the Complaints. See First Amended Complaint at ¶¶ 45, 58; Second Amended Complaint at ¶¶ 45, 58.

"To satisfy the falsity element of a defamation claim, plaintiff must allege that the complained of statement is 'substantially false.' 'If an allegedly defamatory statement is 'substantially true,' a claim of libel is 'legally insufficient and . . . should [be] dismissed.'" *Franklin v. Daily Holdings, Inc*., 135 A.D.3d 87, 94 (1st Dep't 2015), cited with approval in *Tannerite Sports, LLC v. NBCUniversal News Group*, 864 F.3d 236, 242 (2d Cir. 2017), relied upon by the lower Court. *Id*. at *25.

As long as the plaintiff asserts that the published statement is false, and that it defames him or her, the falsity element has been satisfied. Under New York law the burden of proving falsity is upon the Plaintiff, however, that burden is satisfied, at the pleading stage, by setting forth the alleged defamatory statement and alleging its falsity. If a published statement is "substantially true" then it cannot survive the "falsity element" of defamation. *Olivet University v. Newsweek Digital, LLC*, 2024 U.S. Dist. LEXIS 81554 at *16-*17 (S.D.N.Y. 2024). Once a case reaches either

(46)

the summary judgment stage or trial stage that burden of establishing falsity, must be satisfied. See generally *Neuman v. Global Security Solutions, Inc.*, 2023 U.S. App. LEXIS 25263 at \*5-\*6 (2d Cir. 2023) (Court of Appeals sustains, at Rule 56 stage, failure of plaintiff to establish falsity of alleged defamatory statements).

The lower court found that the Appellants had not satisfied this requirement by relying upon its earlier finding that the published statements in ¶ 22 of the Complaint were opinions and not asserted facts. However, as set forth above, these "opinions" were anything but, and could easily be proven either truthful or false. Lanasa's assertion that the published statements were false is sufficient, at this stage of the proceedings as he has alleged that these were factual assertions (*e.g.*, Lanasa is dishonest, knowingly employs a Nazi, *etc*.), and he has alleged them to be false representations of his behavior and employment and business practices. See *Ahmed v. Nnoli*, 2024 NYLJ LEXIS 548 (S. Ct. N.Y. Co. 2024) ("Plaintiff's contention that defendant neither observed nor discussed plaintiff's competency in executing certain protocols does not suffice to meet the threshold of pleading falsity. Notably, <u>plaintiff refrains from asserting that the statements are false</u> or that the protocols were executed correctly, a crucial omission that significantly weakens the defamation claim." *Id.* at \*9.); *Zuckerbrot v. Lande, supra*, 75 Misc.3d at 293; *Franklin Daily Holdings, supra*, 135 A.D.3d at 94. See also *Tilem & Assocs., P.C. v. Pastore*, 2018 N.Y. Misc. LEXIS 14432 (S. Ct. West. Co. 2018), where the court denied a motion

(47)

to dismiss a defamation complaint, finding that the allegations in the complaint were assertions by the plaintiff that that alleged defamatory statements were "false, misleading and injurious". The Court found that these allegations were sufficient to satisfy the falsity element of the law. *Id*. at *4-*5, *7-*8.

For the above reasons, this Court should vacate the findings of the District Court and remand the matter for further proceedings in accordance thereof.

### POINT THREE

#### PLAINTIFFS-APPELLANTS SET FORTH VALID GROUNDS FOR THE TORT OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The Appellants' Third Cause of Action is for Intentional Infliction of Emotional Distress. See First Amended Complaint at Appendix pp. A-42 thru A-46; Second Amended Complaint at Appendix pp. A-92 thru A-96. The bases for the Cause of Action were two-fold: first of all, the posting of the images of the Appellant Lanasa's spouse and minor female child, without authorization, on the Appellees' Youtube® (see First Amended Complaint at Appendix p. A-43; Second Amended Complaint at Appendix pp. A-93), and, secondly, the multiple threats of violence (both direct and indirect) against the Appellant Lanasa and his family. See *id*. at Appendix pp. A-26, A-44, A-46, A-49. See also Second Amended Complaint at Appendix pp. A-75, A-93, A-94.

