# 24-1325-cv

## United States Court of Appeals

### *for the*

## Second Circuit

---

JUSTIN LANASA, TSR, LLC, DUNGEON HOBBY SHOP MUSEUM, LLC,

*Plaintiff-Appellants,*

— v. —

ERIK STIENE, RACHEL STIENE,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANTS-APPELLEES

DANIEL J. SCHNEIDER
OFFIT KURMAN, P.A.
*Attorneys for Defendants-Appellees*
590 Madison Avenue, 6th Floor
New York, New York 10022
(212) 545-1900

CP COUNSEL PRESS     (800) 4-APPEAL • (334121)

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................iv

PRELIMINARY STATEMENT ............................................................1

COUNTERSTATEMENT PURSUANT TO FED. R. APP. P. 28(a)/(b) ................2

    A.    Jurisdictional Statement—Fed. R. App. P. 28(a)(4) ............................2

    B.    Issues Presented For Review—Fed. R. App. P. 28(a)(5).....................4

    C.    Counterstatement Of The Case—Fed. R. App. P. 28(a)(6) ................6

        1. Facts ....................................................................................6

        2. Response to Appellant's Statement of Facts ................................11

    D.    Summary Of Argument—Fed. R. App. P.28 (a)(7)...........................15

STANDARD OF REVIEW ................................................................17

    A.    Appellate Review of a Dismissal Pursuant to Fed. R. Civ. P. 12(b) ........................................................................................17

    B.    Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)................................17

    C.    Dismissal Pursuant to Fed. R. Civ. P. 12(b)(5)................................18

    D.    Review of a Denial of an Amendment ..........................................19

ARGUMENTS................................................................................19

    POINT I

    THE DISCOVERY PERFORMED AND NOT PERFORMED IS IRRELEVANT TO THE MOTION TO DISMISS AND THIS APPEAL ................................................................................19

    POINT II

    RACHEL IS NOT A PROPER PARTY, AND IF SHE IS, DISMISSAL WAS PROPER FOR LACK OF PERSONAL JURISDICTION ......................................................................21

        A.    As No Summons Was Issued or Served, Dismissal Was Required ............................................................................21

i

B.   Appellant Is or Was Not Entitled to an Extension..................23

POINT III

NONE OF THE STATEMENTS IN THE COMPLAINT WERE
ACTIONABLE UNDER EITHER DEFAMATION CLAIM.....................28

A.   Insult, Opinion, Truth, Lack of Defamatory Meaning,
Lack of Specific Words, Etc. Prevents the Claimed
Statements From Being Actionable .........................................28

1.   The District Court Correctly Found That Many
Statements Were Non-Actionable Opinion.....................30

2.   The District Court Correctly Found That Other
Statements Were Non-Actionable As Name
Calling or General Insults..................................................34

3.   The District Court Correctly Found That Other
Statements Were Non-Actionable As Not
Exposing Appellant to Contempt, Etc. ............................35

4.   The District Court Correctly Found That the
Remaining Statements Were Non-Actionable As
Not Alleged to be False ....................................................36

5.   There are no Factual Allegations to Support a Per
Se Finding..........................................................................37

B.   Allegations of Actual Malice Were Required, But Not
Adequately Plead ...................................................................38

1.   Actual Malice Must be Plausibly Plead In Federal
Court In a Case that Falls Under N.Y. Civ. Rights
L. § 76-a and For a Public Figure.....................................38

2.   Lanasa Fails To Plausibly Allege That Appellees
Published With Actual Malice...........................................43

POINT IV

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
WAS NOT SUFFICIENTLY PLEAD ...........................................46

POINT V

PRIMA FACIE TORT WAS NOT SUFFICIENTLY PLEAD ...................51

ii

POINT VI

LEAVE TO AMEND (AGAIN) WAS NEVER REQUESTED,
BUT PROPERLY DENIED ........................................................................54

    A.    Appellant's Failure to Request Leave to Amend is
Fatal.................................................................................................54

    B.    Futility is Demonstrated by the Proposed Amendment
in Appellant's Brief.......................................................................55

    C.    Factually, and Legally, the Denial of Amendment was
Correct.............................................................................................56

CONCLUSION .............................................................................................59

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

Anderson v. Rocky Mountain News,
  1988 U.S. App. LEXIS 19304 (l0th Cir. July 7, 1988) ......................................44

AREP Fifty-Seventh, LLC v. PMGP Assocs., L.P.,
  115 A.D.3d 402 (1st Dept. 2014) ......................................................52

Armstrong v. Simon & Schuster, Inc.,
  85 N.Y.2d 373 (1995) .................................................................28

Ashcroft v. Iqbal,
  556 U.S. 662 (2009).............................................................18, 43

Bell Atl. Corp. v. Twombly,
  550 U.S. 544 (2007)..............................................................18, 43

Berland v. Chi,
  142 A.D.3d 1121 (2d Dept. 2016) .....................................................53

Biro v. Condé Nast,
  883 F.Supp.2d 441 (S.D.N.Y. 2012) ................................................28, 38

Biro v. Conde Nast,
  963 F.Supp.2d 255 (S.D.N.Y. 2013), aff'd, 807 F.3d 541 (2d Cir.
  2015), and aff'd, 622 F. App'x 67 (2d Cir. 2015) .................................40, 43

Biro v. Conde Naste,
  807 F.3d 541 (2d Cir. 2015) ......................................................43, 45

Black v. Ganieva,
  2023 U.S. App. LEXIS 5087 (2d Cir. 2023) ............................................57

Brancaleone v. Mesagna,
  290 A.D.2d 467 (2d Dept. 2002) ......................................................46

Brian v. Richardson,
  87 N.Y.2d 46 (1995) .................................................................29

Brimelow v. NY. Times Co.,
  2021 U.S. App. LEXIS 31672 (2d Cir. Oct. 21, 2021) ..............................45, 46

Buon v. Spindler,
  65 F.4th 64 (2d Cir. 2023) .....................................................*passim*

iv

Burns Jackson Miller Summit & Spitzer v. Lindner,
 59 N.Y.2d 314 (1983) ............................................................52

Cabello-Rondon v. Dow Jones & Co.,
 720 F. App'x 87 (2d Cir. 2018) ..............................................45

CACI Premier Tech. v. Rhodes,
 536 F.3d 280 (4th Cir. 2008) ..................................................41

Celle v. Filipino Reporter Enters.,
 209 F.3d 163 (2d Cir. 2000) ....................................................40

Chapin v. Knight-Ridder, Inc.,
 993 F.2d 1087 (4th Cir. 1993) ................................................36

Charles v. County of Nassau,
 116 F.Supp.3d 107 (E.D.N.Y. 2015) ......................................20

Chau v. Lewis,
 771 F.3d 118 (2d Cir. 2014) ....................................................28

Church of Scientology Int'l v. Behar,
 238 F.3d 168 (2d Cir. 2001) ....................................................39

Coleman v. Grand,
 523 F.Supp.3d 244 (E.D.N.Y. 2021) ......................................46

Collins v. Willcox Inc.,
 158 Misc. 2d 54 (Sup. Ct. N.Y. Cty. 1992) ...........................50

Contemporary Mission v. NY. Times Co.,
 665 F.Supp.248 (S.D.N.Y. 1987), aff'd, 842 F.2d 612 (2d Cir. 1988) .............44

Cruz v. FXDirectDealer, LLC,
 720 F.3d 115 (2d Cir. 2013) ....................................................54

Davis v. Boeheim,
 24 N.Y.3d 262 (2014) .......................................................31, 34

Davydov v. Youssefi,
 205 A.D.3d 881 (2d Dept. 2022) ............................................50

De Lench v. Archie,
 406 F.Supp.3d 154 (Dist. Ma. 2019) ......................................43

Del Vecchio v. Nelson,
 300 A.D.2d 277 (2d Dept. 2002) ............................................54

Dickerson v. Napolitano,
     604 F.3d 732 (2d Cir. 2010) .................................................................19

DiSanto v. Forsyth,
     258 A.D.2d 497 (2d Dept. 1999) ...................................................53, 54

Duke v. Lyons,
     250 A.D.2d 969 (3d Dept. 1998) .........................................................49

Fantozzi v. City of New York,
     343 F.R.D. 19 (S.D.N.Y. 2022) ....................................................18, 24

Fort Knox Music Inc. v. Baptiste,
     257 F.3d 108 (2d Cir. 2001) .................................................................4

Foster v. Svenson,
     128 A.D.3d 150 (1st Dept. 2015) ........................................................47

Freihofer v. Hearst Corp.,
     65 N.Y.2d 135 (1985).................................................................52, 53

Garland v. Vermilyea,
     88 A.D.2d 1044, (3d Dept. 1982) .......................................................54

Gertz v. Robert Welch, Inc.,
     418 U.S. 323 (1974)............................................................................40

Gray v. St. Martin's Press, Inc.,
     221 F.3d 243 (1st Cir. 2000)...............................................................42

Harte-Hanks Commc'ns, Inc. v. Connaughton,
     491 U.S. 657 (1989)............................................................................44

Hatfill v. N.Y. Times Co.,
     532 F.3d 312 (4th Cir. 2008) ..............................................................42

Howell v. New York Post Co., Inc.,
     81 N.Y.2d 115 (1993)..................................................................47, 48

Hu v. City of New York,
     927 F.3d 81 (2d Cir. 2019) ..........................................................17, 33

Hussey v. N.Y. State Dep't of Law,
     933 F. Supp.2d 399 (E.D.N.Y. 2013) .................................................29

In re Frito-Lay N. Am., Inc.,
     2013 U.S. Dist. LEXIS 123824 (E.D.N.Y. Aug. 29, 2013) ...............41

James v. DeGrandis,
  138 F.Supp.2d 402 (W.D.N.Y. 2001).............................................................48, 49

James v. Gannett Co.,
  40 N.Y.2d 415 (1976)...................................................................................29

Jankovic v. Int'l Crisis Grp.,
  822 F.3d 576 (D.C. Cir. 2016).....................................................................42

Kesner v. Dow Jones & Co., Inc.,
  2023 U.S. App. LEXIS 15255, 2023 WL 4072929 (2d Cir. 2023).............12, 39

Klein v. Metropolitan Child Servs., Inc.,
  100 A.D.3d 708 (2d Dept. 2012) .................................................................47

Knife Rights, Inc. v. Vance,
  802 F.3d 377 (2d Cir. 2015) ........................................................................19

Landa v. Capital One Bank (USA) N.A.,
  101 N.Y.S.3d 90 (2d Dept. 2019)................................................................31

Latifi v. Gonzales,
  430 F.3d 103 (2d Cir. 2005) ........................................................................41

Lerman v. Flynt Distrib. Co.,
  745 F.2d 123 (2d Cir. 1984) ........................................................................41

Levin v. McPhee,
  119 F.3d 189 (2d Cir. 1977) ........................................................................34

Liberman v. Gelstein,
  80 N.Y.2d 429 (1992).................................................................................53

Lincoln First Bank of Rochester v. Barstro & Assocs. Contracting, Inc.,
  49 A.D.2d 1025, 374 N.Y.S.2d 485 (1975).................................................50

Liu Meng-Lin v. Siemens AG,
  763 F.3d 175 (2d Cir 2014) ........................................................................18

Lohrenz v. Donnelly,
  350 F.3d 1272 (D.C. Cir. 2003)..................................................................44

Lu v. Cent. Bank of Republic of China (Taiwan),
  610 F. App'x 674 (9th Cir. 2015)...............................................................20

M.H. v. New York City Dept. of Educ.,
  685 F.3d 217 (2d Cir. 2012) .......................................................................13

vii

Macharia v. United States,
  334 F.3d 61 (D.C. Cir. 2003) ...............................................................20

Mahoney v. Adirondack Publ. Co.,
  71 N.Y.2d 31 (1987) ...........................................................................40

Mayfield v. NASCAR,
  674 F.3d 369 (4th Cir. 2012) ..............................................................43

McClure v. Am. Family Mut. Ins. Co.,
  223 F.3d 845 (8th Cir. 2000) ..............................................................32

McIntosh v. Covenant House,
  248 F.R.D. 160 (S.D.N.Y. 2008) ........................................................21

Milkovich v. Lorain Journal Co.,
  497 U.S. 1 (1990) ................................................................................31

Missere v. St. John's Univ.,
  15-cv-771, 2018 WL 1701946 (E.D.N.Y. Mar. 31, 2018) ...........29, 30

