# 24-1325

**To Be Argued By: Bernard V. Kleinman, Esq., Attorney for Plaintiffs-Appellants**

# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

:============================:

## JUSTIN LANASA, TSR, LLC, DUNGEON HOBBY SHOP MUSEUM, LLC, Plaintiffs-Appellants,

— *versus* —

## ERIK STIENE, RACHEL STIENE, Defendants-Appellees.

:============================:

**AN APPEAL FROM A JUDGMENT OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK**

:============================:

## PLAINTIFFS-APPELLANTS REPLY BRIEF

:============================:

BERNARD V. KLEINMAN, ESQ.
LAW OFFICE OF BERNARD V. KLEINMAN, PLLC
ATTORNEY FOR PLAINTIFFS-APPELLANTS
108 VILLAGE SQUARE
SUITE 313
SOMERS, NY 10589-2305
TEL.: (914) 644-6660
FAX: (914) 694-1647
EMAIL: *ATTRNYLWYR@YAHOO.COM*

## TABLE OF CONTENTS

I.  Table of Authorities ................................................ 2

II. Preliminary Statement .............................................. 6

III.  Point One ........................................................ 8

THE FAILURE TO PERMIT DISCOVERY LEAVES
MULTIPLE ISSUES AND "FACTS" UNRESOLVED

IV.  Point Two ......................................................... 11

RACHEL STIENE WAS A PROPERLY NAMED
PARTY TO THIS ACTION

V.  Point Three ........................................................ 14

THE STATEMENTS SET FORTH IN THE
COMPLAINT ARE ACTIONABLE DEFAMATORY
STATEMENTS UNDER NEW YORK LAW

VI.  Point Four ........................................................ 21

PLAINTIFFS ADEQUATELY PLED THE TORT OF
INTENTIONAL INFLICTION OF EMOTIONAL
DISTRESS

VII.  Point V ........................................................... 24

PLAINTIFFS ADEQUATELY PLED THE TORT OF
*PRIME FACIE* TORT

VII.  Point VI .......................................................... 29

LEAVE TO AMEND SHOULD HAVE BEEN
GRANTED BY THE LOWER COURT

VIII.  Conclusion ...................................................... 30

IX.  Statement Pursuant to FRAP 32(a)(7)(C) ........................... 31

X. Certificate of service .............................................. 32

# TABLE OF AUTHORITIES

## COURTS

*American Bank & Trust Co. v. Federal Reserve Bank of Atlanta*,
256 U.S. 350 (1921) .................................................. 25

*American Elec. Power Co. v. Connecticut*, 564 U.S. 410 (2011) ............. 16

*Amtrak Prods., Inc. v. Morton*, 410 F.3d 69 (1st Cir. 2005) .............. 18

*Aversa v. Taubes*, 194 A.D.2d 580 (2d Dep't 1993) ....................... 27

*Bialik v. E.I. DuPont de Nemours & Co.*, 142 Misc.2d 926
(S. Ct. Niagara Co. 1988) ........................................... 23

*Blickstein v. Blickstein*, 99 A.D.2d 287 (2d Dep't 1984) ................ 22

*Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314 (1983) .. 25

*Cedeno v. Pacelli*, 2019 N.Y. Misc. LEXIS 4864 (S. Ct. N.Y. Co. 2019),
*aff'd* 192 A.D.3d 533 (1st Dep't 2021) .............................. 20

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) ............. 11

*Circle v. Jim Walter Homes, Inc.*, 1977 U.S. App. LEXIS 13015
(10th Cir. 1977) ..................................................... 8

*Conley v. Gibson*, 355 U.S. 41 (1957) ................................... 27

*Cornelius-Millan v. Caribbean Univ., Inc.*, 261 F. Supp.3d 143
(D.P.R. 2016) ....................................................... 18

*Crawford v. Holman*, 2021 U.S. Dist. LEXIS 186108 (W.D. Va. 2021) ....... 14

*Eaton v. Chahal,* 146 Misc.2d 977 (S. Ct. Rensselaer Co. 1990) .......... 27

*Foman v. Davis*, 371 U.S. 178 (1962) ................................... 29

*Ft. Knox Music, Inc. v. Baptiste*, 257 F.3d 108 (2d Cir. 2001) ........... 7

*Gremillion v. Sears*, 2007 U.S. Dist. LEXIS 8528 (N.D.N.Y. 2007) ........ 14

*Gross v. New York Times Co.*, 82 N.Y.2d 146 (1993) ..................... 20

*Hawthorne v. Citicorp Data Sys., Inc.*, 219 F.R.D. 47 (E.D.N.Y. 2003) .... 14

*Hart v. State*, 829 N.E.2d 541 (Ind. App. 2005) ........................ 16

*Hilgraeve Corp. v. Symantec Corp.*, 212 F.R.D. 345 (E.D. Mich 2003) ..... 29

*Honickman v. Blom Bank*, 2024 U.S. App. LEXIS 4748 (2d Cir.),
    *cert. granted* — U.S. — (2024) .................................................... 29

*Hughes v. Pacienza*, 2011 N.Y. Misc. LEXIS 4785 (S. Ct. Kings Co. 2011) .. 24

*Iglesias v. Mutual Life Ins. Co.*, 918 F. Supp. 31 (D.P.R. 1996) .............. 6

*Johnny Ha v. Conn*, 2024 U.S. Dist. LEXIS 103647 (D. Vt. 2024) ............. 18

*Jordan v. Verizon Corp.*, 391 Fed. App'x 10 (2d Cir. 2010) ................... 7

*Knight v. McLaughlin*, 2021 U.S. Dist. LEXIS 255072 (N.D. W. Va. 2021) .. 18

*Lanasa, et al. v. Stiene, et al.*, 2024 U.S. Dist. LEXIS 70340
    (E.D.N.Y. 2024) .................................................................... *passim*

*Lawson v. Ocwen Loan Servicing, LLC*, 2015 U.S. Dist. LEXIS 180579
    (N.D. Ga. 2015) ....................................................................... 8

