24-1325
*LaNasa v. Stiene*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of March, two thousand twenty-five.

Present:
        DEBRA ANN LIVINGSTON,
            *Chief Judge*,
        STEVEN J. MENASHI,
        SARAH A. L. MERRIAM,
            *Circuit Judges*.

_____

JUSTIN LANASA, TSR, LLC, DUNGEON HOBBY SHOP MUSEUM, LLC,

        *Plaintiffs-Appellants*,

        v.                                24-1325

ERIK STIENE, RACHEL STIENE,

        *Defendants-Appellees*.
_____

For Plaintiffs-Appellants:        BERNARD V. KLEINMAN, Law Office of Bernard V. Kleinman, PLLC, Somers, NY.

For Defendants-Appellees:        DANIEL J. SCHNEIDER, Offit Kurman, P.A., New York, NY.

1

Appeal from a decision and order of the United States District Court for the Eastern District of New York (Matsumoto, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiffs-Appellants Justin LaNasa ("LaNasa"), TSR, LLC ("TSR"), and Dungeon Hobby Shop Museum, LLC ("Dungeon Hobby," collectively with TSR and LaNasa, "plaintiffs") appeal from a judgment of the United States District Court for the Eastern District of New York (Matsumoto, *J.*), entered on May 13, 2024, granting defendant Erik Stiene's ("Erik") and defendant Rachel Stiene's ("Rachel," collectively with Erik, "defendants") motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6). On appeal, plaintiffs challenge the district court's determination that (1) their claims against Rachel should be dismissed for insufficient service of process; and (2) they failed to state a claim against Erik for defamation, libel, and slander *per se*; for intentional infliction of emotional distress; and for prima facie tortious conduct. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

### I.     Insufficient Service of Process

We review a dismissal based on insufficient service of process for abuse of discretion. *See Dickerson v. Napolitano*, 604 F.3d 732, 740 (2d Cir. 2010). Here, it is undisputed that Rachel has not been served. Plaintiffs' primary argument is that they should be excused from Rule 4's service requirement because Rachel had notice of the pendency of this action. They are mistaken.

"[A]ctual notice of the [pendency of an] action will not, in itself, cure an otherwise defective service." *Am. Inst. of Certified Pub. Accts. v. Affinity Card, Inc.*, 8 F. Supp. 2d 372, 377 (S.D.N.Y. 1998) (citing *Omni Cap. Int'l v. Rudolf Wolff and Co., Ltd.*, 484 U.S. 97, 104 (1987));

2

*see also Kogan v. Facebook, Inc.*, 334 F.R.D. 393, 400 (S.D.N.Y. 2020) ("[D]efective service . . . is not cured or overcome on the mere assertion that a defendant had actual notice." (internal quotation marks omitted)). Thus, it is irrelevant whether "Rachel . . . had actual notice." Appellants' Br. at 34. Additionally, the record does not support plaintiffs' claim that "[t]he formality of a process server handing [Rachel] the Summons and Complaint has been completed and acknowledged by the Appellees' counsel." *Id.* at 34-35. The only summonses that have been executed and filed on the district court docket are for Erik and Lois Stiene. *LaNasa v. Stiene*, No. 1:22CV05686(KAM), ECF Nos. 8, 24. In particular, the proof of service filed regarding Lois (whom plaintiffs attempted to replace with Rachel) notes that plaintiffs' process server "served the summons on [] Daniel Schneider (counsel for Defendants), who is designated by law to accept service of process on behalf of [] *Defendant Lois Stiene*." *Id.*, ECF No. 24 (emphasis added). Rachel's name does not appear.

Accordingly, the district court did not err in dismissing plaintiffs' claims against Rachel pursuant to Rule 12(b)(5).

## II. Failure to State a Claim

We review de novo a district court's grant of a motion to dismiss under Rule 12(b)(6), accepting all well-pleaded factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor. *See, e.g.*, *O'Donnell v. AXA Equitable Life Ins. Co.*, 887 F.3d 124, 128 (2d Cir. 2018). Here, plaintiffs challenge the district court's denial of their claims for (1) defamation per se; (2) intentional infliction of emotional distress; and (3) prima facie tort. We address each claim in turn.