The lower Court, relying upon the generalized statement by the New York courts that to sustain such a cause of action for Intentional Infliction of Emotional Distress, the subject actions must constitute "outrageous conduct". See *Lanasa v. Stiene, supra*, 2024 U.S. Dist. LEXIS 70340 at *26-*27, Appendix pp. A-271 thru A-272. In a completely conclusory statement, without any supporting law (except come generalizations), the lower Court came to the conclusion that,

> LaNasa failed to state an intentional infliction of emotional distress claim because his allegations against the Stienes do not describe extreme and outrageous conduct.

*Id*. at *27, Appendix p. A-272.

Not only did this constitute a clear improper substitution of a fact-based issue by the lower Court, but it completely ignored the nature of the alleged offending conduct. It trivialized the actions of the Appellees, and placed the lower Court in the role of the jury in deciding if the conduct was, in fact, "extreme and outrageous".

To prevail on a claim of intentional infliction of emotional distress, under New York law, a plaintiff must show (i) extreme and outrageous conduct, (ii) intent to cause, or disregard of a substantial likelihood of causing, severe emotional distress, (iii) a causal connection between the conduct and injury, and (iv) severe emotional distress. *Ratto v. Oliva*, 195 A.D.3d 870, 872-43 (2d Dep't 2021). See also *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 121 (1993). While the standard is considered to be "rigorous and difficult to satisfy" (*Howell v. New York Post Co., supra*, 81 N.Y.2d

at 122), when the alleged facts in a complaint lay out the basis for such a tortious claim the matter is clearly one for a factfinder (*i.e.*, jury) to determine.

In Judge Matsumoto's ruling she made no observation as to whether the Appellees' intent was to harm the Appellant, if there was a causal connection between the Appellees' actions and the harms suffered by the Appellant, and if the harm constituted emotional distress. She based her ruling solely on her undefined evaluation that the actions complained of were not extreme or outrageous.

First of all, the posting of the Facebook® images, without the permission of Ms. Lanasa as spouse and mother of the infant, were clearly intentional. In the Cease and Desist letter sent to Appellee on July 19, 2022 (as annexed to the Complaint), both the image posting and the threats were specifically referenced (see Exhibit A to Amended Complaint, Appendix pp. A-54 thru A-57), and, were ignored by the Appellee who did not remove them from his Youtube® website. See First Amended Complaint at ¶¶ 33, 34, Appendix pp. A-33 thru A-34. The same is as to the physical threats as against the Lanasas. It was this refusal to remove the offending image and statements, that constitute clear intent to harm.

Secondly, the Complaint, never contradicted by the lower Court asserted not only that "Plaintiff has suffered serious and continuous psychological trauma.", but also that

**(50)**

> Plaintiff has had creators, publishers, artists, and customers turn away
> from Plaintiff LANASA, and Plaintiffs TSR and DUNGEON HOBBY,
> stating that they are scared and angry, vowing not to work with Plaintiff
> due to the false, fabricated statements made by Defendant E. STIENE,
> and his followers.

See First Amended Complaint at ¶¶ 74, 75, Appendix pp. A-44 thru A-45.

Finally, the Court below made no observation as to whether the actions had caused the Appellants severe emotional distress. As this is asserted in the Complaint, and the Court is obligated, on a Rule 12(b)(6) Motion to Dismiss, to accept as true all of the facts alleged in the Amended Complaint (*see, e.g.*, *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 5 (2010)), the claim of the Appellants must be accepted.

Indeed, Judge Matsumoto at no time disagreed with any of these observations and conclusions.