N. Shore Towers Apartments Incorp. v. Kozminsky,
  219 A.D.3d 494 (2d Dept. 2023) ...................................................31, 32

Nelson v. Ardrey,
  216 N.Y.S.3d 646 (2d Dept. 2024) .....................................................39

New York Times Co. v. Sullivan,
  376 U.S. 254 (1964) ............................................................................39

Newman & Schwartz v. Asplundh Tree Expert Co.,
  102 F.3d 660 (2d Cir. 1996) ...............................................................30

Nicosia v. Amazon.com, Inc.,
  834 F.3d 220 (2d Cir. 2016) ...............................................................17

Nurriddin v. Bolden,
  818 F.3d 751 (D.C. Cir. 2016) ............................................................18

Old Dominion Branch No. 496 v. Austin,
  418 U.S. 264 (1974) ............................................................................32

Palin v. New York Times Co.,
  940 F.3d 804 (2d Cir. 2019) ...............................................................45

Palin v. NY. Times Co.,
  510 F.Supp.3d 21 (S.D.N.Y. 2020) ...............................................28, 40

Peters v. Baldwin Union Free Sch. Dist.,
  320 F.3d 164 (2d Cir. 2003) ..............................................................13

Richard L. v. Armon,
  144 A.D.2d 1 (2d Dept. 1989) ...........................................................47

Rinaldi v. Holt, Rinehart & Winston, Inc.,
  42 N.Y.2d 369 (1977) ........................................................................31

Rivas v. Restaurant Assocs., Inc.,
  203 N.Y.S.3d 593 (1st Dept. 2024) ............................................34, 35

Rivers v. Towers, Perrin, Forster & Crosby, Inc.,
  07-cv-5441(DGT)(RML), 2009 WL 817852 (E.D.N.Y. Mar. 27, 2009)...........49

Routh v. Univ. of Rochester,
  981 F.Supp.2d 184 (W.D.N.Y. 2013)................................................49

Safka Holdings LLC v. iPlay, Inc.,
  42 F.Supp.3d 488 (S.D.N.Y. 2013) ...................................................20

Sanders v. Walsh,
  219 Cal.App.4th 855 (4th Dist 2013) ................................................13

Schatz v. Republican State Leadership Comm.,
  669 F.3d 50 (1st Cir. 2012)................................................................43

Scherer v. Equitable Life Assur. Soc'y of the U.S.,
  347 F.3d 394 (2d Cir. 2003) ................................................................3

Schwartz v. Am. College of Emergency Physicians,
  215 F.3d 1140 (10th Cir. 2000) .........................................................42

Seabrook v. City of New York,
  236 F.R.D. 123 (E.D.N.Y. 2006).......................................................27

Second Baptist Church of Leechburg v. Gilpin Twp, Pennsylvania,
  118 F. App'x 615 (3d Cir. 2004).......................................................20

Senegal v. Jefferson Cnty.,
  1 F.3d 1238 (5th Cir. 1993) ..............................................................20

St. Amant v. Thompson,
  390 U.S. 727 (1968).........................................................................39

Stepanov v. Dow Jones & Co., Inc.,
  120 A.D.3d 28 (1st Dept. 2014) .......................................................36

ix

Stern v. Cosby,
    645 F.Supp.2d 258 (S.D.N.Y. 2009) ................................................................45

Swierkiewicz v. Sorema N. A.,
    534 U.S. 506 (2002)................................................................51

Tannerite Sports, LLC. v. NBCUniversal News Grp.,
    864 F.3d 236 (2d Cir. 2017) ................................................................36, 37

Tolchin v. Nassau County,
    322 F.Supp.3d 307 (E.D.N.Y. 2018) ................................................................23

Town of Massena v. Healthcare Underwriters Mut. Ins. Co.,
    779 N.E.2d 167 (N.Y. 2002)................................................................35

Trump v. Vance,
    480 F.Supp.3d 460 (2d Cir. 2020) ................................................................57

United States ex rel. Weiner v. Siemens AG,
    87 F.4th 157 (2d Cir. 2023) ................................................................17

United States Sec. & Exch. Comm'n v. DiMaria,
    207 F. Supp.3d 343 (S.D.N.Y. 2016) ................................................................30

United States v. Int'l Longshoremen's Ass'n,
    518 F.Supp.2d 422 (E.D.N.Y. 2007) ................................................................29

Wolf St. Supermarkets, Inc. v. McPartland,
    108 A.D.2d 25 (4th Dept. 1985) ................................................................53

World Wide Ass'n of Specialty Programs v. Pure, Inc.,
    450 F.3d 1132 (10th Cir. 2006) ................................................................41

Yerdon v. Henry,
    91 F.3d 370 (2d Cir. 1996) ................................................................55

Zapata v. City of New York,
    502 F.3d 192 (2d Cir. 2007) ................................................................24

## Statutes & Other Authorities:

28 U.S.C. § 1332 ..............................................................................3

28 U.S.C. § 1291 ..............................................................................2

28 U.S.C. § 1294(1) .........................................................................2

2011: Mayor of Wilmington, North Carolina ...............................41

2014: North Carolina State Senate District 9; 2020: North Carolina's
    House District 20 .....................................................................41

C.P.L.R. 3016(a) ...............................................................29, 30, 36

Fed. R. App. P. 28(a) ......................................................................2

Fed. R. App. P. 28(a)(4) ..................................................................2

Fed. R. App. P. 28(a)(5) ..................................................................4

Fed. R. App. P. 28(a)(6) ..................................................................6

Fed. R. App. P. 28(a)(7) ................................................................15

Fed. R. App. P. 28(b) ......................................................................2

Fed. R. App. P. 32(a)(7)(B) ...........................................................60

Fed. R. App. P. 32(a)(7)(C) ...........................................................60

Fed. R. Civ. P. 4 ...............................................................15, 21, 27

Fed. R. Civ. P. 4(a)(1)(F) ..............................................................21

Fed. R. Civ. P. 4(a)(1)(G) ..............................................................21

Fed. R. Civ. P. 4(b) ........................................................................21

Fed. R. Civ. P. 4(c)(1) ....................................................................21

Fed. R. Civ. P. 4(m) ...........................................................21, 22, 23

Fed. R. Civ. P. 8 .............................................................................33

Fed. R. Civ. P. 8(a) ........................................................................29

Fed. R. Civ. P. 9(g) ........................................................................53

Fed. R. Civ. P. 12(b) ...............................................12, 17, 19, 28

Fed. R. Civ. P. 12(b)(5) ..........................................17, 18, 21, 27

Fed. R. Civ. P. 12(b)(6)................................................................17, 20

Fed. R. Civ. P. 15 ...............................................................................19

Grits wrestling video sparks feud between NC candidates,
      https://www.newsobserver.com/news/state/north-
      carolina/article240600416.html ...................................................41

N.Y.C.P.L.R 3016 ...............................................................................15

N.Y.C.P.L.R. 3211(g) ...........................................................12, 28, 38

WHQR, *Justin LaNasa: The Full Interview* by Michelle Bliss,
      https://www.whqr.org/politics/2011-10-20/justin-lanasa-the-full-
      interview ........................................................................................42

## PRELIMINARY STATEMENT

The District Court properly disposed of this case, appropriately describing it as "tortured." A.273.[1] This holding should not be disturbed.

This is a case where Appellant, Justin LaNasa (individually, "LaNasa") took umbrage over insulting and mean-spirited discourse on the internet and he, together with his co-plaintiffs (collectively, "Appellant"), attempted to morph it into something actionable, alleging defamation, intentional infliction of emotional distress and *prima facie* tort. He failed, the District Court having found that none of the allegations were actionable, and the case was appropriately dismissed.

In bringing his claim, he also sued Lois Stiene (individually, "Lois"), the mother of defendant Erik Stiene (individually "Erik"), serving her with a summons in her name and a complaint. A.58. When it became apparent that Lois had nothing to do with this case, Appellant requested leave from the Court to remove her as a party. A.60. Instead of simply removing her as a party, Appellant attempted to add an additional party, Rachel Stiene (individually, "Rachel"), who had never been served and for whom a summons had never been issued. A.58-59, 267. The District Court rejected this attempt, properly dismissing the case as against Rachel.

---

[1] "A.___" shall refer to the page in the Joint Appendix which is referred to in this citation.

In so doing, the Court excoriated Appellant for requesting permission to file the SAC, receiving it in the form of an order, and then violating said order by going far beyond what had been requested. A.273. Even though this resulted in the claims against her being time-barred, there is no reason to disturb the District Court's finding that Appellant is not entitled to latitude.

Finally, the District Court correctly declined yet a third opportunity to amend the complaint since (a) "[h]is counsel, a licensed attorney, is presumed to know what facts he would have to allege to survive a motion to dismiss," A.273, and he failed to do so despite two prior attempts; (b) he never requested such relief and therefore he should not be permitted to do so now; and (c) further amendment would be futile. The District Court must be affirmed in this regard.

The District Court meticulously supported its holdings with reasoning, facts and analysis. Appellant has provided no basis to disturb any of it. In fact, Appellant enters very minimal attack on the propriety of the holding of the District Court and, instead only collaterally attacks it. Therefore, this Court should affirm in its entirety.

## COUNTERSTATEMENT PURSUANT TO FED. R. APP. P. 28(a)/(b)

### A.  Jurisdictional Statement—Fed. R. App. P. 28(a)(4)

This Court has jurisdiction over this matter. 28 U.S.C. §§ 1291 and 1294(1) (appeal from a final decision, order or judgment that disposed of the parties' claims

and comes from a District Court embraced by this Circuit). There is no dispute about the timeliness of the appeal nor the individual submissions.

Per its decision, the District Court held subject matter jurisdiction existed pursuant to 28 U.S.C. § 1332. A.266-267. While the parties are completely diverse, in the District Court, there was a dispute as to whether Appellant reached the jurisdictional threshold of $75,000.00. Appellant argued that his "Total losses [were] estimated to exceed $160,000.00." A.216. Of that, attorney's fees exceeded $135,000. A.216 at ¶ 6. As a result, Appellees contended that "[t]his leaves only $25,000 of damages related to non-attorney's fees." A.246.

Appellees pointed out, and the Court agreed that attorney's fees are not recoverable in this case. A.246 and 266 ("With some exceptions, not relevant here, attorney's fees do not count toward the amount in controversy for diversity purposes."). Therefore, as Appellees argued before the District Court, Appellants only articulated $25,000 of potential damages to be counted toward the jurisdictional minimum. As LaNasa's own words establish "a legal certainty that the amount recoverable does not meet the jurisdictional threshold," <u>Scherer v. Equitable Life Assur. Soc'y of the U.S.</u>, 347 F.3d 394, 397 (2d Cir. 2003), the District Court should not have found subject matter jurisdiction under 28 U.S.C. § 1332.

The District Court disagreed that Appellant's "statements do not establish to a legal certainty that he could not recover $75,000 in this action." A.266. In holding

3

as such, it focuses on Appellant's use of the words "estimated" and "exceeds" when it comes to the $160,000 figure. A.266. Essentially, despite the basic math between the total figure and the estimated fees to date putting the delta well below $75,000, it held that there was some universe that damages could exceed the jurisdictional limit.

Appellant is correct that Appellees have not filed for a cross-appeal, however, this Court has the power to review *sua sponte*. See e.g., Fort Knox Music Inc. v. Baptiste, 257 F.3d 108, 111 (2d Cir. 2001). It is respectfully submitted that since the vast majority of the claimed damages was from legal fees, A.216, that there exists a legal certainty of an inability to meet the jurisdictional threshold.

**B.  Issues Presented For Review—Fed. R. App. P. 28(a)(5)**

1.  Are discovery issues relevant on motions on the pleadings?

2.  Did the District Court err in dismissing the case as against Rachel, to the extent that she is a party, for failure to obtain personal jurisdiction over her by Appellant's failure to: (a) file a summons in her name (the only summonses in this case were to Erik and Lois, A.58); (b) serve her with the summons and complaint within the time period proscribed; and (c) even serve her with the summons and complaint at all, to date in an attempt to cure any defect?

3.      Did the District Court err in declining to excuse Appellant's failure to serve/timely serve Rachel and/or declining to grant Appellant a discretionary extension of the service deadline?