*Mann v. Abel*, 10 N.Y.3d 271 (2008) ........................................... 20

*McCann v. McCann*, 156 Misc.2d 540 (S. Ct. N.Y. Co. 1993) ................. 22

*Michigan v. U.S. Army Corps of Engineers*, 667 F.3d 765 (7th Cir. 2011),
    *cert. den.* 565 U.S. 1241 (2012) ................................................ 16

*Milo & Gabby, LLC v. Amazon.com*, 144 F. Supp.3d 1251
    (W.D. Wash. 2015) ................................................................ 15

*Mohrman v. Johns*, 2020 N.Y. Misc. LEXIS 5380 (S. Ct. Suffolk Co. 2020) . 24

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) .......... 13

*North Shore Towers Apartments Inc. v. Kozminsky*, 219 A.D.3d 494
    (2d Dep't 2023) ..................................................................... 10

*Novak v. Tucows, Inc.*, 2007 U.S. Dist. LEXIS 21269 (E.D.N.Y. 2007),
    *aff'd* 330 Fed. App'x 204 (2d Cir. 2008) ..................................... 16

*Omi's Custard Co. v. Relish This, LLC*, 2006 U.S. Dist. LEXIS 60016
    (S.D. Ill. 2006) ....................................................................... 6

*Paladino v. Cojocaru*, 2021 N.Y. Misc. LEXIS 58743
    (S. Ct. N.Y. Co. 2022) ........................................................... 20

*Pastor, Matter of*, 154 A.D.3d 184 (1st Dep't 2017) ........................... 25

*Pignatelli v. Press Publishing Co.*, 197 App. Div. 275 (2d Dep't 1921) ...... 25

*Romandette v. Weetabix Co.*, 807 F.2d 309 (2d Cir. 1986) .......... 13-14

*Ross v. Johnson*, 2020 N.Y. Misc. LEXIS 2691 (S. Ct. N.Y. Co. 2020) .......... 27

*Sahu v. Union Carbide Corp.*, 548 F.3d 59 (2d Cir. 2008) .......... 11

*Smith v. Meridian Technologies, Inc.*, 86 A.D.3d 557 (2d Dep't 2011) .......... 24

*Swayze v. LaFontant*, 2022 U.S. Dist. LEXIS 109773 (S.D.N.Y. 2022) .......... 13

*Thomas v. S.C. Dep't of Mental Health*, 2023 U.S. Dist. LEXIS 240555 (D.S.C. 2023) .......... 16

*Trireme Energy Develop., LLC v. RWE Renewable Americas, LLC*, 2023 U.S. Dist. LEXIS 151454 (S.D.N.Y. 2023) .......... 29

*United States v. Scoville*, 1991 U.S. Dist. LEXIS 11785 (W.D. Mo. 1991) .......... 13

*Valve Corp. v. Ironburg Inventions Ltd.*, 8 F.4th 1364 (Fed. Cir. 2021) .......... 16

*Vitamins Antitrust Litigation, In re*, 217 F.R.D. 27 (D.D.C.), *aff'd* 323 F.3d 1207 (D.C. Cir. 2003) .......... 29

*Wash. Public Employees' Ass'n v. Washington State Center for Childhood Deafness & Hearing Loss*, 194 Wn.2d 484 (2019) .......... 16

*Waters v. Town Sports Int'l Holdings, Inc.*, 2014 N.Y. Misc. LEXIS 3404 (App. Term 2d Dep't 2014) .......... 23

*Zaretsky v. Berlin*, 513 B.R. 430 (Bankr. Ct. E.D.N.Y. 2014) .......... 19

## STATUTES & RULES & *ETC.*

F.R.App.P. Rule 4 .......... 7

F.R.Civ.P. Rule 4 .......... 13-14

F.R.Civ.P. Rule 6 .......... 14

F.R.Civ.P. Rule 12 .......... 8, 9

F.R.Civ.P. Rule 15 .......... 29

F.R.Civ.P. Rule 56 .......... 11

F.R.Civ.P. Rule 60 .......... 6, 7

11 U.S.C. § 523(a)(6) .......... 19

28 U.S.C. § 1332 .......... 6

## SECONDARY SOURCES

Docherty, B., *Defamation Law: Positive Jurisprudence*, 13 HARVARD HUMAN
RIGHTS J. 264 (2000) ................................................................ 15

Martin, J., *The Role of Retraction in Defamation in Lawsuits*,
UNIV. OF CHICAGO L. FORUM (1993) ........................................ 15

Prosser, W., HANDBOOK OF THE LAW OF TORTS (4th ed. 1971) ............... 15

Veeder, V., *The History and the Theory of the Law of Defamation*,
3 COLUMBIA L.J. 546 (Dec. 1903) ........................................... 15

Wadhwa, V., *Law and Ethics Can't Keep Pace With Technology*,
MIT TECHNOLOGY REV. (2014) ................................................. 15

Wirestone, G., *Democracy's warning signs flash 'emergency' as newsrooms
shudder in Kansas and nationwide*, THE REFLECTOR (July 1, 2024) ...... 17

## *PRELIMINARY- COUNTER STATEMENT*

This is an appeal of a judgment entered by the Hon. Kiyo Matsumoto, U.S. District Judge, E.D.N.Y., on the 17th day of April 2024.  *Lanasa, et al. v. Stiene, et al.*, 22-cv-5686, 2024 U.S. Dist. LEXIS 70340 (E.D.N.Y. 2024).  This appeal raises the issue as to whether the lower court ruling, in dismissing the Plaintiffs' amended complaint, was correct in the application of applicable state law in a cause of action seeking tortious relief for the alleged defamatory statements of the named Defendants (among other tortious claims), and, furthermore, whether the lower Court should have exercised jurisdiction over the named Defendant, Rachel Stiene.

A copy of the decision appears at Joint Appendix ("J.A.") pp. A-262 — A-274.

In the Appellees' Counter-Statement they, at this eleventh hour, seek to remediate their failure to file a cross-appeal, by now arguing that the lower court erred in finding that the Plaintiffs had satisfied the jurisdictional amount requirement of Section 1332(a).  See Appellees' Brief at pp. 3-4.  They rely solely upon the assertion that this Court may, *sua sponte*, may make such a finding.