### A. Defamation Per Se

3

In analyzing plaintiffs' defamation claim, the district court separated the relevant statements into four categories: (1) statements of opinion; (2) insults; (3) statements that could be objectively true but did not expose LaNasa to ridicule; and (4) statements that could be objectively true and may implicate LaNasa's character but were not sufficiently alleged to be false. We turn now to each category.

### 1. Statements of Opinion

"[T]he New York Constitution provides for absolute protection of opinions." *Celle v. Filipino Rep. Enterprises Inc.*, 209 F.3d 163, 178 (2d Cir. 2000). "The New York Court of Appeals has suggested a four factor test for differentiating statements of protected opinion from those asserting or implying actionable facts." *Id.* These factors are:

> (1) "an assessment of whether the specific language in issue has a precise meaning which is readily understood or whether it is indefinite and ambiguous";
>
> (2) "a determination of whether the statement is capable of being objectively characterized as true or false";
>
> (3) "an examination of the full context of the communication in which the statement appears"; and
>
> (4) "a consideration of the broader social context or setting surrounding the communication including the existence of any applicable customs or conventions which might signal to readers or listeners that what is being read or heard is likely to be opinion, not fact."

*Id.* at 178–79 (quoting *Steinhilber v. Alphonse*, 501 N.E.2d 550, 554 (1986)). However, "[t]he analysis does not end . . . when a challenged statement is found to be an opinion." *Chau v. Lewis*, 935 F. Supp. 2d 644, 658 (S.D.N.Y. 2013), *aff'd*, 771 F.3d 118 (2d Cir. 2014). Where such a determination is made, the Court must then decide whether the opinion is a "pure opinion" or a "mixed opinion":

> An expression of pure opinion is not actionable. . . . A "pure opinion" is a statement of opinion which is accompanied by a recitation of the facts upon which it is based. An opinion not accompanied by such a factual recitation may, nevertheless, be "pure opinion"

4

> if it does not imply that it is based upon undisclosed facts. When, however, the statement of opinion implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it, it is a "mixed opinion" and is actionable. The actionable element of a "mixed opinion" is not the false opinion itself—it is the implication that the speaker knows certain facts, unknown to his audience, which support his opinion and are detrimental to the person about whom he is speaking.

*Id.* at 658–59 (quoting *Steinhilber*, 501 N.E.2d at 550).

Here, the district court categorized seven statements alleged in plaintiffs' Second Amended Complaint as non-actionable opinions. App'x 270. Most are indeed non-actionable. Many are subjective and incapable of being objectively characterized as true or false. *See, e.g.*, App'x 74 ¶ 22 (LaNasa was "inadvertently honest, I don't think that was your intention"); App'x 76 (TSR was "scraping the bottom of the privy"); App'x 79 ("Erika is the new face of TSR"). Others are indefinite and ambiguous. *See, e.g.*, App'x 75 (LaNasa was a "warrior for the old ways"). The Second Amended Complaint does not adequately allege that a listener hearing these statements would interpret them as facts, rather than as Erik's opinions about LaNasa and TSR.

Other statements also constitute non-actionable opinions when considered in context. At least two of the allegedly defamatory statements are simply Erik reading social media posts by non-parties aloud in a YouTube video. *See, e.g.*, App'x 75 (LaNasa "does not like homos and their type"); *id.* (LaNasa "was kicked out of the military for lack of leadership potential"). "Under familiar principles of defamation law, [a defendant] cannot escape liability for a false, defamatory statement simply because it repeated the statement of a third party." *Law Firm of Daniel P. Foster, P.C. v. Turner Broadcasting Sys., Inc.*, 844 F.2d 955, 960 (2d Cir. 1988). But a reasonable listener would not understand Erik's repetition of these statements to be assertions of fact. To the contrary, the videos make clear that Erik is reporting on allegations made by another person, and that he does not claim to know whether the allegations are true.