As set forth in Appellants' Opposition to the Motion to Dismiss, the fear engendered by the clear threats of the Appellee (*see, e.g.*, "I hope they like lead because I have plenty to offer if that is the case"; "I already know your address; I already know your fucking phone number; I know your wife's phone number.", First Amended Complaint at ¶ 73, Appendix p. A-44) were not deemed as empty by the Appellant considering the "fact" that Stiene was supposedly an ex-NYPD officer and, hence, very possibly legally owned a firearm. See Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss, at Appendix p. A-211, n. 18.

Beyond this, the Appellant laid out direct costs associated with these actions.  See Lanasa Declaration annexed to Opposition to Motion to Dismiss, Appendix pp. A-215 thru A-216, at ¶ 7 therein.[19]  See *Rissetto v. County of Clinton*, 2016 U.S. Dist. LEXIS 115832 (N.D.N.Y. 2016) (Court holds notice of claim as against county sufficient to withstand dismissal of claim for IIED where plaintiff "made reference to . . . 'mental anguish', . . . 'emotional injury' and 'related medical expenses'".  *Id.* at *148-49 n. 112.  Emphasis added.).

The lower Court found, without any genuine explanation as to why the enumerated actions of Stiene[s] were not sufficiently "extreme and outrageous" as to satisfy the judicial standard.  Other courts have found similar conduct sufficiently egregious so as to merit the issue going before a jury.  *See, e.g., Stam v. Farrell*, 223 A.D.2d 260, 262 (3d Dep't 1996) (jury could rationally find that defendant's conduct was extreme and outrageous in that he engaged in a deliberate and malicious campaign of harassment and intimidation directed towards plaintiffs, including screaming vile obscenities at plaintiff and his young daughters; threatening them with physical harm); *Dejesus v. Moshiashvili*, 2017 N.Y. Misc. LEXIS 1351 at *15-*16 (S. Ct.

---

[19] As laid out in Appellants' Opposition (to which no denial was made by the Appellees, and to which the lower Court made no mention of),

> To support this Cause of Action, in the Plaintiffs' Rule 26(a)(1)(A)(i), has named both the therapist as a witness to testify, at trial, and his wife, as to the emotional harm that the Defendants actions have caused.

Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss, at Appendix p. A-212.

N.Y. Co. 2017) (court holds false allegations of sexual misconduct, accompanied by plaintiff's assertion of visits to a psychologist (see Lanasa Declaration annexed to Opposition to Motion to Dismiss, Appendix pp. A-215 thru A-216), sufficient to defeat a motion to dismiss);

As one court has observed, while the initial determination as to the outrageousness of the conduct is for the Court to decide,

> "Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability" (Restatement [Second] of Torts § 46, comment h.

*Cyrus v. Papas Dodge, Inc*., 2012 U.S. Dist. LEXIS 42618 at *13 (D. Conn. 2012).

See also *164 Mulberry St. Corp. v. Columbia Univ.*, 4 A.D.3d 49, 58 (1ˢᵗ Dep't), *appeal dism'd sub nom., Chez Josephine v. Columbia Univ.*, 2004 N.Y. LEXIS 955 (2004); *Richard L. v. Armon*, 144 A.D.2d 1 (2d Dep't 1989) ("it is not for the court completely to usurp the function of the jury and to decide itself that his conduct is in fact so extreme." *Id*. at 6-7.).

See N.Y. PATTERN JURY INSTRUCTIONS Vol. 2A at 3:6 (2022 ed.).

In the case at Bar the Complaint alleged threats from the Appellees, statements that the Appellees knew where the Appellant lived and even had the Appellant's wife's phone number, the Appellee was an individual who one could reasonably

believe owned a firearm (not refuted by the Appellee; see Defendants' Reply in Support of Motion to Dismiss, Appendix p. A-261),[20] published clear images of the Appellant's wife and child on line, and made no attempt to correct these actions when it was demanded they do so, and the Appellant provided a sworn statement of relevant health care visits. This conduct was sufficiently outrageous to pass the initial judicial stage, and Appellant should have been given the opportunity to present it to a jury.