4.      Did the District Court err in dismissing Appellant's defamation claims for failure to state a claim because: (a) Appellant failed to allege that any statements were defamatory; (b) many of the statements were non-actionable opinion; (c) some of the statements were insults; (d) some of the statements were non-actionable because they were not defamatory in nature; and/or (e) he failed to allege that the remaining statements were false ("He simply described some very nasty opinions and commentary by [Appellees] that may or may not have been true." A.271)?

5.      Did the District Court err in dismissing Appellant's intentional infliction of emotional distress ("IIED") claim for failure to state a claim since Appellant failed to allege anything other than defamatory materials and/or to allege extreme and outrageous conduct?

6.      Did the District Court err in dismissing Appellant's *prima facie* tort claim since Appellant failed to allege anything other than defamatory materials, and/or failed to allege special damages?

7.      Did the District Court err in dismissing Appellant's case with prejudice by declining to permit a third amendment to the complaint when: (a) it was not

requested until this appeal. A.273; and (b) finding that another amendment would be unproductive/futile?

## C.     Counterstatement Of The Case—Fed. R. App. P. 28(a)(6)

### 1. <u>Facts</u>

Erik is an online content producer that produces and releases content titled "Tenkar's Tavern" including video, podcasts, and blogs for consumption by the public on one or more platforms, including YouTube. The content is focused on Old School Renaissance ("OSR") gaming, the Swords and Wizardry Role Playing Game ("RPG") and Dungeons and Dragons. As evidenced by the links in both the First Amended Complaint ("FAC") and the second Amended Complaint ("SAC"), e.g., A.25-29, 36, 49-50, 74-77, 85, 98-99, this content is available to the public on YouTube for free and is subject to comment, message board and participation by members of the public. It is of sufficient public interest that he, according to Appellant, has content subject to subscription. A.73.

Lois is Erik's mother and has nothing to do with this case. Rachel, who should be deemed a non-party, but asserted to be a defendant, is Erik's wife and sometimes sits in on Tenkar's Tavern and engages in dialogue with Erik during the webcast. While Lois has been served in this action, A.58, Rachel has never been served nor has there been a summons generated as to her. A.2-19. There is no dispute that Lois is no longer a party to this action. A.59-62, 69-103.

LaNasa is another member of this community that has engaged in a feud with Erik online. Erik has used his platform to respond to LaNasa including in the videos that have been linked in the FAC and SAC. A.25-29, 74-77. Many of these statements have been non-complimentary or even insulting. He has made these statements on a public forum.

As a result of these statements, on or about September 22, 2022, A commenced this action against Erik with a complaint (the "First Complaint") alleging defamation and intentional infliction of emotional distress ("IIED"). ECF 1. Erik timely sought to dismiss the first complaint and the Court held a conference on the matter January 6, 2023. The District Court "explained to LaNasa in detail…pleading deficiencies he had to remedy in order to state a claim." A.273. "After [this] pre-motion conference where the Court raised [these] several concerns with LaNasa's original complaint, LaNasa [was permitted to] file[] an amended complaint [the FAC] against Erik and 'Lois Stiene, aka Rachel Stiene.'" A.264.

Erik and Lois timely moved to dismiss the FAC. During the pendency of that motion, discovery continued and it resulted in confirmation that LaNasa did, indeed, have a criminal record (in the original complaint and the FAC, LaNasa incorrectly claimed accusing him of a criminal record as being false) and Lois had nothing to do with the case, as confirmed by Appellant's counsel. A.60; 62. Thus, Appellant sought to amend the complaint a second time requesting leave to "remove [Lois']

name as a defendant" and "[s]triking the assertion that Mr. LaNasa has no criminal convictions." A.60. Therein, there was no request to add any allegations or parties.

On January 9, 2024, the Court granted this request via a docket order, but the permission was narrow, based as requested by Appellant's counsel. A.15-16. In so doing, it stated in relevant part,

> **[T]he Court grants [Appellant's] leave to file a second amended complaint by January 16, 2024, Leave is granted <u>solely for the purposes of allowing [Appellant] to remove the allegations discussed in their November 26, 2023 letter</u> [A.59-62] <u>and any other allegations (if any), that [Appellant] may no longer believe that they can make consistently with their obligations under Rule 11(b).</u>**

A.16 (emphasis in original).

The plain language of the order allowed Appellant to remove allegations and a party. <u>Id.</u> There was nothing in the order that permitted the addition of any allegations, or a whole new party. <u>Id.</u>

A cursory review of the SAC confirms Appellant ignored and/or failed to heed the District Court's directive that only removals were permitted. A.104-137. Despite the unambiguous nature of the Court's January 9, 2024 order, Appellant attempted to improperly sneak in allegations that added Rachel as a party. This is reflected in the fact that the redlined version of the SAC and the clean version do not match. A.70 at, e.g., ¶¶ 6 and 7, A.105 at, e.g., ¶¶ 6 and 7.

Specifically, the redlined version purports only to remove words. A.105 at e.g. ¶6 (Removes the word "Lois" and the letter "L" to read, "Defendant STIENE [hereinafter referred to as "Stiene"] is a private individual…". This leaves an ambiguous, unsummoned defendant without a first name. Shockingly, without redlines, the version submitted by Appellant as the official SAC, in the same paragraph reads differently, stating, "Defendant RACHEL STIENE [hereinafter referred to as "R. Stiene"] is a private individual…" A.70 at ¶ 6. Appellant quite literally attempted to demonstrate only subtractions in the redlined version, per the order, while hiding affirmative additions in the version without redlines. There are more disparities between the redlined and clean versions in the SAC. A.71 at ¶ 10, A.106 at ¶ 10; and A.75 at ¶ 22, March 17, 2022 entry, A.111 at ¶ 22, March 17, 2022 entry.

In addition, substituting Lois for Rachel is impossible because Rachel has never been summoned in this case. Only Erik and Lois have been served with a summons. A.58. A summons for Rachel has never been filed, issued by the Court or served. A.2-19.

The District Court agreed that this was a violation of its January 9, 2024 order while dismissing the case. It held "Contrary to that order, LaNasa *added* allegations regarding Rachel and named her as a new defendant." A.268. It further held that "If LaNasa wished to add a new defendant, he could have—and should have—requested

leave to do so." Id. The Court further described Appellant's reading of the January 9, 2024 order as "erroneous" and "objectively unreasonable." Id. Finally, it held that "LaNasa's Second Amended Complaint exceeded the Court's grant of leave to amend by adding claims against Rachel." A.273. These findings are all true and should not be disturbed.

Also, in its order, the Court acknowledges that it, on January 6, 2023, at the pre-motion conference regarding the original complaint, "explained to LaNasa in detail…the pleading deficiencies he had to remedy to state a claim." A.273. The guidance was that Appellant should be more selective and provided at least two specific factual allegations, from January 9, 2022, and March 17, 2022 in Appellant's then-operative complaint, as examples of non-defamatory conduct that should have been stricken. Instead, those allegations remained through the dismissal of the case, A.75-76, and instead of heeding the Court's advice to pare down, it alleged substantially similar allegations in the FAC and SAC, A.74-78, 109-112 and added allegations to the SAC though only removal was permitted.

The futile nature of Appellant's amendments is typified by Appellant's continued attempt to sue Rachel. Had these allegations not been dismissed for failure to serve, Rachel's involvement is so de minimis that it demonstrates "LaNasa's pleading strategy…to…prioritize quantity over quality, throwing as many allegedly defamatory statements as he could at the wall to see what would stick." A.271. The

10

futility sparsity of words attributed to her in the SAC (a review of the videos shows Rachel only occasionally without having made any statement claimed in the SAC. Such allegations seek creation of a novel vicarious liability theory of defamation, to wit, aid and abetting defamation, which no Court recognizes. Considering the detailed analysis as to Erik, had the Court reached the merits as to Rachel, it would have dismissed as against her on that basis as well.

Despite several opportunities to plead, none of the statements in the SAC are actionable against any defendant. As will be discussed in further detail below, and confirmed by the District Court, they are either non-defamatory insult, true based upon information, accusation, objectively opinion, not alleged to be false and/or impermissibly taken completely out of context.

Moreover, none of the conduct alleged rises to the level of IIED or *prima facie* tort and no special damages are alleged, the District Court properly dismissed the case.

## 2. <u>Response to Appellant's Statement of Facts</u>

Appellees would be remiss if they did not address the pages of "context" in Appellant's brief. Appellant correctly identifies what this case is about in his opening brief ("App.Br."). In calling Appellees' behavior "obsessive and compulsive," "psychologically obsessive and repetitive," App.Br. at p.10, Appellant

correctly identifies that in feuding with others online, feelings can get hurt, insults can be made. Without more, such feuds are not tortious or actionable.

LaNasa did feud with Appellees. Interactions online are routinely acrimonious, and the visibility of such acrimony is wide. This is not in dispute, however, what this case is really about is whether anything in Appellant's complaint is actionable. The District Court used the correct standard, not the one asserted by Appellant and correctly held that nothing was.

Also incorrect is Appellant's statement regarding Anti-SLAPP. App.Br. at p.11. The Court in dismissing the case, followed the emerging trend with regard to that area of law in Federal Court: Federal Law when it comes to procedure and State Law substantively. A.268-269. Accordingly, the dismissal was on a Fed. R. Civ. P. 12(b) standard and not on a N.Y.C.P.L.R. 3211(g) standard. See, e.g., See Kesner v. Dow Jones & Co., Inc., 2023 U.S. App. LEXIS 15255, 2023 WL 4072929, *5 (2d Cir. 2023).

Moreover, in the entire analysis of the District Court's decision, there is no evidence distinguishment between online speech and conventional speech. App.Br. at pp.12-13. The District Court analyzed the speech itself and dismissed because it was not actionable, not considering where the speech was made. A.271. The entire discussion of internet speech is of no moment since there is nothing about the

location of speech that makes words any more or less defamatory. The analysis is with the words itself, not where they are published.

Furthermore, there is no authority and Appellant provides none, that repetition is an element of defamation. Under New York law, the only elements of defamation are "a false statement, published without privilege or authorization to a third party, constituting fault...and it must either cause special harm or constitute defamation per se." Peters v. Baldwin Union Free Sch. Dist., 320 F.3d 164, 169 (2d Cir. 2003). Accordingly, Appellant's focus on Appellees being mean numerous times, and the potential widespread dissemination, "this pervasive nature," App.Br. at p.14, even if true, misstates the law.

Appellant is further incorrect attempting to justify the corporate Appellant's existence. None of the alleged statements have "a direct tie-in to the owner's business itself." App.Br. at p.15. Simply saying so does not make it so. Conclusory statements, without facts, are generally insufficient. See, e.g., M.H. v. New York City Dept. of Educ., 685 F.3d 217, 249 (2d Cir. 2012). That notwithstanding, Sanders v. Walsh, 219 Cal. App.4th 855, 859 (4th Dist2013) does not stand for the proposition it was cited for. In fact, it is factually inapposite.

Furthermore, Appellant presents no evidence of malice—only conclusory statements—thus there were none for the District Court to ignore. App.Br. at p.16.

The same is true with respect to a claim that Appellees made "fraudulent and defamatory statements." App.Br. at p.18. Simply saying it does not make it so.

In addition, as evidenced by the dismissal of the complaint by the District Court, response by Appellees to Appellant's cease and desist letter is irrelevant. App.Br. at p.18. Equally irrelevant is the lack of an answer in this case. App.Br. at p.19. Since Appellees accessed a procedural alternative, that being a motion on the pleadings, and succeeded, both the absence of an answer and non-response to the cease and desist are immaterial. The final irrelevancy is the listing of the statements relied upon, App.Br. at pp.19-22, as their URLs were included in the Complaint and those, with the appropriate context, speak for themselves. Further factual allegations, if any, will be discussed in the appropriate section below.

While discussed in further detail below, Appellant complains in this section that the District Court ignored the Complaint in holding that Appellant failed to assert that certain statements, which were not held to be dismissible for other reasons, were false. App.Br. at p.27. This is untrue. The Court held, citing case law, that "at the pleadings stage, [Appellant] has the burden to **allege facts supporting a reasonable inference** that an allegedly defamatory statement is false." A.271 (emphasis added).

The District Court correctly found that the Appellant presented no facts, and, like the above, simply alleged falsity in a conclusory fashion. In rejecting those

allegations, the District Court correctly held "A bare assertion that a statement was false does not suffice without some factual explanation as to how the statement was false." A.271. As there was no factual explanation, there was no error.