First of all, it needs to be noted that the Appellees certainly had the opportunity, in the lower Court, under Rule 60(b)(1) (*see, e.g., Omi's Custard Co. v. Relish This, LLC*, 2006 U.S. Dist. LEXIS 60016 (S.D. Ill. 2006); *Iglesias v. Mutual Life Ins. Co.*, 918 F. Supp. 31, 37 (D.P.R. 1996) (challenge to court's jurisdictional amount ruling under Section 1332(a) raised in Rule 60(b) motion)), to have Judge Matsumoto

(6)

review her earlier ruling on this issue. They chose not to do so. As such, they have waived this argument. See generally *Jordan v. Verizon Corp.*, 391 Fed. App'x 10, 12 (2d Cir. 2010).

Further, as referenced both by Appellants in their Opening Brief (see pp. 11, 25, therein), and by the Appellees (see Appellees' Brief at pp. 3-4), they had the opportunity to file a cross-appeal under F.R.A.P. Rule 4(a)(3), and chose not to do so. Attorney Schneider is an experienced well-versed adversary. He is not a *pro se* party, nor is he unfamiliar with the applicable Rules. His apparent second thoughts on this matter, and his decision not to file a cross-appeal, cannot, and should not, be now rectified by this Court. Nor should Appellant be forced to engage in lengthy research and briefing on an already decided issue, not before this tribunal for review.

Finally, the Appellee cites to *Ft. Knox Music, Inc. v. Baptiste*, 257 F.3d 108 (2d Cir. 2001), for precedential support of its position. In that case all that this Court did was recognize that the district court may address certain issues (such as jurisdiction) *sua sponte*, even in the absence of a Rule 60(b) motion. See *id.* at 110-11. The *Baptiste* Court was not confronted with a factual issue regarding the jurisdictional amount as the lower court was here. Indeed, the issue of jurisdictional mount was addressed by the parties and by supplementary evidence, all to the satisfaction of the lower court. See detailed discussion of this issue in *Lanasa v.*

*Stiene*, 2024 U.S. Dist. LEXIS 70340 at *10-*13 (E.D.N.Y. 2024), reproduced at J.A. pp. A-266 — A-267.

Thus, this issue is not properly before this Court, and the Court of Appeals should accept Judge Matsumoto's ruling on this legal and factual issue as the law of case, and not subject to review or vacatur.  See *Lawson v. Ocwen Loan Servicing, LLC*, 2015 U.S. Dist. LEXIS 180579 at *17-*18 (N.D. Ga. 2015).  See also *Circle v. Jim Walter Homes, Inc*., 1977 U.S. App. LEXIS 13015 at *3 (10th Cir. 1977).

## *FACTS*

Appellant will rely upon the "FACTS" as set forth in his Main Brief.  See Appellant's Brief at pp. 10-28.  Where necessary, in Reply to the Appellees' Response, Appellant shall lay out any additional, corrected, or supplemental Facts.

## *ARGUMENT*

### Point One
### THE FAILURE TO PERMIT DISCOVERY LEAVES MULTIPLE ISSUES AND "FACTS" UNRESOLVED

The Appellee trivializes the argument of the Appellants that, having been denied any discovery whatsoever, they were put at an unfair advantage in the presentation and argument regarding the Rule 12(b) Motion.  The Appellees, in an unnecessarily unprofessional manner, state that "The bandwidth Appellant spends on the disparity in discovery makes no difference since none was relied upon in making this motion." Appellees' Brief at p. 20.  Emphasis added,

The fact that Judge Matsumoto did not rely upon any of the discovery is not the point. What is the point is that had the lower court granted to the Appellants the same opportunities to depose the Defendants, as it did to the Appellees in deposing Mr. Lanasa, there would have been additional sworn evidence that would likely have been dispositive on any number of issues.

As set forth in the Appellants' Opening Brief, the lower court, without any hesitation, permitted the deposing of Mr. Lanasa. See J.A. at p. A-15. And, indeed, this was done after a joint request was made to the lower court. ECF No. 58. When Plaintiffs' counsel sought similar courtesy from the Defendants, not only did the Defendants' counsel unjustifiably and unprofessionally, refuse, but the lower court completely ignored the request. See Appellants' Opening Brief at pp. 43-44.

Numerous occasions in the lower court's ruling evidenced what the lower court perceived as a lack of supporting evidence, and, as such, served as a basis for the granting of the Rule 12(b) Motion. For example, Judge Matsumoto, stated that

> Erik's alleged statements that LaNasa was "inadvertently honest," that LaNasa was a "warrior for the old ways", that LaNasa's company was "scraping the bottom of the privy," that LaNasa "fucked over" his business partners, that LaNasa "included a Nazi in [his] company," and that LaNasa's wife was the "new face" of his company, (2d Am. Compl. ¶¶ 22, 26), are all too subjective to be proven true or false. <u>Absent more context, which LaNasa has not alleged, any reasonable reader would interpret the statements as opinions, not as facts.</u>

*Lanasa v. Stiene*, 2024 U.S. Dist. LEXIS 70340 at *22 (E.D.N.Y. 2024). Emphasis added.[1]

And, Judge Matsumoto continued — and conceded — that "more context theoretically could render some of these statements defamatory, . . ." *Id*. at *23.

Similarly, in dismissing the tort claim of intentional infliction of emotional distress, the lower court stated that "the Court finds those statements reasonably understood as empty bluster and not true threats of physical violence, . . ." *Id*. at *27. Certainly, having the opportunity to depose Stiene and his wife would have exposed, very possibly, the nature of the threats made upon the Plaintiff and his family, whether Stiene (as a supposed ex-NYPD officer) possessed a firearm, and his general (possibly) violent demeanor. All of this would have gone to answer Judge Matsumoto's unanswered query.