5

Two of the statements categorized as pure opinion by the district court may cross the line into becoming potentially actionable mixed opinions or factual statements: the statement that LaNasa "fucked over [his] prior business partners to get the TSR trademark," and the statement that LaNasa "included a Nazi in [his] company." App'x 77; *see Germain v. M & T Bank Corp.*, 111 F. Supp. 3d 506, 536 (S.D.N.Y. 2015) (finding that the statement that a plaintiff "had ties to the Albanian mob" was an actionable mixed opinion because it "plausibly suggests that it is based on undisclosed facts or on facts that are challenged as untrue"); *Buckley v. Littell*, 539 F.2d 882, 894 (2d Cir. 1976) (holding that "allegations of membership or well-defined political affiliation are readily perceivable as allegations of fact susceptible to proof or disproof of falsity").

However, in context, these statements "could be reasonably understood as part of a 'tasteless effort to lampoon' because they were made . . . in circumstances where 'an audience may anticipate the use of epithets, fiery rhetoric or hyperbole." *Rapaport v. Barstool Sports Inc.*, 2024 WL 88636, at *4 (2d Cir. Jan. 9, 2024) (quoting *Steinhilber*, 68 N.Y.2d at 294-95); *see also Lasky v. Am. Broad. Cos., Inc.*, 606 F. Supp. 934, 940 (S.D.N.Y. 1985) (describing a "shouting match" in which "Lasky called Mundel a communist and she called him a Nazi" as "precisely [the] type of exchange which has been characterized in the law of libel as the expression of opinion"); *Schwartz v Nordstrom*, 160 A.D.2d 240, 241 (1st Dept. 1990) (finding defendants' accusation that plaintiff was a Nazi was "an expression of opinion"). Accordingly, the district court did not err in concluding that such statements, in context, were non-actionable opinions.

### 2. Insults

Under New York law, "mere insults" are also nonactionable. *See Lowinger v. Jacques*, 204 A.D.2d 175, 176 (1994) ("[M]any of the offending oral statements are also nonactionable because, while offensive, they amounted to nothing more than mere insult, not to be taken literally

6

and not deemed injurious to reputation."). Here, the district court categorized several other statements in the Second Amended Complaint as non-actionable insults. *See* App'x 270. It did not err in doing so. The Second Amended Complaint does not adequately plead that a listener would interpret statements calling LaNasa a variety of different names (e.g., an "ignorant c**t") as facts, rather than as non-actionable epithets. *See Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348, 386 n.25 (S.D.N.Y. 1998) (finding that a statement that a plaintiff is a "sick puppy" is "so charged with rhetoric as to suggest that there is no basis in fact that could either support or disprove it and, accordingly, it amounts to non-actionable epithet").

Accordingly, the district court did not err in concluding that such statements could not support a claim of defamation per se.

### 3.     Non-injurious Statements

Under New York defamation law, a statement is actionable only if it "tends to expose a person to public contempt, hatred, ridicule, aversion, or disgrace." *Greenberg v. Spitzer*, 155 A.D.3d 27, 41 (2d Dep't 2017). The district court categorized several statements as statements that had truth value but were nevertheless non-actionable because they did not injure plaintiffs' reputation. *See, e.g.*, App'x 271 (Dungeon Hobby "was for profit"). Again, we see no error. As the district court observed, "[i]t is unclear from LaNasa's allegations what th[ese] statements were even supposed to imply, if anything." *Id.* It is certainly unclear how the notion that LaNasa used anonymous emails, that he was an "on-line entity," or that his company was for-profit would injure his reputation. App'x 75, 77. "The same goes for Erik's allegedly threatening statements toward LaNasa, which imply nothing *about* LaNasa." App'x 271 (emphasis in original).

### 4.     Statements Not Adequately Alleged to Be False

7

Finally, "falsity is an element of a New York defamation claim, and [] a plaintiff . . . generally must identify how the defendant's statement was false to survive a motion to dismiss." *Tannerite Sports, LLC v. NBCUniversal News Grp., a division of NBCUniversal Media, LLC*, 864 F.3d 236, 245 (2d Cir. 2017). In other words, "[a] complaint . . . case must plead *facts* that, if proven, would establish that the defendant's statements were not substantially true." *Id.* at 247 (emphasis added).