POINT FOUR

PLAINTIFFS-APPELLANTS SET FORTH VALID GROUNDS
FOR *PRIMA FACIE* TORT CAUSE OF ACTION

The Appellants' Fourth Cause of Action was for *prima facie* tort. See First Amended Complaint at Appendix pp. A-47 thru A-50; Second Amended Complaint at Appendix pp. A-96 thru A-100. The bases for the Cause of Action were two-fold: first of all, the emotional harm suffered by the Appellants due to the on-line postings of the Appellees, and secondly, the harm to the Appellants' businesses doe to the intentionally false statements of the Appellees. See First Amended Complaint at ¶¶ 85 thru 87, and cross-references therein. In support of this tort, the Appellant referenced, for the purposes of establishing special damages, the fact that Appellant

---

[20] See generally *Staton v. Berbary*, 2004 U.S. Dist. LEXIS 14898 at *31 (E.D.N.Y. 2004) ("Staton's possession of a gun and repeated threats to kill the victim rise to the level of egregious conduct discussed in [*People v.*] *Gonzalez* [80 N.Y.2d 146 (1992)].").

was forced to cancel a planned tour, with Geek Nation®. See *id*. at ¶¶ 88, 24. The Appellant further referenced the image postings of the Appellant's minor child, and his fears that such unrepentant action on Appellees' part would

> cause[] further damage and harm to the Plaintiff as it is recognized that child pornography sites often, through morphing and deep fake technology, sexualize innocent photographs of minor children — a fact that is well-known to the general public.

See *id*. at ¶ 90, Appendix pp. A-48 thru A-48.

See also Second Amended Complaint at ¶ 90, Appendix p. A-98.

Judge Matsumoto dismissed this Cause of Action. See *Lanasa v. Stiene, supra*, 2024 U.S. Dist. LEXIS 70340 at *28-*29, Appendix pp. A-272 thru A-273. After setting forth the basic standards and requirements to sustain such a cause of action under New York tort law, the lower Court found the tort inapplicable either (a) that it relied upon alleged defamatory statements, and (b) the harm caused by the posting of the images of Appellant Lanasa's wife and minor child as an action for emotional distress. See *id*. at *29. The Court then went on to find (with on explication whatsoever) that the allegations were "'insufficient to allege special damages.' . . . Accordingly, LaNasa has failed to state a prima facie tort claim." *Ibid*. Citations omitted. Appendix p. A-273.

What the lower Court has done is conflate the separate causes of action for defamation and *prima facie* tort, and then, having "found" that the causes of action

for defamation were not sustained, the Plaintiff's causes of action for *prima facie* tort "must fail". The on-line postings of the Appellee, specifically referenced and repeated in the cause of action for *prima facie* tort, were unique to that tortious allegation. See First Amended Complaint at ¶ 92, Appendix p. A-48 thru A-49. Compare *id*. at ¶ 22, Appendix pp. A-25 thru A-28. In other words, the actions complained of relating to the *prima facie* tort were separate and distinct from those alleging defamation and slander.

Contrary to the lower Court's ruling, if the applicable standards for *prima facie* tort, under New York law, are applied to the case at Bar, the Appellant has satisfied these. "Prima facie tort allows a remedy for the intentional infliction of harm, which results in special damages, without any excuse or justification, by an act or series of acts which would otherwise be lawful . . ." *Golub v. Esquire Publishing, Inc.*, 124 A.D.2d 528, 529 (1st Dep't 1986), *leave den.* 69 N.Y.2d 606 (1987). See also *533 East 12th Street, LLC v. DL 531 East 12th Owner LLC*, 2020 N.Y. Misc. LEXIS 4926 at \*23-\*24 (S. Ct. N.Y. Co. 2020).