## D. Summary Of Argument—Fed. R. App. P.28 (a)(7)

Appellant's complaints regarding discovery are irrelevant since the dismissal was on a motion on the pleadings which does not look to discovery for bases.

The naming of Rachel was improperly done. Adding a party requires service and an issuance of a summons. Fed. R. Civ. P. 4. Appellant did neither. It also requires leave of the Court when the first amendment has been exhausted. That was not obtained, and in fact, Appellant violated the Court's January 2024 docket order by adding Rachel. A.15-16. Significantly, to date, Appellant has not attempted to cure the defect in service by seeking issuance of a summons or serving. Accordingly, the District Court was correct to dismiss the case and to decline to give an extension.

None of the allegedly defamatory statements were actionable. As to Rachel, if this Court reverses on personal jurisdiction, none of the allegations were uttered by a female declarant, and therefore, there is insufficient specificity as to her. N.Y.C.P.L.R 3016. With respect to all, they were either not statements of fact, have insufficient context, are incapable of being proven true or false, do not have a precise meaning that is readily understood, are insults, name calling, hyperbole, opinions,

are not misrepresentations, or do not suggest that Appellees endorsed a false inference. Therefore, these claims were properly dismissed.

Furthermore, allegation of malice was necessary and there was none alleged in the complaint. In that regard, even if the Court disagrees with the District Court such that malice analysis is required, there are no allegations to support these claims.

The IIED claim was correctly dismissed because the allegations were conclusory and there was no allegation of outrageous conduct which requires an extreme degree. The Court was properly situated to make such a judgment as a matter of law on a motion to dismiss. Moreover, defamatory statements generally cannot be the basis of an IIED claim. A.272.

The Claim for *prima facie* tort was correctly dismissed because it relied upon allegations of the dissemination of allegedly defamatory materials. Furthermore, Appellant failed to allege special damages.

Finally, with respect to the amendment, the District Court should be affirmed both because it would be futile and Appellant failed to request a further amendment. Appellees even invited Appellant to justify a further amendment by requesting dismissal with prejudice in their notice of motion, A.138, and briefing the issue in its brief in support. A.176-177. Appellant ignored it and should not be able to claim permission was sought previously.

## STANDARD OF REVIEW

**A.     Appellate Review of a Dismissal of Pursuant to Fed. R. Civ. P. 12(b)**

The Court of Appeals reviews a dismissal pursuant to Fed. R. Civ. P. 12(b)(5) for abuse of discretion. See United States ex rel. Weiner v. Siemens AG, 87 F.4th 157, 161 (2d Cir. 2023). "A district court has abused its discretion if it has (1) based its ruling on an erroneous view of the law, (2) made a clearly erroneous assessment of the evidence, or (3) rendered a decision that cannot be located within the range of permissible decisions." Id.

The Court of Appeals reviews a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) de novo. See Nicosia v. Amazon.com, Inc., 834 F.3d 220, 230 (2d Cir. 2016). The de novo review is performed upon the same standard of a Fed. R. Civ. P. 12(b). Id.

**B.     Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)**

A plaintiff, "To survive a motion to dismiss must plead factual allegations that…state a claim to relief that is plausible on its face." Hu v. City of New York, 927 F.3d 81, 97 (2d Cir. 2019). "While a Complaint need not contain detailed factual allegations…plaintiff[] must plead factual allegations that raise a right to relief above the speculative level." Id. (internal citations and quotation marks omitted). This standard requires a court to reject "threadbare recitals" of the elements of a cause of action "supported by mere conclusory statements," and requires "more than

17

a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662,678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

While well-plead facts are accepted as true on a motion to dismiss, the Court is not compelled to accept legal conclusions, such as Appellant's mischaracterization and material embellishment of Erik's statements. Iqbal, 556 U.S. at 678 (the presumption of truth in a complaint on a motion to dismiss "is inapplicable to legal conclusions"); Nurriddin v. Bolden, 818 F.3d 751, 756 (D.C. Cir. 2016) (courts should not "accept inferences drawn by a plaintiff if such inferences are unsupported by the facts set out in the complaint").

Under this well settled construct, in the four corners of Appellant's pleading, reviewing the District Court's decision *de novo*, Liu Meng-Lin v. Siemens AG, 763 F.3d 175,178 (2d Cir 2014), no plausible claim has been asserted as against Appellees. As a result, the Court of Appeals must affirm.

## C.    Dismissal Pursuant to Fed. R. Civ. P. 12(b)(5)

"A motion under Rule 12(b)(5) challenges the propriety of service of process on the defendant." A.265, citing Fantozzi v. City of New York, 343 F.R.D. 19, 25 (S.D.N.Y. 2022). "A court cannot lawfully exercise personal jurisdiction over a defendant who the plaintiff has not properly served." A.265, citing Buon v. Spindler, 65 F.4th 64, 73 (2d Cir. 2023). Furthermore, "The plaintiff has the burden to prove

that he or she properly served the defendant." A.265, <u>citing</u> <u>Dickerson v. Napolitano</u>, 604 F.3d 732, 752 (2d Cir. 2010).

Under this legal construct, the District Court must be affirmed when it comes to Rachel. Appellant admits that he never served Rachel, never sought a summons, as required for Rachel and has not come close to meeting the burden necessary to show proper service.

**D.    Review of a Denial of an Amendment**

This Court reviews a denial of an amendment (Fed. R. Civ. P. 15) for abuse of discretion. <u>See</u> <u>Knife Rights, Inc. v. Vance</u>, 802 F.3d 377, 389 (2d Cir. 2015).

**ARGUMENTS**

**POINT I**

**THE DISCOVERY PERFORMED AND NOT
PERFORMED IS IRRELEVANT TO THE MOTION
TO DISMISS AND THIS APPEAL**

Appellant complains that the fact that some discovery was performed and other portions were not, is germane to this appeal. App.Br. at pp.43-44. It is not. The motion to dismiss was a motion on the pleadings pursuant to Fed. R. Civ. P. 12(b), not a motion for summary judgment. The underlying motion did not rely on any facts beyond the four corners of the pleading.

In fact, once Appellant conceded that LaNasa did, indeed, have a criminal record and withdrew allegations that such claim was defamatory, there was no need

19

to present matters that were outside the pleadings in the motion to dismiss that was ultimately decided. See Charles v. County of Nassau, 116 F.Supp.3d 107, 117 (E.D.N.Y. 2015). Accordingly, any complaints regarding discovery are irrelevant. See Safka Holdings LLC v. iPlay, Inc., 42 F.Supp.3d 488 (S.D.N.Y. 2013); Senegal v. Jefferson Cnty., 1 F.3d 1238, *2 (5th Cir. 1993) ("A motion to dismiss pursuant to Rule 12(b)(6) is decided solely on the pleadings; thus, the degree of discovery conducted is irrelevant to a Rule 12(b)(6) motion."); Second Baptist Church of Leechburg v. Gilpin Twp, Pennsylvania, 118 F. App'x 615, 618 (3d Cir. 2004); Lu v. Cent. Bank of Republic of China (Taiwan), 610 F. App'x 674, 675 (9th Cir. 2015); Macharia v. United States, 334 F.3d 61, 68 (D.C. Cir. 2003).

The bandwidth Appellant spends on the disparity in discovery makes no difference since none was relied upon in making this motion. The outcome of the motion to dismiss shows discovery was unnecessary in disposing of this case.[2] "The [] sequence of events [regarding discovery] is not essential." App.Br. at p.44. Appellant provides no basis for reversal.

---

[2] Allegations related to criminality in the FAC were present when the discussion of summary judgment, as Appellant describes, App.Br. at p.43, occurred. Those being withdrawn, A.60-62, is a material difference. After, the case was dismissed on the pleadings alone and discovery did not need to be considered.
.

## POINT II

### RACHEL IS NOT A PROPER PARTY, AND IF SHE IS, DISMISSAL WAS PROPER FOR LACK OF PERSONAL JURISDICTION

**A.**   **As No Summons Was Issued or Served, Dismissal Was Required**

Appellant's analysis in the appellant's brief should conclusively foreclose on reversal of this issue. Therein, Appellant reasons, and admits:

> When deciding a motion to dismiss pursuant to Rule 12(b)(5), the Court **must** look to Rule 4, F.R.Civ.P. [sic], the Rule that governs the content, issuance, and service of a summons. "If the summons is properly completed, the clerk must sign, seal, and issue it to the plaintiff for service on the defendant." Rule 4(b). See also Rule 4(a)(1)(F), (a)(1)(G). "A summons **must** be served with a copy of the complaint.  The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m)…" Rule 4(c)(1).

App.Br. at pp.31-32 (emphasis added, citations and quotations in original).

Appellant is entirely correct here. Appellant also admits that since Rachel was never served with a summons, a jurisdictional defect exists requiring dismissal. Failure in this regard is fatal to a complaint. See Buon, 65 F.4th at 73. "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." Id.; see also McIntosh v. Covenant House, 248 F.R.D. 160, 161 (S.D.N.Y. 2008). "[S]ervice of process [is] defective where a plaintiff serves a complaint without a summons…" Buon, 65 F.4th

at 74. The consequence, without an extension, is necessarily dismissal. Id.; Fed. R. Civ. P. 4(m).[3]

A review of docket demonstrates that no summons as to Rachel was sought, signed, sealed or issued. A.2-19. As Appellant admits, a Rachel summons was required. App.Br. at pp.31-32. However, the only summons other than the one issued for Erik was for Lois Stiene. A.58. Rachel's name appears nowhere on it. Id. Notably, Appellant was aware of the need to issue a summons when adding a party since it sought Lois' summons in connection with FAC, when she was added to the complaint. A.58.

The docket plainly and conclusively demonstrates that Appellant failed in this regard. As a result of Appellant's failure to seek a summons for Rachel and to serve it, as is required, within the time set forth in Fed. R. Civ. P.4(m), or at all, dismissal is required when an extension is not granted. Appellant's failure in service is not a technicality as Appellant suggests, App.Br. at p.32, it is fatal. Considering the conclusive absence of a summons in Rachel's name on the docket, there can be no finding that the District Court abused its discretion.

---

[3] Personal jurisdiction is not a matter of form over substance as Appellant argues. App.Br. at p.36. It is a requirement. Buon, 65 F.4th at 73. Absent proper service, dismissal is required.

**B.    Appellant Is or Was Not Entitled to an Extension**

Since Rachel has never been served with a summons, Appellant's surreptitious attempt to apply the complaint to her is ineffective and the case must be dismissed as against her.  As a starting point, there is no good cause for an extension. Fed. R. Civ. P. 4(m).  The Court rejected good cause based upon Appellant's counsel's mistake as to the last day of service being 10 days after the deadline, holding that attorney mistake does not constitute good cause. A.267; Tolchin v. Nassau County, 322 F. Supp.3d 307, 312 (E.D.N.Y. 2018).

However, the absence of good cause is far greater.  While Appellant's counsel was wrong about the service deadline, A.192, Appellant still has never served a summons and complaint on Rachel, and Appellant's counsel even now never claims that service was ever made on her. A.2-19, 192. With respect to the SAC, the only action alleged was its filing on January 16, 2024. A.192. Thus, service upon Rachel is not just 10 days late, but with every day that goes by, the tardiness expands. Accordingly, where there has been no attempt to cure the deficiency, there is no possibility of articulating an abuse of discretion.

Furthermore, the District Court did not abuse its discretion in declining a discretionary extension despite the dismissal being tantamount to one with prejudice as a result of the statute of limitations expiring. See Buon, 65 F.4th at 75. As evident by the use of the word, such an extension is entirely discretionary and no abuse of

discretion will be found where there is no good cause and "no colorable excuse whatsoever for [the] neglect." Zapata v. City of New York, 502 F.3d 192, 193 (2d Cir. 2007).

Appellant provides absolutely no excuse for failing to serve Rachel, even to date. Appellant, instead, solely focuses on the fact that Rachel knew of the lawsuit, and a disputed claim that Rachel knew the allegations were against her. App.Br. at p.34-35. While notice is a factor that can be considered in granting a discretionary extension, A.265; see also Fantazolli v. City of New York, 343 F.R.D. 19, 25 (S.D.N.Y. 2022), it is evident from Zapata, that fulfillment of one or all factors does not render a discretionary extension mandatory. 502 F.3d at 193. This is especially true when no excuse is given for the neglect.