Judge Matsumoto availed herself of matters outside the Complaint when she sought additional information on the matter of domicile and diversity. See Order of the Court dated April 2, 2024. J.A. at p. A-17. And, in response to that Order the Plaintiff filed several Declarations. See ECF Nos. 69 thru 74. J.A. at p. A-18. And,

---

[1] It should be noted that the case that the lower Court cited in support of this conclusion, *North Shore Towers Apartments Inc. v. Kozminsky*, 219 A.D.3d 494, 495-96 (2d Dep't 2023), provides no real support for the lower court's statement, and is of a general nature, and contains no characterizations of the alleged defamatory statements as "opinions", except as to a conclusory nature.

in making her ruling on the issue in the final appealed Order, Judge Matsumoto referenced these Declarations.  See *Lanasa v. Stiene*, *supra*, at *10.[2]

Having availed herself of records outside of the original complaint, she had, effectively converted the motion into one for summary judgment under Rule 56. Once done, it is essential that the court "give the parties an opportunity to conduct appropriate discovery and submit the additional supporting material contemplated by Rule 56." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002). See also *Sahu v. Union Carbide Corp.*, 548 F.3d 59, 69-70 (2d Cir. 2008) ("care should, of course, be taken by the district court to determine that the party against whom summary judgment is rendered has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact").

Hence, it was error for the lower court to not have permitted such discovery prior to its ruling.

Point Two

RACHEL STIENE WAS A PROPERLY NAMED
PARTY TO THIS ACTION

The Appellants' position is that, not only was Rachel Stiene well advised as to the fact she was a party to this action, but she suffered no prejudice by the fact that she was not served with a Summons.  From the very beginning of this litigation there

---

[2] Indeed, Judge Matsumoto also availed herself of the Declaration of Mr. Lanasa to rule on the issue of jurisdictional amount.  See *Lanasa v. Stiene, supra*, at *11-*12.

(11)

was confusion as to who the female was that appeared on Erik Stiene's on-line diatribes. As she was never identified by name, the Plaintiff captioned its complaint "LOIS STIENE aka RACHEL STIENE". And, as a result, a Summons was issued naming Lois Stiene, and served upon counsel for the Defendants. See J.A. at p. A-58. See also ECF No. 24, J.A. at p. A-27, "SUMMONS Returned Executed by Justin Lanasa, Dungeon Hobby Shop Museum LLC, TSR, LLC. Lois Stiene served on 2/3/2023, answer due 2/24/2023. (Kleinman, Bernard) (Entered: 02/15/2023)."

This confusion about who was the offending female permeated the entire case, and it was not until November 26, 2023 that the matter was cleared up, and the correct identifying name of the offending female was made clear. See ECF No. 55, J.A. at p. A-60.

Notwithstanding that the matter was unresolved until fourteen months after the complaint was initially filed, during this entire time, there was no demonstrated prejudice to the Appellees, and counsel for the Appellees fully litigated the matter representing "Lois Stiene, aka Rachel Stiene". Repeatedly, throughout this litigation, counsel for the Appellees asserted their representation of Lois/Rachel Stiene. Indeed, no argument was ever presented that would have made any difference, as it was clear from the beginning that the offending published comments on-line were being made by one particular individual. See discussion in Appellants' Opening Brief at pp. 35-36.

(12)

Courts have repeatedly recognized that to decline to rule that a party has been "served" when they have, in fact, received notice and been apprized of the court action, and have appeared by way of counsel, is to elevate "form over substance". *See, e.g., United States v. Scoville*, 1991 U.S. Dist. LEXIS 11785 at *18 (W.D. Mo. 1991). See also cases cited in Appellants' Opening Brief at p. 36. The key element to "service" is notice. That is the very essence of due process. See *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). While the strictures of Rule 4 are clear and indisputable, where the court is confronted with the anomalous situation, as exists here (unlike the more common situation where a "served" party has not appeared), that a party has been (a) named, (b) repeatedly referenced in the pleadings of their counsel, (c) shown no prejudice based upon the asserted defective service, (d) was represented by counsel, and (e) has had all legal and factual arguments made on their behalf, then that individual ought be deemed a party to the action.

To do otherwise, makes a mockery of the word "notice". See *Swayze v. LaFontant*, 2022 U.S. Dist. LEXIS 109773 (S.D.N.Y. 2022), where the court observed that "The Second Circuit has allowed more liberal constructions of Rule 4 when the defendant has received actual notice. *See Romandette* [*v. Weetabix Co.*],

807 F.2d [309,] 311 [(2d Cir. 1986)]." *Id.* at *9.[3] Indeed, in *Romandette*, this Court

applied a "liberal interpretation of Rule 4" where the interest of justice so require it.

807 F.2d at 311. See also *Gremillion v. Sears*, 2007 U.S. Dist. LEXIS 8528 at *3

(N.D.N.Y. 2007); *Hawthorne v. Citicorp Data Sys., Inc.*, 219 F.R.D. 47, 51

(E.D.N.Y. 2003). *Cf., Crawford v. Holman*, 2021 U.S. Dist. LEXIS 186108 at *11-

*12 (W.D. Va. 2021) (dismissing a complaint for failure to effect service despite the

liberal construction of Rule 4 when a defendant has actual notice and despite the

liberal construction permitted to *pro se* plaintiffs where the defendant asserted that

she had not resided at the address at which she was served for over two years).

Point Three
<u>THE STATEMENTS SET FORTH IN THE COMPLAINT ARE
ACTIONABLE DEFAMATORY STATEMENTS
UNDER NEW YORK LAW</u>

I. Introduction

It is essential that the Court of Appeals understand the context in which these

claims of defamation arise. The law of defamation is a long and storied one. Its

---

[3] The *Swayze* Court went on to state that, under F.R.Civ.P. Rule 6(b), the factors present militated in favor of granting an extension to effect service, viz.,

> Courts may grant such extensions "after considering four factors," as allowed by Rule 6(b) (1) whether the statute of limitations would bar the action once refiled; (2) whether defendants had actual notice of the claims asserted in the complaint; (3) whether defendants attempted to conceal the defect in service; and (4) whether defendants would be prejudiced by extending plaintiff's time for service.