Here, the district concluded that while "the remaining factual statements" in plaintiffs' complaint had "objective truth value and implicate LaNasa's character at least to some degree," they nonetheless could not support a defamation per se claim because LaNasa "failed to plead that any of the[] [statements are] false." App'x 271. Again, we see no error. While the Second Amended Complaint asserts in a conclusory fashion that each listed statement is false, it is devoid of any *facts* supporting the claim of falsity. Purely conclusory allegations are insufficient and cannot satisfy the pleading requirements.

B.  **Intentional Infliction of Emotional Distress ("IIED")**

Plaintiffs' claim for intentional infliction of emotional distress is premised on: (1) purported threats of violence against LaNasa and his family; and (2) the posting of an image of LaNasa's spouse and child on defendants' YouTube channel. Dkt. 25 at 48. The district court dismissed this claim after determining that plaintiffs' "allegations against the Stienes do not describe extreme and outrageous conduct." App'x 272. We see no error here as well.

"The state law tort of intentional infliction of emotional distress has four elements: (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996). Courts addressing such claims "have tended to

8

focus on the outrageousness element, the one most susceptible to determination as a matter of law." *Howell v. New York Post Co., Inc.*, 81 N.Y.2d 115, 121 (1993). The New York Court of Appeals has observed that "the requirements . . . are rigorous, and difficult to satisfy," and that, "of the intentional infliction of emotional distress claims considered by this Court, *every one* has failed because the alleged conduct was not sufficiently outrageous." *Chanko v. Am. Broad. Companies Inc.*, 27 N.Y.3d 46, 57 (2016) (emphasis in original) (internal citations and quotation marks omitted) (quoting *Howell,* 81 N.Y.2d at 122). It has also noted that "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Howell*, 81 N.Y.2d at 122.

Here, the district court did not err in concluding that plaintiffs' allegations failed to meet this demanding standard. Plaintiffs plead no facts suggesting that Erik desired or was actively seeking out a direct confrontation with LaNasa. Similarly, the fact that an image of LaNasa's wife and daughter (which was already in the public domain) was posted does not, without more, rise to the level of atrocious conduct required under New York law. Accordingly, the district court did not err in dismissing the IIED claim.

### C. Prima Facie Tort

Finally, plaintiffs argue that the district court erred in dismissing plaintiffs' prima facie tort claim. They are again mistaken.

"[W]here '[t]he factual allegations underlying [the prima facie tort] cause of action relate to the dissemination of allegedly defamatory materials,' that cause of action 'must fail.'" *McKenzie v. Dow Jones & Co.*, 355 F. App'x 533, 536 (2d Cir. 2009) (quoting *Butler v. Del. Otsego Corp.*, 610 N.Y.S.2d 664, 665 (3rd Dep't 1994)). Here, despite plaintiffs' argument to the

9

contrary, the Second Amended Complaint explicitly premises plaintiffs' prima facie tort claim on, *inter alia*, the "spread[ing] [of] defamatory statements harmful to [plaintiffs]." App'x 97 ¶ 84. To the extent plaintiffs' claim relies on such statements, it must fail.

Moreover, the district court correctly determined that plaintiffs failed to adequately plead special damages. "Under New York law, special damages must be pled with particularity." *Bradley v. Nat'l R.R. Passenger Corp. (Amtrak)*, 797 F. Supp. 286, 295 n.12 (S.D.N.Y. 1992). "[A]llegations that generally 'amount[] to a claim of emotional distress[] [a]re insufficient to allege special damages." *G.E. v. City of New York*, No. 12-CV-5967, 2017 WL 4357340, at *8 (E.D.N.Y. Sept. 29, 2017) (quoting *Berland v. Chi*, 38 N.Y.S.3d 57, 59 (2d Dep't 2016)). Thus, plaintiffs cannot satisfy the pleading requirement by merely stating that LaNasa "suffered emotional and psychological trauma[] as a result of [defendants'] actions." App'x 97 ¶ 85. While plaintiffs contend that they also incurred expenses for "medical and other support services such as counseling due to the posting of [a picture of LaNasa's] minor daughter," App'x 97 ¶ 87, they do not plead the specific amount of such expenses. Accordingly, they have not pled special damages with adequate particularity.

\*   \*   \*

We have considered plaintiffs' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:<br>
Catherine O'Hagan Wolfe, Clerk

10