The tort requires that the plaintiff plead that the "defendants' actions were solely motivated by malice or disinterested malevolence".[21] *Aramid Entertainment Fund*

---

[21] Defined as "the genesis which will make a lawful act unlawful must be a malicious one unmixed with any other and exclusively directed to injury and damage of another." *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 333 (1983). See also *Meridian Capital Partners, Inc. v. Fifth Ave. 58/59 Acquisition Co. L.P.*, 2007 N.Y. Misc. LEXIS 9487 at \*14-\*15 (S. Ct. N.Y. Co. 2007), *aff'd* 60 A.D.3d 434 (1st Dep't 2009).

*Ltd. v. Wimbeldon Financing Fund, Ltd.*, 105 A.D.3d 682 (1st Dep't), *leave den.* 22 N.Y.3d 858 (2013). And, that the plaintiff has suffered "special damages". *Golub*, *supra*, 124 A.D.2d at 529. See also *Kassab v. Kasab*, 2017 N.Y. Misc. LEXIS 2905 at *38 (S. Ct. Qns. Co. 2017), *mdf'd on other grnds.* 195 A.D.3d 832 (2d Dep't 2021).

In the case at Bar, Appellant had pled all of these elements. The intentional disinterested malevolence is clearly demonstrated by Appellees' statement such as

> "jackass comes to my house; I hope they like lead because I have plenty to offer if that is the case"
> * * *
> "Here's the thing Justin. I already know your address; I already know your fucking phone number; I know your wife's phone number."
> * * *
> "my wife just told you that she would grow a cock so you could eat that cock"

See First Amended Complaint at ¶ 91, Appendix pp. A-49 thru A-50; Second Amended Complaint at ¶ 92, Appendix p. A-98.

These malevolent on-line posted statements of the Appellees were solely and exclusively designed to harm the Appellant, and for no other purpose.

The same is true of the on-line posting of the images of Appellant's wife and minor child. See discussion *supra*.

Appellant further laid out the "special damages" that resulted in direct pecuniary loss. See Second Amended Complaint at ¶¶ 24, 75, 88, Appendix pp. A-80, A-94 –

A-95, A-97. See also Lanasa Declaration annexed to Opposition to Motion to Dismiss, Appendix pp. A-215 thru A-216.

"An essential element of the cause of action is an allegation of special damages [which] must be alleged with sufficient particularity to identify actual losses and be related causally to the alleged tortious acts." *Lincoln First Bank of Rochester v. Siegel*, 60 A.D.2d 270, 279-80 (4th Dep't 1977). Here, the Appellant has set forth not only specific business losses, but also the fact that Appellant was forced to expend sums of mental health professionals based upon the Appellees' direct threats of physical violence. See also Lanasa Declaration, *supra*.

Such pleading satisfies the "special damages" requirement. See *Bass v. Kansas*, 198 A.D.2d 693, 694 (3d Dep't 1993) (claimed medical expenses as special damages established by disclosure pursuant to CPLR Rule 3043(a)(9) relating to Bills of Particulars in personal injury cases); *Keller v. Rippowam Cisqua School*, 2021 N.Y. Misc. LEXIS 17740 at *4-*5 (S. Ct. West. Co. 2021), *aff'd* 208 A.D.3d 654 (2d Dep't 2022).

As such this Court should vacate the lower Court's ruling denying relief on the cause of action for *prima facie* tort.

## POINT FIVE

### LEAVE TO AMEND THE COMPLAINT SHOULD HAVE BEEN

### GRANTED BY THE DISTRICT COURT

Notwithstanding that the Appellant has not formally requested permission to file an Amended Complaint the lower Court finalized its opinion by denying, *sua sponte*, any request to so Amend the Complaint. See *Lanasa v. Stiene, supra*, 2024 U.S. Dist. LEXIS 70340 at *29-*31, Appendix p. A-273. This Amended Complaint, would have, presumably made clear that the correct identification of the second Defendant was Rachel Stiene and not Lois Stiene. See Point One, *supra*.