It should be noted that notice does not equate to service, it is merely a factor that can lead to an extension of time to serve. See Fantazolli, 343 F.R.D. at 25. Actual service is required for jurisdiction to attach, See Buon, 65 F.4th at 73-75, which Appellant cannot escape. App.Br. at pp 33-35.

Appellant seems to argue otherwise, that because Rachel knew of the case, she should be deemed to have been served. This must be rejected. The distinction between notice and actual service is demonstrated by the District Court acknowledging that Appellees argued improper service in their motion to dismiss, stating they "clearly had actual notice that LaNasa sought to press claims against

Rachel, they by no means 'attempt[ed] to conceal the defect in service,' which cuts against granting a discretionary extension." A.151, 155-156, 267.

Appellant seems to further indicate that Rachel does not dispute the allegations referred to her and therefore she was actually the party (and, presumably, that service of Lois is assumed to be on Rachel), and that because the undersigned represented her when she was improperly added as a party, service defenses were waived. Both of these are incorrect and the record is conclusive in that regard.

The defense has always considered Lois to be Appellant's target and has been complaining about Lois' inclusion in this case since in or around March 8, 2023 when the first motion to dismiss (though not included in this appendix) was served. A.63 ("[Appellant's use of this Court to harass a retired grandmother [Lois]"). This fight about Lois inclusion continued to the point where it was specifically referred to in Appellant's request to amend a second time. Specifically, Appellant states in a letter to the Court, "Based upon this representation of yours: 'Lois Stiene has zero connection to Plaintiffs or this litigation,' removing her name as a defendant." A.60. Appellant stated in another letter that Appellant would "withdraw any claims as against Lois Stiene." A.62. Nothing in the record should permit Appellant to conflate the two.

Lois and Rachel were treated as separate entities both by Appellant and Appellees. Accordingly, Appellant's claim that "[t]here can be no doubt,

whatsoever, that Rachel Stiene not only knew that she was the properly named party, but that the references in the Complaint clearly, without any doubt whatsoever, referred to her," App.Br. at p.34, is belied by the record and the Appellees conduct in the litigation fighting her inclusion. Such a statement should be disregarded.

As a final note, Appellant attempts to leverage his wrongful addition of a party as evidence that service was conceded. He cites to the docket entries which reflect no such representation by Appellees. App.Br. at p.35 <u>citing</u> A.16. He also cites to Respondent's motion to dismiss, which cuts against his claim. App.Br. at p.35 <u>citing</u> A.139. Appellees' motion to dismiss contains the FAC caption which reflects the defendant other than Erik being Lois. A.139. Furthermore, that brief commences with the following language: "Defendant Erik…and another purported defendant, apparently claimed to be Rachel…, though no one named Rachel [] has ever been summoned in this case." A.148. Appellant's reliance on docket entries attempts to mislead the Court from the obvious, that Appellees have never conceded that Rachel is properly a party and never conceded service upon her.

The absence of concession of service is supported by the Court's primary reason for not providing a discretionary extension: Rachel was improperly and impermissibly added as a party in violation of the Court's January 9, 2024 order. A.267-268. As stated by the Court, "If [Appellant] wished to add a new defendant[4]

---

[4] The District Court correctly viewed Rachel as a separate entity from Lois.

[Rachel], he could have — and *should* have — requested leave to do so." A.268 (emphasis in original). Indeed, the Court described Appellant's misreading of the order (reading "remove" as meaning "replace") as "unreasonable." A.268. Since Rachel was added in violation of the Court's order, her receiving representation does not constitute concession of service, especially when such concession was not even requested pursuant to Fed. R. Civ. P. 4.

Appellant's transgression, in the Court's opinion, strongly cut against a discretionary extension. It held, "[t]here is a 'strong policy need for courts to enforce sanctions against parties who, having had proper notice and opportunity to comply with the rules and with the court's orders, nonetheless fail to do so.'" A.268, quoting Seabrook v. City of New York, 236 F.R.D. 123, 128 (E.D.N.Y. 2006). With that sanction considered, and the fact that Appellant never requested an extension, the Court rationally denied a discretionary extension. A.268. Under these circumstances, an abuse of discretion is not arguable. Based upon the foregoing, the dismissal as against Rachel pursuant to Fed. R. Civ. P. 12(b)(5) should be affirmed.

27

## POINT III

## NONE OF THE STATEMENTS IN THE COMPLAINT WERE ACTIONABLE UNDER EITHER DEFAMATION CLAIM

**A.    Insult, Opinion, Truth, Lack of Defamatory Meaning, Lack of Specific Words, Etc. Prevents the Claimed Statements From Being Actionable**

While, substantively, this complaint falls under New York's Anti-SLAPP statute,[5] as this case is in Federal Court, procedurally, the standard for dismissal asserted is pursuant to Fed. R. Civ. P. 12(b), not the heightened pleading standard set forth in N.Y.C.P.L.R. 3211(g).  Even under the lower standard, both defamation claims were properly dismissed by the District Court. "[T]here is particular value in resolving defamation claims at the pleading stage, so as not to protract litigation through discovery and trial and thereby chill the exercise of constitutionally protected freedoms." Biro v. Condé Nast, 883 F. Supp.2d 441, 457 (S.D.N.Y. 2012), quoting Armstrong v. Simon & Schuster, Inc., 85 N.Y.2d 373, 379 (1995). Thus, as the District Court observed, "whether a statement is defamatory is a legal question the Court resolves and may address at the pleadings stage." A.269, citing Chau v. Lewis, 771 F.3d 118, 128 (2d Cir. 2014). Where a defamatory meaning is not discernible from a reasonable and natural reading of the publication in context

---

[5] A "federal court sitting in diversity must apply § 76-a because it is a substantive, rather than a procedural, provision." See Palin v. NY. Times Co., 510 F. Supp.3d 21, 26 (S.D.N.Y. 2020).

(analyzing the plain meaning), dismissal is required. See James v. Gannett Co., 40 N.Y.2d 415, 420 (1976).

As a starting point, the Court correctly constraining Appellant's allegations to those set forth in its written complaint. A.270, citing United States v. Int'l Longshoremen's Ass'n, 518 F.Supp 2d 422, 461 (E.D.N.Y. 2007) ("[To] permit[]…alleg[ations of] not only individual facts, but entire legal theories that appear nowhere on the face of the Amended Complaint, by attaching [extraneous information] to its pleading… in this action [would be a] request to abolish or ignore the modest pleading requirements imposed…by [Fed. R. Civ. P.] 8(a)."); see also CPLR 3016(a); Hussey v. N.Y. State Dep't of Law, 933 F. Supp.2d 399, 414 (E.D.N.Y. 2013) (purportedly defamatory statements must actually be set forth in the SAC). Appellant was not entitled to require the Court to pour through hours of video content.[6] A.270.

Notably, Appellant does not challenge this finding by the District Court, and therefore it should be deemed conceded. See, e.g., Missere v. St. John's Univ., 15-

---

[6] Appellees agree with Appellant that in order to find that a statement is capable of a defamatory meaning, the plain meaning of the statements and taking into account the context in which the statements were made, must be considered. See Brian v. Richardson, 87 N.Y.2d 46, 50-51 (1995). In this case, had the Court done so, as requested by Appellant, App.Br. at p.37, the District Court would have seen that Appellant cherry-picked out of context statements that, in context, objectively lack defamatory meaning.

cv-771, 2018 WL 1701946, at *2 (E.D.N.Y. Mar. 31, 2018); United States Sec. &

Exch. Comm'n v. DiMaria, 207 F. Supp.3d 343, 360 (S.D.N.Y. 2016). Accordingly,

this appeal is limited to only the statements in the written SAC. A.69-103.

As a final note, to the extent that this Court reaches the merits of this claim

against Rachel, it must be dismissed. A review of the statements reflects that none

of them were made by a female declarant—not by Rachel.[7] Appellants seek to invent

liability on the basis of aiding and abetting defamation, e.g., being in the same room

as defamation. This should be rejected, N.Y.C.P.L.R. 3016(a), and for this reason,

defamation against Rachel should be dismissed.

### 1. The District Court Correctly Found That Many Statements Were Non-Actionable Opinion

The District Court analyzed several of the statements, held that they were

incapable of being seen as factual and were, therefore, opinion. A.270. It stated:

> Erik's alleged statements that LaNasa was "inadvertently
> honest," that LaNasa was a "warrior for the old ways," that
> LaNasa's company was "scraping the bottom of the privy,"
> that LaNasa "fucked over" his business partners, that
> LaNasa "included a Nazi in [his] company," and that
> LaNasa's wife was the "new face" of his company, (2d
> Am. Compl. ¶¶ 22, 26), are all too subjective to be proven
> true or false. Absent more context, which LaNasa has not

---

[7] The links available in the complaint do confirm that no statements were made by a female declarant. These may be considered without converting the underlying motion into a summary judgment motion. See Newman & Schwartz v. Asplundh Tree Expert Co., 102 F.3d 660, 662 (2d Cir. 1996). Both in the complaint and the links themselves, there are insufficient statements of Rachel to support a defamation claim. N.Y.C.P.L.R. 3016(a).

> alleged, any reasonable reader would interpret the
> statements as opinions, not as facts.

Id. It also rejected a statement about LaNasa's cease and desist letter being used to

intimidate as being too subjective to be factual. Id.

In so holding, it applied the correct standard considering whether "(1) the

statement has a precise meaning that is readily understood, (2) the statement is

capable of being proven true or false, and (3) context signals to the reader that what

is being said is likely to be opinion rather than fact." Landa v. Capital One Bank

(USA) N.A., 101 N.Y.S.3d 90, 92 (2d Dept. 2019). Moreover, "Whether a particular

statement constitutes an opinion or an objective fact is a question of law." N. Shore

Towers Apartments Incorp. v. Kozminsky, 219 A.D.3d 494, 495 (2d Dept. 2023).

It is black letter law that, "[o]pinions, false or not, libelous or not, are

constitutionally protected and may not be the subject of private damage actions."

Rinaldi v. Holt, Rinehart & Winston, Inc., 42 N.Y.2d 369, 380-381 (1977)  Because

only facts can be proven false, subjective characterizations and opinions cannot give

rise to a valid claim. See Milkovich v. Lorain Journal Co., 497 U.S. 1, 19-20 (1990).

When a statement is not "capable of being proven true or false" and/or lacks "a

precise meaning which is readily understood," Davis v. Boeheim, 24 N.Y.3d

262,269-70 (2014), it is classic opinion.  Trash-talk characterizations such as Lanasa

being "inadvertently honest, I don't think that was [his] intention," and "the new

artist got paid for it, but Greg Bell did not," and "wasn't a not for profit, was for

profit," A.74-75., are precisely the kind of indefinite and imprecise words which lack context, and were correctly deemed opinion. See Old Dominion Branch No. 496 v. Austin, 418 U.S. 264, 284 (1974) ("words like 'traitor' cannot be construed as representations of fact"); McClure v. Am. Family Mut. Ins. Co., 223 F.3d 845, 853 (8th Cir. 2000). The District Court agreed, "Absent more context, which LaNasa has not alleged, any reasonable reader would interpret the [forgoing] statement as opinions, not as facts. A.270, citing Kozminsky, 219 A.D.3d at 496.

Appellant's appeal does not provide the context necessary. It simply, in a conclusory fashion, tries to claim that the above statements were more than opinion. For instance, Appellant asks this Court to make, blanketly, the huge logical leap that calling someone "inadvertently honest" is to say that that person is always dishonest. App.Br. at pp.40-41. This cherry-picked claim provides no facts that warrant a situational statement being deemed general. It is illustrative of the lack of context that renders the statement opinion rather than potentially defamatory. All Appellant provides is examples where the word "honest" is used in other contexts not applicable here. Id. There are no additional facts to provide context sufficient to disturb the District Court's decision. It is also insult. See infra.

With respect to "warriors for the old ways…" Appellant again provides no additional context. Argument as to how a term is understood by the general public does not provide additional facts as to why the statement could be defamatory.

App.Br. at p.42. He also provides no facts as to how this is directed at a commercial enterprise. Id. Therefore, his appeal provides no reason to reverse the District Court.