*Ibid.*

In the case at Bar all of these factors militated in favor of permitting the formalization of the service on Rachel Stiene.

(14)

origins go back more than two thousand years to Roman law, recognizing that a person's good name and reputation, tarnished by accusations of misbehavior, infamy, and moral turpitude, can cause a lifetime of harm. Protecting a person from such false claims became an essential element of the law. See generally, Docherty, B., *Defamation Law: Positive Jurisprudence*, 13 HARVARD HUMAN RIGHTS J. 264, 264-67 (2000).[4] The problem arises in that the law developed where the false libel was "published", and, by "published", one meant in a written format, and then distributed the third parties. See Veeder, N. 4, 3 COLUMBIA L.J. at 566, 569-70. The law, however, recognized that an alleged libeler, or slanderer, could mitigate his exposure if he published a retraction of the offending statement. See Prosser, W., HANDBOOK OF THE LAW OF TORTS at pp. 799-800 (4th ed. 1971).[5]

The problem arises where the law lags behind technology. See discussion in Wadhwa, V., *Law and Ethics Can't Keep Pace With Technology*, MIT TECHNOLOGY REV. (2014). A fact that is well recognized by the courts. *See, e.g., Milo & Gabby, LLC v. Amazon.com*, 144 F. Supp.3d 1251 (W.D. Wash. 2015) ("There is no doubt that we now live in a time where the law lags behind technology." *Id*. at 1253.). This fact does not preclude the Court from (a) affirmatively recognizing the impact

---

[4] See also discussion in Veeder, V., *The History and the Theory of the Law of Defamation*, 3 COLUMBIA L.J. 546 (Dec. 1903) (*passim*).

[5] See also discussion in Martin, J., *The Role of Retraction in Defamation in Lawsuits*, UNIV. OF CHICAGO L. FORUM (1993) (*passim*).

of technology, and (b) proactively fashioning a remedy that takes into account such technological facts. See *American Elec. Power Co. v. Connecticut*, 564 U.S. 410 (2011), where Madame Justice Ginsburg, wring for a unanimous Court, stated, "we have recognized that public nuisance law, like common law generally, <u>adapts to changing scientific and factual circumstances</u>." *Id*. at 423. Emphasis added. See also *Michigan v. U.S. Army Corps of Engineers*, 667 F.3d 765, 772 (7th Cir. 2011), *cert. den.* 565 U.S. 1241 (2012).

Where this arises, as relevant to the case at Bar, is the fact that, as argued in the Appellants' Opening Brief, statements "published" on the world wide web, remain their forever. See *id*. at pp. 13-14, discussing what is referred to as "digital permanence".[6] And, within the context of any mitigation, such as a retraction, even if a retraction is published online, prior online publications can be easily found by such methods as use of the "wayback machine".[7]

---

[6] *See, e.g., Wash. Public Employees' Ass'n v. Washington State Center for Childhood Deafness & Hearing Loss*, 194 Wn.2d 484, 515 (2019) (dissenting op., J. Wiggins, speaking of the "forever" nature of information published on line); *Hart v. State*, 829 N.E.2d 541, 544 (Ind. App. 2005) ("the <u>digital photographs which he put on the Internet would be there forever</u> as a continuing threat of exposure for his daughter." Emphasis added.).

[7] An initiative of the Internet Archive, a 501(c)(3) organization, the "wayback machine" has captured, and made available, almost a trillion webpages in their original published format. See *https://archive.org/about/*. See discussion in *Valve Corp. v. Ironburg Inventions Ltd.*, 8 F.4th 1364, 1374-75 (Fed. Cir. 2021); *Thomas v. S.C. Dep't of Mental Health*, 2023 U.S. Dist. LEXIS 240555 at *8 (D.S.C. 2023); *Novak v. Tucows, Inc.*, 2007 U.S. Dist. LEXIS 21269 at *14-*15 (E.D.N.Y. 2007), *aff'd* 330 Fed. App'x 204 (2d Cir. 2008).

(16)

II. The Offending Statements Were Actionable Defamation

It is the position of the Appellants that the words spewed forth by the Defendants were so offensive, so mean-spirited and set forth in a context and milieu, that they could only be deemed actionable under state defamation law. The fact they were set forth, on multiple occasions, too many to actually number, and set forth in a venue where they will exists for eternity, makes them that much more damaging and actionable.

As set forth in "I", *supra*, the very nature of expressing oneself, in a vituperative and mean-spirited manner, on the internet, where such words will exist for all of eternity, requires that the legal analysis of them be much more expansive than in the days when the laws of defamation were formed, and the only method of dissemination was the printed word. The media is full of stories of how print media is disappearing at alarming rates; all to be substituted by on-line messaging.[8] Where the harm caused was previously limited to the physical circulation of a publication, and that circulation disappeared within days, now the harm exists forever.

It is within this context that the Court must view the actions of the Appellees.

---

[8] *See, e.g.*, Wirestone, G., *Democracy's warning signs flash 'emergency' as newsrooms shudder in Kansas and nationwide*, THE REFLECTOR (July 1, 2024), reprinted at *https://kansasreflector.com/2024/07/01/democracys-warning-signs-flash-emergency-as-newsrooms-shudder-in-kansas-and-nationwide/*.

(17)

The courts have made clear that it is within the context of how and what is said, that determines whether statements, made by an offending party, are actionable or not. See *Cornelius-Millan v. Caribbean Univ., Inc*., 261 F. Supp.3d 143, 154 (D.P.R. 2016). The focus ought not be solely upon the exact words spoken, but, rather, "the statement [must be viewed] in its totality in the context in which it was uttered or published." *Amtrak Prods., Inc. v. Morton*, 410 F.3d 69, 72-73 (1st Cir. 2005). Thus, for example, in *Johnny Ha v. Conn*, 2024 U.S. Dist. LEXIS 103647 (D. Vt. 2024), in a defamation action, the Court was asked to rule upon the admissibility of certain videos on the question of whether the offending comments were inactionable "insults", or, whether they were, in fact, actionable defamatory statements. In ruling that they should be viewed by the jury, the Court observed that the context in which the statements were made, not just the words themselves, should be a decisive factor for the jury to make an informed judgment. *Id*. at *3-*4. Indeed, even beyond that, is the recognition that insults, even in and of themselves, are an essential element in a valuation of the damages that a party has suffered due to the mental anguish, and emotional trauma that they cause. See generally *Knight v. McLaughlin*, 2021 U.S. Dist. LEXIS 255072 at *3, *10 (N.D. W. Va. 2021). See Lanasa Declaration, at J.A., pp. A-215 — A-216. See also discussion in Appellants' Opening Brief at pp. 57-58.