It is the position of the Appellant that the "corrected" Second Amended Complaint, which clarified that the correctly named Defendant Rachel Stiene and not Lois Stiene, not only complied with Judge Matsumoto's order, following the January 2023 teleconference, but, did not, in fact, add any new claims, notwithstanding Judge Matsumoto's claim to the contrary. See *id*. at *31.

The problem arose where the Appellant, in the First Amended Complaint (ECF No. 20), had properly added, as co-defendant "LOIS STIENE, aka RACHEL STIENE". See Appendix at p. A-20. This party, presumed to be the spouse of Erik Stiene, resided with Defendant Erik Stiene (see *id*. at ¶ 6), and participated in one or more of the alleged defamatory statements. See *id*. at ¶ 22, Appendix pp. A-25, A-27, A-28; ¶ 92, Appendix p. A-50.

It was not until counsel for the Defendants submitted conclusive proof that "LOIS STIENE" was actually RACHEL STIENE, the former being the mother of the Defendant Erik Stiene, and the latter the actual name of Erik Stiene's spouse. As a result thereof, on November 26, 2023, counsel for the Plaintiffs sent a letter to the Court informing it, as follows:

> I will be submitting a letter to the Court requesting permission to amend the Complaint as follows:
> 1. Based upon this representation of yours [*i.e.*, counsel for the Defendants]: "Lois Stiene has zero connection to Plaintiffs or this litigation.", removing her name as a Defendant.

ECF No. 55, Appendix p. A-55.

This was supplemented by a letter on that same date making clear (among other issues) that:

> To be clear: Plaintiffs . . . withdraw any claims as against Lois Stiene, based upon Defendants' counsels' representations.

ECF No. 56, Appendix p. A-62.

This was followed by a screed from counsel for the Defendants.[22] Ignoring the hyperbole and needless tone of the letter (notably from counsel no longer associated

---

[22] This letter was essentially a request for sanctions under Rule 11. In Appellant's Opposition to Dismiss (see Appendix at pp. A-189 thru A-190), it was made plain that the correction of the name from Lois to Rachel was done, among other bases, within the context of the safe harbor provision of Rule 11. See Rule 11(c)(2), which grants to a party the opportunity to "withdraw or correct a challenged submission". *In re Pennie & Edmonds LLC*, 323 F.3d 86, 89 (2d Cir. 2003). Emphasis added. In accord see *Sanderson v. Leg Apparel LLC*, 2024 U.S. Dist. LEXIS 22645 at *2-*3 (S.D.N.Y. 2024). See also *Heaston v. City of New York*, 2022 U.S. Dist. LEXIS 104247 at *27 n. 18 (E.D.N.Y. 2022) (noting the difference between the "subjective bad faith" filing of a pleading versus the absence of same — which was the situation in the case at Bar).

with this case, or affiliated with the Appellees' counsel's law firm), the letter, at no time, objected to the correction from "Lois" to "Rachel", especially, as the caption specifically stated "LOIS STIENE, aka RACHEL STIENE", and *not* "LOIS STIENE, and RACHEL STIENE".  Emphasis added.

As a result, thereof, in every paragraph of the First Amended Complaint where the name "LOIS STIENE" appeared, it was stricken, and the name (*i.e.*, "aka") "RACHEL STIENE" replaced.  Compare First Amended Complaint: ¶ 22, Appendix pp. A-25, A-27, A-28, with Second Amended Complaint ¶ 22, Appendix pp. A-74, A-76, A-77; ¶ 92.  No new allegations were added; no new causes of action were added.  There was nothing done to the First Amended Complaint other than "serv[ing] . . . the right party by the wrong name." *Corsair Special Situation Fund, L.P. v. Engineer Framing Sys.,* 2013 U.S. Dist. LEXIS 138204 at *26 (D. Conn. 2013), *aff'd* 595 Fed. App'x 40 (2d Cir. 2014).