Appellant's complaint regarding discovery providing, "more context theoretically [to] render some of these statements defamatory," App.Br. at p.43, citing A.270, is meritless. The court's point there is that context in the form of facts alleged, is required for "any reasonable reason to interpret the statements…as facts."[8] A.270. It correctly observed, "LaNasa has not even come close to alleging facts supporting a reasonable inference that such context exists here." Id. Appellant does nothing to cure this in his brief —to justify discovery—with the submission of conclusory comparisons and definitional meaning of words.[9]

Context is not achieved through discovery if the minimum pleading standards are not met. Fed. Civ. P. 8; Hu, 927 F.3d at 97. Appellant failed to provide even these initial facts, despite several attempts, to get out of the pleading stage. As this is neither refuted nor corrected, no discovery was required and the District Court should be affirmed. See Point I, *supra*, for further discussion of discovery disparity.

---

[8] Similarly, "does not like homos and their type," A.75, lack allegations of fact to support a reasonable inference that such statement was defamatory. It is also insult.
[9] "Time to get into a bottle of Jack," A.77, is equally without context to be deemed factual. Moreover, it would also qualify as insult. Claims that Appellees would disclose private information about Appellant, A.99, is conclusively refuted by looking at the context which states that Appellees would never do that. A.166-167.

As a final point, when the factual basis for a conclusion is apparent to consumers of content (or, as is the case here, the basis for raising allegedly defamatory questions is apparent), those statements/questions are protected as opinions based on disclosed fact. <u>Levin v. McPhee</u>, 119 F.3d 189, 197 (2d Cir. 1977) (statements maybe actionable if they imply speaker's opinion is based on knowledge of facts not disclosed to the reader but "if a statement of opinion either discloses the facts on which it is based or does not imply the existence of undisclosed facts, the opinion is not actionable"); <u>Boeheim</u>, 24 N.Y.3d at 269 (same). Erik's statement that Lanasa "does not like homos and their type; will not work with folks that support them" and "[Lanasa] thinks he's some kind of warrior for the old ways; you know racism, gay bashing, women in the kitchen," A 75, were based upon freely available facts, that being a public manuscript that is several hundred pages that raises the implication that such charges are true. A.171 at n. 42, A.172. Thus, such statements constitute opinion as a matter of law. Appellant failed to overcome the finding of opinion.

## 2. The District Court Correctly Found That Other Statements Were Non-Actionable As Name Calling or General Insults

The District Court correctly held, "Even highly vulgar and inflammatory insults without more are not defamation." A.270, <u>citing</u> <u>Rivas v. Restaurant Assocs., Inc.</u>, 203 N.Y.S.3d 593 (1st Dept. 2024). In <u>Rivas</u>, there was no defamation in calling someone, *inter alia*, a pedophile because it was rhetorical hyperbole. <u>Id.</u> at 594.

The statements identified by the District Court which it described as "unquestionably vulgar," indeed were insult and were not defamatory. A.270. The same is true with respect to "bottle of Jack." As is references to a Nazi in Lanasa's company and being "kicked out of the military for lack of leadership potential. They are at best rhetorical hyperbole and "lack[] objective truth value and thus cannot be defamation." Id. There are no facts showing an accusation of alcoholism. Similarly, "they are scraping the bottom of the privy, okay, you can't get more shit than this shit…," A.76, is not remotely factual as a matter of law and is, at best, opinion and insult, which is not actionable.

### 3. The District Court Correctly Found That Other Statements Were Non-Actionable As Not Exposing Appellant to Contempt, Etc.

"A statement is defamatory only if it exposes a person to contempt ridicule aversion, or disgrace." A.270, quoting Town of Massena v. Healthcare Underwriters Mut. Ins. Co., 779 N.E.2d 167, 171 (N.Y. 2002) (internal annotations omitted). In this case, the District Court correctly observed that many of the statements could not be defamatory because they lacked this element. In connection the statements dismissed in this regard the Court held, based upon the available information in the pleadings, "It is unclear from LaNasa's allegations what those statements were even supposed to imply, if anything."[10] A.271. This is demonstrative of the failure to

---

[10] Appellant's complaint about context is refuted by this analysis. The Court considered all of the analysis reasonably available to it, supported by written

supply factual context. Therefore, the dismissal of the statements that LaNasa used anonymous emails,[11] that he was an online entity and that his company was for profit, was proper. A.270-271. With the context available, they are simply "not reasonably susceptible of defamatory content." A.271.

### 4. The District Court Correctly Found That the Remaining Statements Were Non-Actionable As Not Alleged to be False

Falsity of the statement is a necessary element of defamation. See Tannerite Sports, LLC. v. NBCUniversal News Grp., 864 F.3d 236, 242 (2d Cir. 2017). The "language must not only be reasonably read to impart the false innuendo, but it must also affirmatively suggest that the author intends or endorses the inference." Stepanov v. Dow Jones & Co., Inc., 120 A.D.3d 28, 37 (1st Dept. 2014) (quoting Chapin v. Knight-Ridder, Inc., 993 F.2d 1087, 1092 (4th Cir. 1993)). Appellant does not even allege such an endorsement.

Moreover, Appellant does not allege facts related to the falsity of the statements, only bare assertions. A.84. As the District Court correctly held, "[Appellant] has the burden to allege facts supporting a reasonable inference that an allegedly defamatory statement is false." A.271. A bare assertion is insufficient. Id.

---

allegations in the complaint and could not understand the implications. Appellant could have and should have supplied more facts and had many opportunities to do so.

[11] This statement does not allege particular words and is also non-compliant with N.Y.C.P.L.R. 3016(a). Moreover, review of the timestamp does not reflect the content alleged.

The Court observed that only bare assertions were alleged here stating, "[Appellant] simply described some very nasty opinions and commentary by [Appellees] that may or may not have been true." Id.

Appellant acknowledges this defect in the appeal quoting its sole allegation of falsity that is unsupported by facts. App.Br. at p.45. Appellant attempts to mask the pleading requirement by asserting that allegations of substantial falsity are sufficient.[12] However, that ignores the fact that bare assertions are insufficient. See Tannerite Sports, 864 F.3d at 242. Based upon decisional law relied upon by the District Court, Appellant's statement "As long as the plaintiff asserts that the published statement is false, and that it defames him or her, the falsity element has been satisfied," App.Br. at p.46, is flatly untrue. Further eroding Appellant's credibility on this point is that the examples of falsity claimed do not even use the actual statements alleged in the complaint. App.Br. at p.47. Summaries and editorializations change the alleged statements and cannot be relied upon to provide context without additional facts. Here, none were provided.

### 5. There are no Factual Allegations to Support a Per Se Finding

As a final point, especially with the removal of allegations related to criminality, there are insufficient facts to show that the defamation claims were "per

---

[12] This argument is based upon juxtaposing the fact that substantially true statements are not actionable. App.Br. at p.46. Appellant's logic, without any authority is unsupportable and should be rejected.

se." A.86, 89.  Once again, bare assertions replace actual facts.  For this reason and all the foregoing, all of the defamation claims must fail even without, as the District Court held, analyzing whether actual malice were necessary.

**B.      Allegations of Actual Malice Were Required, But Not Adequately Plead**

**1.      Actual Malice Must be Plausibly Plead In Federal Court
In a Case that Falls Under N.Y. Civ. Rights L. § 76-a and
<u>For a Public Figure</u>**

Had the District Court needed to reach this issue, A.271, the absence of actual malice being sufficiently plead, would have constituted an independent basis for dismissal of the defamation claim.  This is true even where, as here, the heightened pleading standard in New York under N.Y.C.P.L.R. 3211(g) is inapplicable.  As a public figure, "actual malice" fault, an essential element of Appellant's claim under the First Amendment and as discussed above, there is particular value in assessing the sufficiency of defamation claims at the pleading stage. See <u>Biro</u>, 883 F. Supp.2d at 457.  Moreover, even in Federal Court, cases involving statements made in public forums related to an issue of public interest (per N.Y. Civ. Rights L. § 76-a)[13] require

---

[13] The statutory language of N.Y. Civ. Rights L. § 76-a(2) requires a showing of actual malice stating, "damages may only be recovered if the plaintiff, in addition to all other necessary elements, shall have established by clear and convincing evidence that any communication which gives rise to the action was made with knowledge of its falsity or with reckless disregard of whether it was false, where the truth or falsity of such communication is material to the cause of action at issue."

sufficient allegations of actual malice. See Kesner, 2023 U.S. App. LEXIS 15255, 2023 WL 4072929, *5.

There is little doubt that YouTube videos are on a public forum, see e.g., Nelson v. Ardrey, 216 N.Y.S.3d 646, 648-649 (2d Dept. 2024). Under N.Y. Civ. Rights L. § 76-a(1)(d) "'Public interest' shall be construed broadly, and shall mean any subject other than a purely private matter."

Erik's broadcasts cannot constitute "purely private matters" as the public interacts in these shows and this specific community is interested in hearing about LaNasa's conduct, and as conceded in the SAC, Appellees' YouTube channel is of sufficient interest that Appellees are able to sell subscriptions. A.73. Accordingly, content thereon is of public interest. This case falls within anti-SLAPP: substantively (though not procedurally) applicable in Federal Court.

The foregoing means that Appellant was required to allege more than bare recitals asserting "actual malice," *i.e.*, fault "with knowledge that [the statements were] false or with reckless disregard of whether [they were] false or not." New York Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964). Reckless disregard in this context means proceeding to publish despite having serious doubts about the truth of the publication. Church of Scientology Int'l v. Behar, 238 F.3d 168, 174 (2d Cir. 2001), citing St. Amant v. Thompson, 390 U.S. 727, 731 (1968).

In this case, at best, there are conclusory allegations of actual malice. A.71, 73, 76, 84, 88, 99. In the SAC, there are no facts alleged, that could plausibly establish Appellees acted with actual malice as required. In the absence of such allegations, this claim must fail.

Also, where, as here, LaNasa is a public figure, actual malice must be similarly plead and proven. See Mahoney v. Adirondack Publ. Co., 71 N.Y.2d 31, 39 (1987) (public figure plaintiffs must prove, by clear and convincing evidence, that the defamatory statements were published with actual malice); Palin v. NY. Times Co., 510 F. Supp.3d 21, 26 (S.D.N.Y. 2020) (New York law "requires public figures ... to prove actual malice by clear and convincing evidence"). As a public figure, LaNasa bears this burden under the First Amendment. See Gertz v. Robert Welch, Inc., 418 U.S. 323, 342-44 (1974).

"Whether a plaintiff is a public figure is a question of law for the court." Celle v. Filipino Reporter Enters., 209 F.3d 163, 176 (2d Cir. 2000). "Where the question whether a plaintiff is a public figure can be determined based upon the pleadings alone, the Court may deem a plaintiff a public figure at the motion to dismiss stage." Biro v. Conde Nast, 963 F. Supp.2d 255, 270 (S.D.N.Y. 2013), aff'd, 807 F.3d 541 (2d Cir. 2015), and aff'd, 622 F. App'x 67 (2d Cir. 2015).

In making a public figure determination, a court considers whether a plaintiff has: (1) successfully invited public attention to his views in an effort to influence

others prior to the incident that is the subject of litigation; (2) voluntarily injected himself into a public controversy related to said subject; (3) assumed a position of prominence in the public controversy; and (4) maintained regular and continuing access to the media. Lerman v. Flynt Distrib. Co., 745 F.2d 123 (2d Cir. 1984).

In this case, even at the pleading stage, it is undeniable that LaNasa is a public figure. He is a long-standing fixture in public debates as evidenced by his several runs for office [14] over numerous years—2011: Mayor of Wilmington, North Carolina; 2014: North Carolina State Senate District 9; 2020: North Carolina's House District 20.[15] His other injections into public controversy include forcing female employees to wrestle one another in bikinis in order to obtain promotion and publication of materials.[16] Even private events can become public controversies when attention is driven to them. See World Wide Ass'n of Specialty Programs v. Pure, Inc., 450 F.3d 1132, 1137 (10th Cir. 2006) (plaintiff helped drive attention to issue underpinning public controversy).

---

[14] The Court may take judicial notice of election results. See Latifi v. Gonzales, 430 F.3d 103, 106 n.1 (2d Cir. 2005); In re Frito-Lay N. Am., Inc., 2013 U.S. Dist. LEXIS 123824, 12-md-2413(RRM)(RLM), *14 (E.D.N.Y., Aug. 29, 2013). It may take judicial notice of LaNasa's runs for office.

[15] News articles linked in text above.