Beyond this, is the fact that "insults", as sprayed against an business entity, must be viewed as more potentially damaging that the mere "insult" sprayed at an individual. The reason is quite simple: one publishes an "insult", directed at a business with solely one intent in mind — to cause financial harm to that business.

In *Zaretsky v. Berlin*, 513 B.R. 430 (Bankr. Ct. E.D.N.Y. 2014), the Court was confronted with the issue of whether certain debts were dischargeable under Section 523 of the Bankruptcy Code, *i.e.*, providing that actions due to the willful and malicious behavior of the debtor are not dischargeable. *Id*. at 11 U.S.C. § 523(a)(6). The Court found that insults directed at the creditor's business, that were directed at "the reputation and good name of his family and of Maxi-Aids were vital to the business's success", and, hence not dischargeable. *Id*. at 436. This finding was made after the state court proceeding which had found that a basis for liability existed in a defamation action.

In addition, thereto, the assertion by the Appellees that that many of the offending statements of the Stienes were nonactionable opinions (see Appellees' Brief at pp. 30-34), fails to recognize, not only the nature of the statements, but also that they were specifically directed at the Appellants' business, designed to cause him financial harm. Published statements, such as, "LaNasa was 'inadvertently honest,' that LaNasa was a 'warrior for the old ways,' that LaNasa's company was 'scraping the bottom of the privy,' that LaNasa 'fucked over' his business partners, that

(19)

LaNasa 'included a Nazi in [his] company,' and that LaNasa's wife was the 'new face' of his company, . . ." were "too subjective to be proven true or false" (see J.A. at p. A-270), were only made to harm Plaintiffs TSR, LLC, and Dungeon Hobby Shop Museum, LLC. To characterize such statements as mere opinion disregards the indisputable fact of the matter that no one wants to do business with a company that knowingly employs Nazis, or that is dishonest.[9] All of these things are provable, or not. Stiene claims that Lanasa is "dishonest". In what way has he engaged in "dishonest" activity? As set forth in Appellants' Opening Brief all of these are provable, or not. See Appellants' Opening Brief at pp. 40-41. Since they are provable, or not (as is the case), then they are no longer inactionable "opinion". See *Paladino v. Cojocaru*, 2021 N.Y. Misc. LEXIS 58743 (S. Ct. N.Y. Co. 2022) (court finds that offending statements, though possibly opinions, are actionable, as they contain provable elements; *id*. at *26-*27). As the New York Court of Appeals, made clear,

> In all cases, whether the challenged remark concerns criminality or some other defamatory category, the courts are obliged to <u>consider the communication as a whole</u>, as well as its immediate and broader social contexts, to determine <u>whether the reasonable listener</u> or reader is likely to understand the remark as an assertion of provable fact . . .

*Gross v. New York Times Co*., 82 N.Y.2d 146, 156 (1993). Emphases added.

---

[9] See *Cedeno v. Pacelli*, 2019 N.Y. Misc. LEXIS 4864 at *15 (S. Ct. N.Y. Co. 2019), *aff'd* 192 A.D.3d 533 (1st Dep't 2021) (denying motion to dismiss defamation claims that plaintiff was "dishonest"). See also McNamee v. Clemens, 2013 WL 3968740 (E.D.N.Y 2013).

Compare *Mann v. Abel*, 10 N.Y.3d 271 (2008), where the Court found such statements as "Borrelli on par with Marie Antoinette", defendant referring to the plaintiff as a "political hatchet Mann" and "one of the biggest powers behind the throne", and that it appeared that the plaintiff "Mann pulls the strings" and questioned whether Mann was "leading the Town of Rye to destruction", were all unprovable, inactionable opinions. *Id.* at 276-77.

All of the offending statements have a "precise meaning", are "capable of being proven true or false", and must be viewed "in the full context of the communication". *Mann*, *supra*, 10 N.Y.3d at 276. These statements of the Appellees come within this tripartite test, and therefore, should be submitted to a factfinder for a true evaluation.

For the foregoing reasons, the ruling of the lower Court should be vacated.

Point Four
**PLAINTIFFS ADEQUATELY PLED THE TORT OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

The lower court ruled that the Plaintiffs' cause of action for intentional infliction of emotional distress was not satisfied, and the examples of outrageous conduct did not rise to such a level. *Lanasa v. Stiene, supra*, at *27. In the Appellees' Responsive Brief (see pp. 46-51), they mirror this claim, arguing that the clear and unmistakable threats of violence and the intentional posting of the Plaintiff's wife and minor child, were not so outrageous as to merit consideration under this tort.

(21)

The problem arises in the fact that the standard, as applied by the lower court, is entirely subjective. What constitutes "outrageous conduct" is entirely dependent upon the circumstances involved.

In the case at Bar, the two major claims were not unrelated to such conduct. The threat of violence flowed directly out of the assertion that Stiene was a former police officer, and, very likely still had permission to own a firearm. See discussion in Plaintiffs' Memorandum of Law in Opposition to Rule 12(b) Motion, at pp. 27-28, J.A. A-211 to A-212. In addition, it was emphasized that, from the beginning, the Plaintiff sought to have the images of his wife and minor daughter blurred, but these were ignored by the Defendant Stiene. See Second Amended Complaint at ¶¶ 25-27, J.A. pp. A-78 thru A-80.