While Judge Matsumoto characterized this substitution as "adding claims against Rachel", it was not an addition, but a clarification.  While the November 26 letter stated that Lois Stiene's name would be removed, it was done so in the context of the supplemental letter which made clear that Lois Stiene's name was being removed as the correct identifier was Rachel Stiene (and the correction was made once sufficient proof was provided as to the name of Erik Stiene's spouse).

This is a case that squarely falls within the penumbra of Rule 15(c)(1)(C), F.R.Civ.P. In *Ceara v. Deacon*, 916 F.3d 208 (2d Cir. 2019), this Court endorsed and stated:

> "[t]he district court erred in failing to consider the well-recognized distinction between a complaint that sues the wrong party, and a complaint that sues the right party by the wrong name."

*Id*. at 214, quoting from *Roberts v. Michaels*, 219 F.3d 775, 777-78 (8th Cir. 2000).

As the Supreme Court stated in *Krupski v. Costa Crocieri S.p.A.*, 560 U.S. 538 (2010),

> The only question under Rule 15(c)(1(C)(iii) . . . is whether [a prospective defendant] knew or should have known that, absent some mistake, the action would have been brought against him.

*Id*. at 549.

In accord see *Vasconcellos v. City of New York*, 2014 U.S. Dist. LEXIS 143429 (S.D.N.Y. 2014) (Citing to *Krupski*, the Court stated, "it is not enough under Rule 15 that a defendant knew 'that the action would have been brought against it.' Rather, the defendant must have known that the action would have been brought against him but for 'a mistake concerning the proper party's identity.'" *Id*. at *14.).

There can be no doubt that Rachel Stiene knew that she was the correctly named party in the case — she was named as an "aka", her husband, Erik Stiene, was the lead Defendant, and she participated in the offending Youtube® broadcasts (of

which her participation was specifically referenced).  Hence, the ruling of the lower

Court should be vacated.

CONCLUSION

For the reason set forth herein, the decision of the District Court, dismissing the

Plaintiffs-Appellant's Complaint, under Rule 12(b), should be reversed, and the

matter remanded to the District Court.

Dated: Aug. 08, 2024
      Somers, NY

/s/ <em>Bernard V. Kleinman</em>  <br>Attorney for Plaintiff-Appellant

<u>STATEMENT PURSUANT TO F.R.A.P. 32</u>

Pursuant to Rule 32(a)(7) of the Federal Rules of Appellate Procedure, and L.R. 32.1, Appellant does hereby certify that said principal brief complies with the type-volume limitation of this Court's Rules, and said Brief contains 13,723 words of text and footnotes.


/s/ *Bernard V. Kleinman*
Bernard V. Kleinman
Attorney for Plaintiffs-Appellants


Dated:  Aug. 08, 2024
       Somers, NY

<u>CERTIFICATE OF SERVICE</u>

I do hereby certify that a true and accurate copy of the foregoing BRIEF AND JOINT APPENDIX was e-mailed on the 8th day of August 2024, to the following parties, and was ECF filed with this Court:

DANIEL J. SCHNEIDER, ESQ,
FARBER SCHNEIDER FERRARI LLP
ATTORNEYS FOR DEFENDANTS-APPELLEES
261 MADISON AVENUE
26th FLOOR
NEW YORK, NY 10016
Email:*dschneider@fsfllp.com*

/s/ *Bernard V. Kleinman*
Law Office of Bernard V. Kleinman, PLLC
Bernard V. Kleinman, Esq.
Attorney for Appellants
108 Village Sq., Ste. 313
Somers, NY 10589-2305
Tel. (914) 644-6660
Fax: (914) 694-1647
Email: attrnylwyr@yahoo.com

Dated:  Aug. 08, 2024
            Somers, NY

**(65)**