[16] *Grits wrestling video sparks feud between NC candidates*, https://www.newsobserver.com/news/state/north-carolina/article240600416.html; see also CACI Premier Tech. v. Rhodes, 536 F.3d 280, 293 (4th Cir. 2008) (public controversy existed concerning treatment of individuals by private company).

Moreover, LaNasa has affirmatively injected himself into the public controversies with which he is widely associated. He regularly takes advantage of the platform his prominence affords him, ensuring his views are represented in the ongoing public debate by giving media interviews and publishing opinion pieces.[17] Schwartz v. Am. College of Emergency Physicians, 215 F.3d 1140, 1145 (10th Cir. 2000) (doctor voluntarily injected himself into public controversy by writing editorials on issue relating to his practice).[18] In these ways, LaNasa has elevated himself to prominence in connection with public life and he has even been a public presence in the online gaming community. Hatfill v. N.Y. Times Co.,532 F.3d 312, 322 (4th Cir. 2008) (plaintiff known as expert in his sphere); Gray v. St. Martin's Press, Inc., 221 F.3d 243, 251 (1st Cir. 2000) (same).

By voluntarily placing himself at the center of this on-going public debate, LaNasa is a public figure. Accordingly, under both New York state law and the First Amendment, to recover damages, LaNasa must show, by clear and convincing evidence, that Appellees published the Article knowing it was false or recklessly

---

[17] WHQR, *Justin LaNasa: The Full Interview* by Michelle Bliss, https://www.whqr.org/politics/2011-10-20/justin-lanasa-the-full-interview (one of several media interviews).

[18] Any claim by Appellant to artificially narrow view of public controversies to exclude LaNasa is without support. See Jankovic v. Int'l Crisis Grp., 822 F.3d 576 (D.C. Cir. 2016) (rejecting narrow controversy argued by plaintiff and looking instead to news coverage).

disregarding its apparent falsity.  As discussed below, since there are no factual allegations of actual malice and therefore, the defamation claim must fail.

### 2. Lanasa Fails To Plausibly Allege That Appellees Published With Actual Malice

"[P]leading actual-malice buzzwords is simply not enough to nudge a case into discovery." Biro, 963 F. Supp.2d at 279-280. Biro relied on a case that held regarding actual malice, which held, "[A] conclusory allegation—a mere recitation of the legal standard…is entirely insufficient [and]…is precisely the sort of allegation[] that Twombly and Iqbal rejected." Mayfield v. NASCAR, 674 F.3d 369, 378 (4th Cir. 2012); see also De Lench v. Archie, 406 F. Supp.3d 154, 160 (Dist. Ma. 2019)("A complaint that simply recites actual-malice buzzwords is insufficient to overcome a motion to dismiss because these are merely legal conclusions, which must be backed by well-pled facts"), quoting Schatz v. Republican State Leadership Comm., 669 F.3d 50, 56 (1st Cir. 2012). Biro applies this widely accepted standard in the Second Circuit. 963 F. Supp.2d at 279-280. See also Biro v. Conde Naste, 807 F.3d 541, 545 (2d Cir. 2015).

Here, LaNasa in the SAC makes a few conclusory attempts to allege actual malice. A.71, 73, 76, 80, 84-85, 88, 93, 99. None push the claims "across the line from conceivable to plausible." Iqbal, 556 U.S. at 680.  More precisely, LaNasa simply regurgitates the legal standard, A.84-85, and fails to plead any *facts* that, taken as true, could establish, by any standard, actual malice.

To the contrary, one of the most egregious allegations, regarding the criminal history of LaNasa, had to be withdrawn because of conclusive proof that it was true. A.60-62, 111, 119. Instead of showing any malice whatsoever, Appellant, by conduct, demonstrates that, instead of disregard for the truth, Appellees were actually publishing the truth.

In addition, LaNasa's reliance on his cease-and-desist letter and Appellees' lack of engagement in response, to claim that Appellees knew that the statements were false and acted with actual malice, cannot save Appellant's defamation claims. A.69-103. Even denials by the subject of a report, "however vehement," cannot establish actual malice. See Harte-Hanks Commc'ns, Inc. v. Connaughton, 491 U.S. 657, 691 n.37 (1989); see Anderson v. Rocky Mountain News, 1988 U.S. App. LEXIS 19304, at *6-7 (l0th Cir. July 7, 1988) ("mere rejection of plaintiff's version of events, standing alone" is insufficient to show actual malice). The same is true with respect to the fact that Appellees posted the cease-and-desist letter online. "[R]eporting perspectives at odds with the publisher's own, tends to rebut a claim of malice, not to establish one." Lohrenz v. Donnelly, 350 F.3d 1272, 1286 (D.C. Cir. 2003) (internal marks omitted); see also Contemporary Mission v. NY. Times Co., 665 F. Supp.248, 270 (S.D.N.Y. 1987) (no actual malice where the defendant "made an attempt to report plaintiffs' side of the story"), aff'd, 842 F.2d 612 (2d Cir. 1988).

Moreover, a claim of failure to investigate cannot substantiate a claim of actual malice. "The law is clear [that Appellees] ha[ve] no independent duty to investigate an author's story unless the publisher has actual, subjective doubts as to the accuracy of the story." Stern v. Cosby, 645 F. Supp.2d 258, 284 (S.D.N.Y. 2009). Moreover, "reliance on anonymous sources alone does not support an inference that the publisher acted with actual malice." Cabello-Rondon v. Dow Jones & Co., 720 F. App'x 87, 89 (2d Cir. 2018) (citing Biro, 807 F.3d at 546). Thus, absence of corroboration or investigation does not lead to a finding of adequately pled malice.

Finally, any claim that commentary on LaNasa's political leanings supports a claim for malice is moribund as Appellant has plead no *facts* to support the notion that Appellees were biased, and that bias caused them to knowingly publish falsehoods. Palin v. New York Times Co., 940 F.3d 804, 814 (2d Cir. 2019) (affirming general political bias or opposition does not constitute evidence of actual malice).

The facts in Palin that allowed the case to continue are not comparable to those here. She had pleaded facts that, if proven, showed a specific "personal connection" by the author of the challenged statements to certain underlying events, which "animat[ed] his hostility" toward her. Id. In this case, there is no allegation that Appellees have any personal connection to underlying events to give any suggestion of a heightened awareness of falsity. Id.; see also Brimelow v. NY. Times Co., 2021

45

U.S. App. LEXIS 31672, at *10 (2d Cir. Oct. 21, 2021) ("alleged ill will toward [plaintiffs] harbored by" the defendant "provide[d] no basis for plausibly inferring that [defendant] had any doubts about the truth of its statements regarding plaintiffs"). Without special knowledge, there is no inference of actual malice. The failure to sufficiently allege actual malice constitutes an independent sufficient basis for dismissal of the Complaint with prejudice.

## POINT IV

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS WAS NOT SUFFICIENTLY PLEAD

First, an IIED arising out of the same conduct as a defamation claim is duplicative and cannot survive. See Brancaleone v. Mesagna, 290 A.D.2d 467, 468 (2d Dept. 2002). The District Court observed, "Defamatory statements generally cannot form the basis of an emotional distress claim." A.272, citing Coleman v. Grand, 523 F. Supp.3d 244, 267 (E.D.N.Y. 2021). In this case, there can be no doubt that the same conduct is alleged as the foundation for Appellant's IIED and defamation claims, and accordingly, Appellant's IIED claim must be dismissed as duplicative.

Substantively, the District Court correctly dismissed for lack of extreme and outrageous conduct. "The elements of [IIED] are (1) extreme and outrageous conduct; (2) the intent to cause, or the disregard of a substantial likelihood of causing, severe emotional distress; (3) causation; and (4) severe emotional distress."

46

Klein v. Metropolitan Child Servs., Inc., 100 A.D.3d 708, 710 (2d Dept. 2012). "The subject conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. "Furthermore, conclusory assertions are insufficient to set forth a cause of action sounding in [IIED]." Id. at 711.

Appellant appears to contend that what is "extreme and outrageous" is only for a jury to decide. App.Br. at pp.50-51, 52-54. That is incorrect. This is a tort to "redress[] utterly reprehensible behavior…[and therefore], 'the requirements of the rule are rigorous, and difficult to satisfy.'" Howell v. New York Post Co., Inc., 81 N.Y.2d 115, 122 (1993). The Court is empowered to make this determination at the motion to dismiss stage. Id. at 119; Foster v. Svenson, 128 A.D.3d 150, 161-162 (1st Dept. 2015). "The outrageousness element [is] most susceptible to determination as a matter of law."[19] Howell, 81 N.Y.2d at 121. In that regard, "the standard [is] strict…[and] of the [IIED] claims considered by [the Court of Appeals], everyone

---

[19] Appellant's invocation of Richard L. v. Armon, 144 A.D.2d 1 (2d Dept. 1989) and the remaining cases in the string cite, is misleading. Richard L. involved a pattern of incest that was so extreme that it absolutely survived a motion to dismiss. When holding that "it is not for the court completely to usurp the function of the jury," id. at 6, the court held that it is the gatekeeper for what gets to the jury, that is a question of law, consistent Appellees' cases, but the extent of recovery based upon the extremity is for the jury. In this case, the District Court was properly the gatekeeper and held that the allegations here did not pass muster.

has failed because the alleged conduct was not sufficiently outrageous." Id. at 122. This case should follow that trend.

The two claims of extreme and outrageous conduct are: (1) the single posting of a photo of LaNasa's wife and child which the District Court correctly recognizes as "LaNasa's wife's YouTube profile picture in one of his videos." A.272; and (2) threats of violence from half a country away. A.92-93 at ¶¶ 70-73. The District Court correctly held that neither of these examples rose to the level of extreme and outrageous. A.271-272.

With respect to the photo, the District Court correctly identified it was one that LaNasa's wife put in the public domain. A.272. It was this very image that is displayed by default on her public posts directed to Erik, as well as Erik's public responses to such posts. The District Court saw through Appellant attempting to mislead with a claim that this image had not been in the public domain, though it had been by LaNasa's wife's own doing. This Court should not be fooled either.

The District Court held that the photo, without more, was not extreme and outrageous. A.272. In comparison with certain other cases whereby an IIED claim was dismissed, the allegations here are far less. In James v. DeGrandis, 138 F.Supp.2d 402 (W.D.N.Y. 2001), widely disseminated false statements made about a school coach having improper sexual relationships with students, made with the aim of getting the coach fired and preventing him from getting further work did "not

rise to the level of outrage required to recover on an [IIED] claim under New York law." <u>Routh v. Univ. of Rochester</u>, 981 F.Supp.2d 184, 214 (W.D.N.Y. 2013), <u>citing DeGrandis</u>, 138 F.Supp.2d at 421.

In <u>Routh</u>, the plaintiff was accused of non-consensual sexual violence. In dismissing the IIED claim,

> Even assuming…[the] accusations concerning specific incidents of violence and nonconsensual sex are false, and [were] made [] solely because [the accuser] was angry at [the Plaintiff] for ending their relationship, the Court finds under the circumstances that such false accusations are insufficiently extreme and outrageous to establish an IIED claim under New York law.

981 F.Supp.2d at 215.

In <u>Duke v. Lyons</u>, 250 A.D.2d 969 (3d Dept. 1998), the Court dismissed an IIED claim rooted in the plaintiff, a nurse, being fired after co-workers accused her of euthanizing a patient. The Court held, even if the false rumor actually happened, "the conduct was not sufficiently outrageous to state a cause of action for [IIED]." <u>Id.</u> at 973.

Finally, an employer falsely reporting to police that an employee had stolen computers was not sufficiently outrageous. <u>See</u> <u>Rivers v. Towers, Perrin, Forster & Crosby, Inc.</u>, 07-cv-5441(DGT)(RML), 2009 WL 817852, *8 (E.D.N.Y. Mar. 27, 2009).

In this case, the allegation is that Appellees posted a publicly available picture of LaNasa's wife and child. In addition, as correctly stated by the District Court, "[Appellees'] statements about LaNasa, though crass, fall below the 'exceedingly high bar' for what constitutes 'extreme and outrageous." A 272. Objectively, the claims here do not compare in severity with the above cases and do not even approach outrageous. As the Court is empowered to make such a judgment at this stage, the claim was correctly dismissed.