Thus, the treatment and underlying facts of this behavior, raises it to a level of outrageous conduct. The test is one of context. In *McCann v. McCann*, 156 Misc.2d 540, 545-47 (S. Ct. N.Y. Co. 1993), in discussing the formulation utilized in *Blickstein v. Blickstein*, 99 A.D.2d 287, 292 (2d Dep't 1984), the court explained that "egregious" and "conscience-shocking" have no meaning underline outside of a specific context, and that conduct is "conscience-shocking, evil, or outrageous" only when "the act in question grievously injures some highly valued social principle."

Thus, applying this principle, it is more than easy to see how the Plaintiffs can easily be deemed to suffer some sort of emotional trauma at the hands of the

Defendant, especially when the Defendant intentionally ignored efforts to have him correct his offensive behavior.  See Cease & Desist Letter, Appendix A to Complaint at J.A. pp. A-54 thru A-57, where it was specifically stated,

> upon information and belief, you threatened physical harm to an associate of my client when he attempted to speak with you in or around February 2022. Furthermore, your posting of photographs, on line, of my client's spouse and minor child have put both of these persons in fear for their personal wellbeing and needs to both stop immediately and be withdrawn by yourself.

The fact that the Appellee chose to ignore this request, made on July 29, 2022, and never corrected his actions demonstrates, minimally a questionable fact as to whether the Appellees' actions were outrageous or not.  *See, e.g., Waters v. Town Sports Int'l Holdings, Inc.*, 2014 N.Y. Misc. LEXIS 3404 at *10-*11 (App. Term 2d Dep't 2014), finding that "slurs and physical threats" rose to the level of outrageous conduct in the context of an IIED claim.

Under such circumstances, outrageousness is subjective under many circumstances.  As one court has observed,

> "Outrageous" might well be in the minds of the parties. For example, it's "outrageous" to require a person terrified of heights to climb a high ladder, but this same requirement might be considered playful exercise by a young athlete. Whether or not the allegedly tortious conduct was intentional would depend on what the perpetrator knew about the mental state of the complainant.

*Bialik v. E.I. DuPont de Nemours & Co.*, 142 Misc.2d 926, 929 (S. Ct. Niagara Co. 1988).

(23)

See also *Mohrman v. Johns*, 2020 N.Y. Misc. LEXIS 5380 at *6 (S. Ct. Suffolk Co. 2020) (where the court denied the motion to dismiss the cause of action for IIED, observing that "Defendants further argue that the fifth cause of action for intentional infliction of emotional distress is not sufficient because the defendants' alleged conduct here does not meet the requisite element of "outrageous" conduct . . .. That maybe defendants' subjective judgment of the conduct, however, it would be premature for the Court to conclude at the this [pre-discovery] stage that the alleged conduct as specified in the complaint was not outrageous." Citation omitted.); *Hughes v. Pacienza*, 2011 N.Y. Misc. LEXIS 4785 at *20 (S. Ct. Kings Co. 2011) (speaking of the "the subjective emotional distress element of the tort").

Under the totality of the circumstances, and the context in which the statements were made by the Defendant, the lower court erred in substituting its subjective analysis of the relevant statements for that of a factfinder.

Point V
## PLAINTIFFS ADEQUATELY PLED THE
## TORT OF *PRIME FACIE* TORT

The Appellees argument is that the Plaintiffs have merely "mirrored" their claims for Intentional Infliction of Emotional Distress ("IIED"), and just, effectively re-fashioned them into a claim for *prima facie* tort. See Appellees' Brief at pp. 51-54. This misrepresents the claims made under the tort of *prima facie* tort, and fails to

(24)

recognize (as did the lower court) that the Plaintiffs had satisfied the New York law requirements for such a cause of action.

Under New York law, in order to effectively plead this tort, the plaintiff must plead as follows,: "(1) the intentional infliction of harm, (2) which results in special damages, (3) without any excuse or justification, (4) by an act or series of acts which would otherwise be lawful". *Smith v. Meridian Technologies, Inc.*, 86 A.D.3d 557, 558-59 (2d Dep't 2011). Furthermore, "'there is no recovery in prima facie tort unless malevolence is the sole motive for defendant's otherwise lawful act,' that is, 'unless defendant acts from 'disinterested malevolence'". *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 333 (1983), quoting *American Bank & Trust Co. v. Federal Reserve Bank of Atlanta*, 256 U.S. 350, 358 (1921).

All of these elements have been satisfied.

The Amended Verified Complaint laid out specific statements, denominated as "prima facie tort". See First Amended Complaint at ¶ 92, J.A. at p. A-48 — A-49. The actions complained of, relating to the *prima facie* tort, were separate and distinct from those alleging defamation and slander

Furthermore, the Appellants set forth the element of "disinterested malevolence", by the scores of postings made by the Appellees (*see, e.g., Matter of Pastor*, 154 A.D.3d 184, 185 (1st Dep't 2017) (repeated behavior by a party demonstrates element of malice); *Pignatelli v. Press Publishing Co.*, 197 App. Div. 275, 276 (2d

Dep't 1921) ("The repetition of a libel may be evidence of malice"); see also

discussion in Appellants' Opening Brief at pp. 16-17), and the very nature of the

posted comments, *e.g.*,

> "jackass comes to my house; I hope they like lead because I have plenty
> to offer if that is the case"
> * * *
> "Here's the thing Justin. I already know your address; I already know
> your fucking phone number; I know your wife's phone number."
> * * *
> "my wife just told you that she would grow a cock so you could eat that
>
> cock"

See First Amended Complaint at ¶ 91, J.A. at pp. A-49 — A-50; Second

Amended Complaint at ¶ 92, J.A. at p. A-98.

In addition, thereto, the Appellant plainly laid out the "special damages" they

suffered. See Second Amended Complaint at ¶¶ 24, 75, 88, J.A. at pp. A-80, A-94

– A-95, A-97. See also Lanasa Declaration annexed to Opposition to Motion to

Dismiss, J.A. at pp. A-215 thru A-216.