As a final note re: the photo, as the District Court observes that the image appeared in one video. A.272. It is the repeated and continuous course of conduct, not single instances, that allow conduct to rise to the level of outrageous. See, e.g., Collins v. Willcox Inc., 158 Misc. 2d 54, 57 (Sup. Ct. N.Y.Cty. 1992); see also Lincoln First Bank of Rochester v. Barstro & Assocs. Contracting, Inc., 49 A.D.2d 1025, 1025, 374 N.Y.S.2d 485, 487 (1975) (pattern of conduct, not a single action, is required. As continuous conduct is not alleged, this claim must be dismissed.

With respect to the claimed threats of violence, the District Court cites Davydov v. Youssefi, 205 A.D.3d 881 (2d Dept. 2022). The Davydov Court dismissed an IIED claim where "the defendant shouted verbal threats and hostile and demeaning insults…was not 'so outrageous in character and so extreme in degree' so as to qualify as [IIED]." Id. at 883. In doing so, it held, "Mere insults, threats, annoyances, or indignities are insufficient." Id.

In this case, the District Court analyzed the statements in context and concluded that "those statements [are] reasonably understood as empty bluster and not true threats of physical violence." A.272. It essentially held that they were, at best, insults, threats or indignities. Id. It also did not amount to a pattern. Thus, such statements when the context was considered, do not make out an IIED claim.

Appellant appears to argue that uncontradicted allegations of other elements of an IIED claim can permit the District Court to overlook the lack of extreme and outrageous conduct. App.Br. at pp.50-51 (stating the Court never contradicted the allegations of damages and causation). That is not how the rules of pleading work. A complaint is required to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002). That cannot be done without sufficient facts reflecting extreme and outrageous conduct. Accordingly, the existence of other elements cannot save this claim. Therefore, the dismissal of the IIED claim was correctly decided and should not be disturbed.

## POINT V

## PRIMA FACIE TORT WAS
## NOT SUFFICIENTLY PLEAD

The District Court correctly dismissed Appellant's *prima facie* tort claim. It is a disfavored claim and is not intended to be "a 'catch-all' alternative for every

cause of action which cannot stand on its own legs." <u>Freihofer v. Hearst Corp.</u>, 65 N.Y.2d 135, 143 (1985).

The requisite elements for a cause of action sounding in *prima facie* tort are (1) the intentional infliction of harm, (2) resulting in special damages, (3) without excuse or justification, (4) by an act or series of acts which are otherwise legal." <u>AREP Fifty-Seventh, LLC v. PMGP Assocs., L.P.</u>, 115 A.D.3d 402, 403 (1st Dept. 2014); <u>Freihofer</u>, 65 N.Y.2d at 142. Also, "The plaintiff [must] allege that disinterested malevolence was the sole motivation for the conduct of which [he or she] complain[s]." <u>Id.</u>; <u>Burns Jackson Miller Summit & Spitzer v Lindner</u>, 59 N.Y.2d 314, 333 (1983).

Appellant has failed to sufficiently allege that disinterested malevolence was the sole motivation for Appellees' content. A.96-100 at ¶¶ 83-94.  In fact, it is not alleged at all, A.69-102, and thus, this claim must fail. Appellant's claim otherwise is insufficient. App.Br. at pp.56-57.  There is nothing factual in the complaint that reflects that malice is the sole basis for the posts and therefore is insufficiently plead. Even if "intentional disinterested malevolence," App.Br. at p.57, could be credited, there is nothing non-conclusory alleged that it was the sole motivation and is therefore, that element is insufficiently plead.

As observed by the District Court, examples raised by Appellant's links incorporated by reference to the SAC, when looked at in context, are the same

allegations supporting the defamation claim. A.272. As a result, the District Court held that this claim "must fail insofar as it relies on allegations about the dissemination of allegedly defamatory materials." A.272. Since much of the allegations fall into this category, the *prima facie* tort claim was correctly dismissed.

The remainder of the allegations mirror those from the IIED claim. A.96-100 at ¶¶ 83-94. As the District Court correctly observed, A.272, "allegations in the complaint, which generally amount[] to a claim of emotional distress, [are] insufficient to allege special damages." Berland v. Chi, 142 A.D.3d 1121, 1123 (2d Dept. 2016).

"A critical element of the cause of action is that plaintiff suffered specific and measurable loss, which requires an allegation of special damages." Freihofer, 65 N.Y.2d at 143. "Special damages contemplate the loss of something having economic or pecuniary value." Liberman v. Gelstein, 80 N.Y.2d 429, 434–35 (1992). An example of this would be a documented loss of profits. Wolf St. Supermarkets, Inc. v. McPartland, 108 A.D.2d 25, 32 (4th Dept. 1985). IIED allegations are the seek redress of wrongs with amorphous values which is why they are insufficient to allege special damages.

In addition, there are no specific facts alleged outside of the IIED allegations that amount to special damages. Fed. R. Civ. P. 9(g). "[G]eneral allegations of lost sales from unidentified lost customers are insufficient." DiSanto v. Forsyth, 258

A.D.2d 497, 498 (2d Dept. 1999). Moreover, "The allegation that plaintiff was required to expend large sums of money does not allege special damages for it is of insufficient particularity." Garland v. Vermilyea, 88 A.D.2d 1044, 1045, (3d Dept. 1982). "[P]hysical, psychological, or financial demands of defending a lawsuit" are similarly insufficient. Del Vecchio v. Nelson, 300 A.D.2d 277, 278 (2d Dept. 2002).

Here, Appellant gives some examples of damages, App.Br. at p.58, but provides no factual basis as to how the asserted conduct would cause said damage. Because that is required, based upon the foregoing, the *prima facie* tort claim was correctly dismissed.

## POINT VI

### LEAVE TO AMEND (AGAIN) WAS NEVER REQUESTED, BUT PROPERLY DENIED

**A.    Appellant's Failure to Request Leave to Amend is Fatal**

It is black letter law that abuse of discretion will not be found in denial of an amendment where that request was never made. "While leave to amend…is freely granted…, no court can be said to have erred in failing to grant a request that was not made." Cruz v. FXDirectDealer, LLC, 720 F.3d 115, 126 (2d Cir. 2013). In Cruz, the plaintiff acknowledged that no formal motion to amend was made and, as a result, necessarily, the Court of Appeals found that "the District Court did not abuse its discretion by dismissing the insufficiently pleaded claims with prejudice." Id.

Here, it is precisely the same. App.Br. at p.59 ("Notwithstanding that the Appellant has not formally requested permission to file an Amended Complaint…"). Accordingly, the District Court here cannot be found to have abused its discretion in denying an amendment and dismissing the complaint.

It is not as if it could have fallen through the cracks, since as observed by the Court, "[Appellees'] motion to dismiss explicitly requested that the Court deny leave to amend." A.138, 176-177, 273. Appellant ignored that argument altogether. A.273. "[Appellant] had a clear opportunity to justify another amendment and simply refused to do so." A.273. Appellant makes no attempt to explain that failure to request in their brief. App.Br. at pp.59-63. Therefore, there is no reason to disturb this holding regardless of Appellant's remaining arguments.

## B. Futility is Demonstrated by the Proposed Amendment in Appellant's Brief

The sole proposed amendment in Appellant's brief is the addition of Rachel as a party. App.Br. at p.59-63. "A court may deny leave to amend when it 'appears that granting leave…is unlikely to be productive.'" Yerdon v. Henry, 91 F.3d 370, 378 (2d Cir. 1996). In light of the fact that: (a) the allegations against Erik were dismissed on the merits, (b) Appellant does not seek to alter those allegations even in this appeal, and (c) the conduct of Rachel in the complaint is far less than Erik's— none of the actual statements are attributable to Rachel, amendment to properly add

Rachel as a party is unlikely to be productive. Accordingly, the Court should affirm the District Court on the ground of futility.

## C.     Factually, and Legally, the Denial of Amendment was Correct

As discussed above, Appellees have been crying foul about the inclusion of Lois since March 2023 at the latest. The order violated by Appellant was in January 2024, 10 months later. Appellees were still accusing Appellant of "harass[ing] a retired grandmother [Lois]" in November 2023, more than a month before the January 2024 order. A.63. Appellant had notice for over a half year that the named party was Erik's mother, not Erik's wife, and did nothing to add Erik's wife. Therefore, Appellant cannot hide behind a claim that Lois was "presumed to be the spouse of Erik." App.Br. at p.59. Nor can Appellant claim that Rachel "knew she was the correctly named party in the case. App.Br. at p.62. Lois took the position of objecting to her inclusion for almost a year. Her name was on the summons. A.58 (the name Rachel appears nowhere on that document). Appellant sued someone irrelevant, and failed to take the appropriate action.

In fact, Appellant lost the benefit of the doubt by violating a court order. Despite the passage of 10 months, the only action taken, as acknowledged by the Court, was to request removal of a party. A.55, 62, 268; App.Br. at p.60. Appellant never requested removal and replacement. Despite the Court's order, A.15-16, Appellant added allegations anyway, and that was described as "objectively

unreasonable." A.268. Whether there was an objection to the addition of a party by Appellees, App.Br. at p.61, is immaterial, because, as the court held, if Appellant wanted to add Rachel, Appellant "should have [] requested leave to do so." A.268. Appellant did not, Appellees were not provided with an opportunity to object and the Court did not provide such permission. A.15-16. Where the Court provides a warning of consequence regarding the opportunity to replead, and Appellant disregards it, dismissal with prejudice is warranted. See Black v. Ganieva, 2023 U.S. App. LEXIS 5087, 2023 WL 2317173, *5 (2d. Cir. 2023).

This is to say that Appellant has had several opportunities to amend, and still failed to get it right. There is no evidence that a future amended complaint "would have, presumably made clear that the correct identification of the second Defendant was Rachel [] and not Lois []." App.Br. at p.59. In fact, as observed by the Court, "Amendment is unlikely to be productive after [Appellant] 'twice fail[s] to present a valid cause for relief.'" A.273, citing Trump v. Vance, 480 F.Supp.3d 460, 505 (2d Cir. 2020). This is especially true since "[Appellant's] counsel…is presumed to know what facts he would have to allege to survive a motion to dismiss." A.273. As he failed to do so, the District Court properly found that there is "no reason to believe [Appellant] could state a claim if allowed a fourth opportunity to do so." A.273.

Moreover, the Court should not credit the claim that adding Rachel was a clarification. Had that been true, the redline and clean versions of the SAC would

have matched. As discussed above, they did not. A.70 at, e.g., ¶¶ 6 and 7, A.105 at, e.g., ¶¶ 6 and 7; A.71 at ¶ 10, A.106 at ¶ 10; and A.75 at ¶ 22, March 17, 2022 entry, A.111 at ¶ 22, March 17, 2022 entry.  The differences in the two documents reflects an attempt to circumvent proper procedure and the rules. A.268.   Therefore, Appellant forfeited the benefit of the doubt.

On the first amendment, Appellant received significant guidance from the District Court on being more selective and refused to adhere to it. On the second amendment, Appellant received a specific order on how to amend and refused to adhere to it. The result was a dismissible complaint. Absent an actual request, the benefit of the doubt or any showing that the amendment would be productive, the District Court did not abuse its discretion in dismissing with prejudice.

## **CONCLUSION**

For the reasons stated herein, the Judgment of the District Court should be affirmed in its entirety. Specifically, in light of the fact that much of Appellant's attack on the District Court order was collateral (and incorrect as argued herein) and did not even refute the careful and correct analysis of the District Court, Appellant showed no entitlement to reversal. Therefore, the holding of the Distrct Court should not be disturbed.

Dated:  November 5, 2024              Respectfully submitted,
        New York, New York

OFFIT KURMAN, P.A.
By: Daniel J. Schneider, Esq.
590 Madison Avenue, 6th Floor
New York, New York 10022
(212) 545-1900
daniel.schneider@offitkurman.com

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)</u>

I hereby certify pursuant to Fed. R. App. P. 32(a)(7)(C) that the attached brief is proportionally spaced, has a typeface (Times New Roman) of 14 point, and contains 13,979 words (excluding, as permitted by Fed. R. App. P. 32(a)(7)(B), the corporate disclosure statement, table of contents, table of authorities, and certificate of compliance), as counted by the Microsoft Word processing system used to produce this brief.

Dated:  November 5, 2024       Respectfully submitted,
       New York, New York

OFFIT KURMAN, P.A.
By: Daniel J. Schneider, Esq.
590 Madison Avenue, 6th Floor
New York, New York 10022
(212) 545-1900
daniel.schneider@offitkurman.com