While the Appellees dismiss the damages claim of lost business (see, Appellees'

Brief at pp. 53-54), these allegations were sufficiently pled for Judge Matsumoto to

rely upon them to satisfy the jurisdiction amount requirements. See *Lanasa v. Stiene,*

*supra*, at *10-*11 ("the Court credits LaNasa's underlying factual allegations that

because of the Stienes' actions, the LaNasa family had to seek therapy, Geek Nation

'canceled a tour' with him, and 'creators, publishers, artists, and customers" spurned

him, . . .'" ).  And, as the courts have held, the "special damages" requirement can be equally satisfied by showing related medical expenses.  See *Aversa v. Taubes*, 194 A.D.2d 580, 582-83 (2d Dep't 1993); *Eaton v. Chahal,* 146 Misc.2d 977, 984-85 (S. Ct. Rensselaer Co. 1990).

Finally, the fact that the claims laid out for *prima facie* tort are reflected in the cause of action for emotional distress, does not preclude them from surviving a motion to dismiss.  See *Ross v. Johnson*, 2020 N.Y. Misc. LEXIS 2691 at *8-*9 (S. Ct. N.Y. Co. 2020).

Point VI
### LEAVE TO AMEND SHOULD HAVE BEEN GRANTED BY THE LOWER COURT

Appellant sought leave to Amend the Complaint from the Court, however, the lower court denied this request, in its appealed order. See *Lanasa v. Stiene, supra*, at *29-*31, J.A. at p. A-273.[10]  The Appellees aver that, since the sole amendment sought was to specifically delineate Rachel Stiene as a defendant, this leave to amend was properly denied by the Court.  See Appellees' Brief at pp. 56-58.

---

[10] Thew lower court's reliance on an asserted failure to seek such leave on a timely basis, does injustice to the principle that

> The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept  the principle that the purpose of pleading is to facilitate a proper decision on the merits.

*Conley v. Gibson*, 355 U.S. 41, 48 (1957).

The request to amend arose out of the continued confusion as to the properly named co-defendant — whether it was Lois Stiene or Rachel Stiene. As the Plaintiff did not know the actual name of the on-screen offending party, the original complaint specified "LOIS STIENE, aka RACHEL STIENE". See J.A. at p. A-20. And, the clear reason for including this female was that she actively participated in the on-line defamation of the Plaintiff. See J.A. at pp. A-25, A-27, A-28, A-50.

It was not until late in the game that the Appellees actually provided any decisive proof that the offending party was not LOIS STIENE, but, rather, RACHEL STIENE. See Letter to Court dated Nov. 26, 2023, ECF No. 55, J.A. at p. A-55.

As a result, thereof, in every paragraph of the First Amended Complaint where the name "LOIS STIENE" appeared, it was stricken, and the name (*i.e.*, "aka") "RACHEL STIENE" replaced. Compare First Amended Complaint: ¶ 22, J.A. at pp. A-25, A-27, A-28, with Second Amended Complaint ¶ 22, J.A. at pp. A-74, A-76, A-77; ¶ 92.

Since the Amendment sought posed no prejudice to the Defendants, as they had been fully aware from day one as to the allegations concerning this particular party, any defense or objection as to naming Rachel Stiene, dealt with only procedural matters, and not any of the substantive claims in the Complaint.

In the Appellees' Brief they fail to adequately address both the assertion that no prejudice would have been accorded them by correcting the name of the co-

(28)

defendant, and, more importantly, the fundamental rule, that, not only is leave to amend under Rule 15 to be liberally granted, but that this is especially so where such amendment is proposed merely to correctly name a party to the action. See generally *In re Vitamins Antitrust Litigation*, 217 F.R.D. 27, 28-29 (D.D.C.), *aff'd* 323 F.3d 1207 (D.C. Cir. 2003); *Hilgraeve Corp. v. Symantec Corp*., 212 F.R.D. 345, 347 (E.D. Mich 2003) (permission to amend complaint granted where challenging party showed no prejudice and party was merely mis-named).

In the case at Bar, this request to Amend was not made post-judgment (and, hence subject to a more strict standard, *see, e.g., Honickman v. Blom Bank*, 2024 U.S. App. LEXIS 4748 at *2 (2d Cir.), *cert. granted* — U.S. — (2024)), or that such amendment would unduly prejudice a party. *See, e.g., Trireme Energy Develop., LLC v. RWE Renewable Americas, LLC*, 2023 U.S. Dist. LEXIS 151454 at *13 (S.D.N.Y. 2023).

However,

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962). Footnote omitted.

(29)

As no prejudice to the Appellees can be demonstrated, and the leave to Amend was made on a timely basis, the lower court should have granted this relief.

## <u>CONCLUSION</u>

For the reason set forth herein, the decision of the District Court, dismissing the Plaintiffs-Appellants' Complaint, should be reversed, and the matter remanded to the District Court.

Dated: November 26, 2024
    Somers, NY                         /s/ *Bernard V. Kleinman*
                                       Attorney for Appellants

## **STATEMENT PURSUANT TO F.R.A.P. 32(a)(7)(C)**

Pursuant to Rule 32(a)(7) of the Federal Rules of Appellate Procedure, Appellant does hereby certify that said Reply Brief complies with the type-volume limitation of this Court's Rules, and said Brief contains 6,146 words of text.

/s/ *Bernard V. Kleinman*
Bernard V. Kleinman
Attorney for Appellants

Dated: November 26, 2024
Somers, NY

(31)

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that a true and accurate copy of the foregoing REPLY BRIEF was duly served upon counsel for the Appellees, by efiling with the ACMS efiling service of the Second Circuit Court of Appeals, and by emailing same to counsel for the Appellees, Daniel Schneider, Esq., at the designated email address of same (*daniel.schneider@offitkurman.com*) on the 26th day of November, 2024.

/s/ *Bernard V. Kleinman*
Law Office of Bernard V. Kleinman, PLLC
Bernard V. Kleinman, Esq.
Attorney for Appellants
108 Village Sq., Ste. 313
Somers, NY 10589-2305
Tel. (914) 644-6660
Fax: (914) 694-1647
Email: attrnylwyr@yahoo.com

Dated:  Nov. 26, 2024
           Somers, NY